UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WEBER-STEPHEN PRODUCTS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13-cv-01686 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SEARS HOLDING CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Weber-Stephen Products LLC brought this suit against Defendant
Sears Holding Corporation, alleging patent infringement in violation of 35 U.S.C. § 271
and trade dress infringement in violation of section 43(a) of the Lanham Act, 15 U.S.C.
§ 1125(a).[1] R. 1, Compl. Sears has moved to dismiss the trade dress infringement claim
pursuant to Rule of Civil Procedure 12(b)(6).[2] R. 20. For the reasons below, the motion
is denied.

## I. Background

In evaluating this motion to dismiss, the Court accepts as true the complaint's
factual allegations and draws reasonable inferences in Plaintiffs' favor. *Ashcroft v.
al-Kidd*, — U.S. —, 131 S. Ct. 2074, 2079 (2011). Weber is a leading worldwide
designer and manufacturer of outdoor gas, charcoal, and electric grills and grilling

---

[1]The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a)-(b).

[2]Although the complaint seems to split the trade dress claim into two parts (namely,
"Count IV—Unfair Competition and False Designation of Origin" and "Count IV—Federal
Trade Dress Infringement," Compl. at 9, 12), as discussed below, these two claims are really
a single claim for trade dress infringement.

accessories, including the Weber Genesis line of grills. Compl. ¶ 3. As such, Weber owns a variety of design and utility patents, *id.*, three of which are at issue in this case. First, Weber owns United States Patent No. 8,347,874 B2 (entitled "Grease Drip Pan and Gas Tank Blocker for a Barbecue Grill"), which issued on January 8, 2013. *Id.* ¶ 4. Second, Weber owns United States Design Patent No. D564,834 S (entitled "Shroud for a Barbecue Grill"), which issued on March 25, 2008. *Id.* ¶ 5. Finally, Weber owns United States Design Patent No. D609,045 S (entitled "Grill"), which issued on February 2, 2010. *Id.* ¶ 6.

Weber alleges that Sears—which also sells outdoor grills and grilling accessories under its Kenmore brand, *id.* ¶ 8—has infringed and continues to infringe these three patents. In Count One, Weber alleges that Sears's Kenmore Elite Stainless grill and Kenmore Elite Espresso grill infringe the '874 Patent by also featuring propane tank blocking structures and grease-collecting cup brackets. *Id.* ¶¶ 16, 20-23. In Count Two, Weber alleges that the Kenmore grills infringe the '834 Patent by appropriating the '834 Patent's ornamental design for a barbecue grill "shroud" (that is, a lid). *Id.* ¶¶ 31-34. And in Count Three, Weber alleges that the Kenmore grills infringe the '045 Patent by appropriating the '045 Patent's overall ornamental design for a barbecue grill. *Id.* ¶¶ 42-45. According to Weber, Sears has willfully infringed each of these three patents. *Id.* ¶¶ 27, 38, 49.

Relevant here, Weber also claims that the Kenmore Elite Stainless and Espresso grills infringe the trade dress for Weber's Genesis S310 and S330 grills, respectively. *See id.* ¶ 55. Weber has allegedly spent time, effort, and resources to design and

2

develop "unique and inherently distinctive appearances for its Genesis® grill products including, without limitation, their distinctive shape, proportions and feature placements, such as their shroud riveted band design and door trim design." *Id.* ¶ 68. This grill design, according to Weber, is non-functional. *Id.* ¶ 58. Yet Sears has allegedly patterned its Kenmore grills after the Weber Genesis grill design "with the express intent to pass [the Kenmore grills] as those of Weber and to cause confusion and mislead the purchasing public." *Id.* ¶ 59. Weber believes that Kenmore grill sales "are likely to cause consumer confusion because of the similarity in appearance and look between Sears' and Weber's products." *Id.* ¶ 60. As a result, Weber seeks compensatory damages for "loss of goodwill, loss of past and/or future sales, and damages caused by Sears' acts of trade dress infringement and unfair competition." *Id.* at 14. In response, Sears moved to dismiss the trade dress infringement claim. R. 20.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on

3

technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

"Trade dress refers to a product's overall image, including its size, shape, color, graphics, packaging, and label, and receives protection against infringement under § 43(a)(1) [of the Lanham Act]." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 20 (7th Cir. 1992) (internal quotation marks and citations omitted). Under the Lanham Act, "[a]ny person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the . . . origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1)(A). The Lanham Act thus provides a private right of

4

action to product manufacturers who believe that others are copying the overall image of their products and sowing confusion in the marketplace.

To hold Sears liable for the alleged trade dress infringement, Weber brings two claims—one for unfair competition and false designation of origin, and the other for federal trade dress infringement. Compl. at 9, 12. They are redundant. Weber's unfair competition claim does not allege that Sears committed false advertising under 15 U.S.C. § 1125(a)(1)(B). *See* Compl. at 9-11. Instead, it alleges that the Kenmore grills confuse consumers. *See, e.g.*, *id.* ¶ 59. To bring a confusion claim under the Lanham Act, Weber must plausibly plead that (1) it owns a protectable trademark and (2) consumers are likely to confuse Sears's products with its own. *Forum Corp. of N. Am. v. Forum, Ltd.*, 903 F.2d 434, 439 (7th Cir. 1990). But the protectable trademark Weber asserts here *is* its trade dress. *See* Compl. ¶ 54 ("Sears intentionally copied and offered in interstate commerce gas grill products that create the same overall visual effect and appearance as the family of grills in Weber's Genesis® line."). Weber's unfair competition claim really seeks to hold Sears liable for copying Weber's trade dress, meaning that the two claims are duplicative. Accordingly, the Court construes them as a single claim for trade dress infringement.

To bring a trade dress infringement claim, Weber must plausibly plead that (1) its trade dress is nonfunctional, (2) its trade dress has acquired secondary meaning, and (3) a likelihood of confusion exists between its trade dress and Sears's trade dress. *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1015 (7th Cir. 2005). But these three elements presuppose that Weber has defined what its trade dress actually

5

is. To survive this motion to dismiss, then, Weber must have identified the claimed trade dress before plausibly pleading the three elements of a trade dress infringement claim: nonfunctionality, secondary meaning, and a likelihood of confusion.

## A. Weber's Trade Dress

Sears first argues that Weber has failed to define its trade dress with the requisite specificity. R. 21, Def.'s Br. at 5. In response, Weber says yes it has, pointing to this allegation in its complaint: "Weber has expended considerable time, effort and resources to design and develop unique and inherently distinctive appearances for its Genesis® grill products including, without limitation, their distinctive shape, proportions and feature placements, such as their shroud riveted band design and door trim design." Compl. ¶ 68; R. 24, Pl.'s Resp. at 8-9. Paragraph 68 also incorporates ¶ 55 by reference, which in turn includes photographs of the Weber Genesis S310 and S330 grills placed next to the Kenmore Elite Stainless and Espresso grills for a side-by-side comparison. *Id.* ¶ 55.

The majority of these allegations are not entirely enough to place this Court or Sears on notice of what exactly Weber believes is its protectable trade dress. Although courts must assess the "overall appearance" of trade dress for similarity, *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 620 (7th Cir. 1995) (citation omitted), that principle does not mean that simply pointing to a product's overall appearance is enough to state a claim for trade dress infringement. Rather, the overall appearance of the trade dress comes into play only *after* the trade dress is first properly identified with the "discrete elements which make up that combination . . . separated out and identified in a list."

6

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 634 (6th Cir. 2002) (quoting MCCARTHY ON TRADEMARKS § 8:3) (internal quotation mark omitted); *see also Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997) ("Nonetheless, focus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress. Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market."). Instead of precisely identifying the character and scope of its trade dress, Weber simply includes photographs of two entire grills—not even close-ups of particular grill features—and describes its trade dress as "including, *without limitation*, their distinctive shape, proportions and feature placements." Compl. ¶ 68 (emphasis added). Without more factual detail as to what exactly the grill shapes, proportions, and features are, these extremely broad categories are insufficient to put the Court and Sears on notice of what Weber believes is its protectable trade dress. And that means that neither the Court nor Sears can easily determine whether the elements of a trade dress infringement claim are adequately pled. Contrary to its complaint, Weber must place a limit on the trade dress it would like to claim.

Weber disagrees, citing to three cases from the Northern District of Illinois that denied motions to dismiss trade dress infringement claims on pleading-standard grounds. Pl.'s Resp. at 2-4. But two of those cases were decided before *Twombly* and *Iqbal* and applied the no-set-of-facts standard that *Twombly* "retire[d]," 550 U.S. at

563. *See Woman's Newspapers, LLC v. Cavanagh*, 2005 WL 3591808, at *3 (N.D. Ill. Dec. 29, 2005); *David White Instruments, LLC v. TLZ, Inc.*, 2003 WL 21148224, at *8 (N.D. Ill. May 14, 2003). And even if the complaint in the third cited case survived a motion to dismiss despite a "somewhat conclusory" identification of trade dress just by attaching product photographs, that decision is not binding on this Court. *See Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*, 790 F. Supp. 2d 732, 737 (N.D. Ill. 2011). Indeed, although the Seventh Circuit has yet to decide exactly how detailed a complaint's trade dress allegations must be to overcome a post-*Iqbal* motion to dismiss, controlling precedent assumes that plaintiffs will identify and describe their trade dress in *some* detail. *See, e.g.*, *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 (1992) (quoting the plaintiff's description of the precise constituent elements of its Mexican restaurants' trade dress); *August Storck*, 59 F.3d at 619-20 (detailing the constituent elements of both plaintiff's and defendant's trade dress before concluding that consumers were unlikely to be confused by the two). Weber's cited cases, therefore, do not support its position that including pictures of its grills in its complaint, without detailed description, is enough. *See* Pl.'s Resp. at 8-9.

But Weber's complaint, as it stands now, does contain two factual allegations that could form the basis for a trade dress infringement claim. Specifically, Weber uses the Genesis "shroud riveted band design and door trim design" as examples of protectable trade dress. Compl. ¶ 68. In fact, those are the only examples that appear in the complaint. Weber's response brief, moreover, emphasizes those features. Pl.'s Resp. at 8. Although Weber does not clarify exactly what it means by "shroud riveted

8

band design" and "door trim design," the Genesis grill photographs and the figures in the '834 and '045 Patents show that the Genesis grills appear to have metal bands running along the edges of the grill shrouds and along the doors in the grill bodies. *See id.* ¶¶ 33, 44, 55. These bands outline a border or trim around the grill shrouds and doors. *See id.* And parts of these bands—at least the bands bordering the grill shrouds—appear to house metal rivets that protrude above the surface instead of sitting flush against the metal. *See, e.g., id.* ¶¶ 33, 55. So after reading "shroud riveted band design" and "door trim design" in combination with the photographs and patent figures, the Court construes Weber's trade dress, for the purposes of its infringement claim, as (1) the metal bands bordering the edges of the grill shroud and doors and (2) any metal rivets on top of those bands.[3] This reading of Weber's complaint gives Sears enough notice of what Weber believes is its protectable trade dress. It also gives the Court a sufficient basis to determine whether Weber has plausibly pled that Sears has infringed its trade dress, which is the second hurdle that Weber must clear.

## B. Elements of a Trade Dress Infringement Claim

### 1. Nonfunctionality

Because Weber has not alleged that its trade dress is federally registered, to bring a trade dress infringement claim it must first plausibly plead that its trade dress

---

[3]The Court notes that Weber's complaint alleges two separate "designs"—one for the shroud riveted band and the other for the door trim. *See* Compl. ¶ 68. But it appears from the photographs and patent figures that the metal band bordering the grill shrouds and doors are not materially different designs. *See, e.g., id.* ¶ 55. Thus, the Court construes those two designs together. If Weber disagrees, it may file a motion for leave to amend the complaint and attach a proposed amended complaint that alleges, in much greater factual specificity, what those two designs entail.

is not functional. 15 U.S.C. § 1125(a)(3). Trade dress is functional "if it is essential to the use or purpose of the [product] or affects the cost or quality of the [product]." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S.23, 35 (2001) (internal quotation marks and citation omitted). Put differently, "if a design enables a product to operate, or improves on a substitute design in some way (such as by making the product cheaper, faster, lighter, or stronger), then the design cannot be trademarked; it is functional because consumers would pay to have it rather than be indifferent toward or pay to avoid it." *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010). So the question is whether the metal bordering the grill shroud and doors, and any rivets on top of that trim, enables the Weber Genesis grills to operate or is otherwise a feature that consumers would pay Weber to have.

Sears has no quarrel with these basic principles. Instead, it argues that Weber's complaint conclusorily pleads that its trade dress is nonfunctional. Def.'s Br. at 12. True, Weber's complaint merely pleads allegations like "[t]he Weber Genesis grill design is non-functional" and "Weber's non-functional trade dress." Compl. ¶¶ 58, 69. But the photographs and patent figures found elsewhere in the complaint demonstrate that it is plausible that the metal borders and protruding rivets are nonfunctional design features. The depictions plausibly show that the metal borders serve a decorative purpose rather than enable the grill to operate. *See, e.g.*, *id.* ¶ 55. Indeed, it is entirely plausible that the Weber Genesis grills would be just as good at grilling food if the shroud and doors were *un*trimmed with metal. The same goes for the metal rivets. Although it is unclear from the pictures what function the rivets perform (if

10

any), it is again plausible that the rivets are also there to decorate the grill—lending it a sturdy, industrial look—rather than to affix the bands to the grill shroud or to fasten the corners of the shroud together. *See id.* And consumers would not necessarily pay extra to have a metal-trimmed grill or a grill with superfluous rivets. *Jay Franco & Sons*, 615 F.3d at 857. It would be different if the trade dress was the entire grill shroud itself; the lid of a grill, which traps heat and smoke onto the grilling surface when lowered, is clearly functional. But the Court has limited Weber's trade dress claim to something more narrow than just the grill shroud as a whole. With that construction, Weber's complaint plausibly pleads that its trade dress is nonfunctional.

## 2. Secondary Meaning and a Likelihood of Confusion

Besides pleading nonfunctionality, Weber must also plead that its trade dress acquired "secondary meaning" among consumers, and that consumers are likely to be confused between the trade dress of the Weber Genesis and Sears Kenmore grills.[4] *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 636 (7th Cir. 1999) (citation omitted). Trade dress acquires secondary meaning when consumers associate the design with a particular manufacturer. *Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 627 (7th Cir. 2010) (citation omitted). Accordingly, Weber must plausibly

---

[4]Although these are separate elements of a trade dress infringement claim, Sears contends, in the context of discussing secondary meaning, that the likelihood-of-confusion element is also implausibly pled. *See* Def.'s Br. at 8. The Court likewise discusses both elements simultaneously, especially because the analysis at this stage is similar for both elements.

plead that there is "a link in the minds of consumers between the [product] and its source." *Jay Franco & Sons*, 615 F.3d at 857 (citations omitted).

Sears again argues that Weber's complaint conclusorily pleads that its grills have achieved secondary meaning and that consumers are likely to be confused. *See* Def.'s Br. at 8. Weber's complaint, however, passes muster. Although allegations like "[t]he Weber Genesis grill design obtained secondary meaning well prior to Sears' introduction of the Accused Products" and "[s]ales of Sears' Accused Products are likely to cause consumer confusion" are impermissible legal conclusions, Compl. ¶¶ 54, 60, Weber does plead some factual allegations. For example, Weber alleges that its Genesis trade dress (that is, its metal trim and rivets) is "unique" and has a "distinctive appearance." *See, e.g.*, *id.* ¶¶ 61, 68. And Weber has also pled that it has "expended considerable time, effort and resources to design and develop" its trade dress. *Id.* ¶ 68. Read together, these factual allegations plausibly plead that Weber has invested into building its brand cachet in the marketplace, causing consumers to associate grills possessing the unique and distinctive riveted metal shroud and door trim with the Weber brand. Indeed, in its response brief, Weber contends that "[i]n the entire marketplace, there are only two companies with the Weber Genesis grill design—the original Weber and the knock-off by Sears." Pl.'s Resp. at 7. This assertion—which went unrebutted in Sears's reply brief—further supports the alleged uniqueness of Weber's trade dress. Accordingly, as construed by the Court, it is plausible that consumers associate riveted metal shroud and door trims with Weber grills—so much so that they are likely to be confused if they see Kenmore grills with that trim.

12

To be sure, Weber may face a heavy evidentiary burden after discovery to prove secondary meaning and a likelihood of confusion. At summary judgment (if this case proceeds to summary judgment), the Court may consider several factors in deciding whether Weber's riveted metal shroud and door trim has acquired secondary meaning, including consumer testimony and surveys. *Platinum Home Mortgage Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 732 (7th Cir. 1998) (citation omitted). Likewise, "[i]n determining whether the likelihood of confusion exists, courts consider such factors as the type of trademark in issue, the similarity of design, similarity of products, identity of retail outlets and purchasers, identity of the advertising media utilized, the alleged infringer's intent, and actual confusion." *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.3d 1176, 1185 (7th Cir. 1989) (internal quotation marks and citation omitted). It is entirely possible that with the benefit of discovery, Sears may demonstrate that consumers do not associate a riveted metal border, around the grill shroud and doors, with the Weber brand—or any brand—at all. But that is a matter for discovery. And at this early stage in the litigation, and especially after assuming the truth of Weber's factual allegations, the Court concludes that its complaint (as construed) plausibly states a claim for trade dress infringement.

13

## IV. Conclusion

For the reasons discussed above, Sears's motion to dismiss Count 4 [R. 20] is denied. On or before November 12, 2013, Sears shall file an answer to Count 4.

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: October 25, 2013