IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEBER-STEPHEN PRODUCTS LLC, | |
| Plaintiff, | Case No. 1:13-cv-1686 |
| v. | Honorable Edmond E. Chang |
| SEARS HOLDINGS CORPORATION and SEARS, ROEBUCK AND COMPANY, | Magistrate Judge Michael T. Mason |
| Defendants. | |

**WEBER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56**

**REDACTED PUBLIC VERSION**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................... 2

III.   LEGAL STANDARD........................................................................................... 2

IV.   ARGUMENT ....................................................................................................... 3

       A.     Count X (Sherman Act, Section 2) ......................................................... 3

              1.     Sears Has Failed to Define a Valid Relevant Market ................................ 4

              2.     Sears Cannot Prove that Weber Has Monopoly Power ............................ 7

              3.     Sears Cannot Prove that Weber Enforced the '874 Patent
                     in this Lawsuit to Exclude Sears from Selling Grills................................. 9

       B.     Count XIII – Breach of Contract ........................................................... 11

V.    CONCLUSION.................................................................................................. 14

i

# TABLE OF AUTHORITIES

## Cases

*Air Safety, Inc. v. Teachers Realty Corp.,*
  706 N.E.2d 882 (Ill. 1999)..............................................................................................11

*Allstate Ins. Co. v. Winnebago Cnty. Fair Ass'n Inc.,*
  475 N.E.2d 230 (Ill. App. 1985).....................................................................................14

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986).......................................................................................................2, 3

*Augustine Medical, Inc. v. Mollinakrodt Inc.,*
  2003 U.S. Dist. LEXIS 6079 (D. Del. Apr. 9, 2003)........................................................9

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007)...........................................................................................................1

*Brown Shoe Co. v. United States,*
  370 U.S. 294 (1962)...........................................................................................................5

*C.R. Bard, Inc. v. M3 Sys., Inc.,*
  157 F.3d 1340 (Fed. Cir. 1998).........................................................................................3

*Cal. Motor Transp. Co. v. Trucking Unlimited,*
  404 U.S. 508 (1972)......................................................................................................4, 11

*Carpenter Technology Corp. v. Allegheny Technologies, Inc.,*
  2011 U.S. Dist. LEXIS 112556 (E.D. Pa. Sep. 29, 2011) ............................................8, 10

*CCPI Inc. v. American Premier,*
  967 F. Supp. 813 (D. Del. 1997)......................................................................................10

*Celotex Corp., v. Catrett,*
  477 U.S. 317 (1986)...........................................................................................................2

*Delano Farms Co. v. Cal. Table Grape Comm'n,*
  655 F.3d 1337 (Fed. Cir. 2011).........................................................................................5

*IGT v. Alliance Gaming Corp.,*
  702 F.3d 1338 (Fed. Cir. 2012).........................................................................................8

*Ill. Tool Works Inc. v. Indep. Ink, Inc.,*
  547 U.S. 28 (2006).............................................................................................................5

*Jack Winter, Inc. v. Koratron Co., Inc.,*
  375 F. Supp. 1 (N.D. Cal. 1974).......................................................................................9

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
466 U.S. 2 (1984) (O'Connor, J., concurring)..............................................................5

*Jewett v. Anders*,
521 F.3d 818 (7th Cir. 2008) ........................................................................................2

*Kaiser Foundation v. Abbott Laboratories*,
2009 U.S. Dist. LEXIS 107512 (E.D. Cal. Oct. 8 2009) ............................................8

*Magin v. Monsanto Co.*,
420 F.3d 679 (7th Cir. 2005) ........................................................................................2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)......................................................................................................2

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
708 F.2d 1081 (7th Cir. 1983) .....................................................................................7

*Midwest Builder Distrib., Inc. v. Lord & Essex, Inc.*,
891 N.E.2d 1 (Ill. App. Ct. 2007) ..............................................................................11

*Tyco Healthcare Group LP v. Mutual Pharm. Co.*,
2014 U.S. App. LEXIS 15096 (Fed. Cir. Aug. 6, 2014)..............................................3

*United States v. E.I. du Pont de Nemours & Co.*,
351 U.S. 377 (1956).............................................................................................4, 5, 7

*Unitherm Food Systems, Inc. v. Jennie-O Foods, Inc.*,
375 F.3d 1341 (Fed. Cir. 2004)....................................................................................9

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
382 U.S. 172 (1965)............................................................................................ *passim*

*Weber-Stephen Prods. LLC v. Sears Holding Corp.*,
2014 U.S. Dist. LEXIS 21338 (N.D. Ill. Feb. 20, 2014) .............................................5

## Other Authorities

Fed. R. Civ. P. 56(c) .............................................................................................................2

## I.    INTRODUCTION

In response to claims that Sears Holdings Corporation and Sears, Roebuck & Company (collectively "Sears") copied Weber-Stephen Products LLC's ("Weber's") patented grill design and trade dress, Sears counterclaimed with alleged antitrust and breach of contract claims that have no basis as a matter of law. This Court has already dismissed all but one of Sears' antitrust claims (Count X) and allowed discovery to proceed on the remaining antitrust count and the breach of contract claim (Count XIII). Fact discovery has now concluded, and based on this discovery, it is clear that Weber is entitled to summary judgment on both of these counterclaims.

Sears' admissions demonstrate that its definition of the relevant market is invalid and its assertions of Weber's monopoly power and exclusionary conduct are without any factual or legal support. Accordingly, there is no genuine issue as to Weber's alleged monopolization or attempted monopolization in violation of Section 2 of the Sherman Act. There is simply no evidence that Weber has a monopoly on grills, especially when one considers all the competition in the marketplace. Moreover, the only antitrust claim that Sears makes in Count X is that United States Patent No. 8,347,874 B2, entitled "Grease Drip Pan and Gas Tank Blocker for a Barbecue Grill" (the "'874 patent"), allegedly excluded Sears from the relevant market. That makes absolutely no sense, considering the undisputed and admitted facts that the lawsuit did not harm Sears at all or exclude it from any market. Throughout the lawsuit, Sears continued to sell the allegedly infringing grills and then changed its design to one that does not infringe the '874 patent, so any past, present or future exclusion by the '874 patent is impossible.

As the U.S. Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, antitrust lawsuits that have no basis are burdensome and expensive, and should not be allowed to continue just so the claimant can have some "*in terrorem*" leverage. 550 U.S. 544, 558 (2007) (citation omitted). Antitrust claims must have a factual and legal basis, and this one does not.

So too with respect to Sears' breach of contract counterclaim. The uncontested counterparty to the contract at issue is Weber-Stephen Products Co. ("WSP Co.") – a company that ceased manufacturing and selling grills after selling substantially all of its assets in 2010 –

rather than the party to this case, Weber. Sears was well aware of this fact before it filed its breach of contract claim, and yet has pursued it anyway. But more importantly, due to the small amount of parts that Sears' contractor, Fidelitone, actually needed to stock for Sears warranties, the parties agreed (prior to this lawsuit) to let Sears purchase as many parts as it needed for this purpose. And Weber actually sold the exact amount of parts that Fidelitone ultimately ordered for Sears. Thus there cannot be any damages here.

Before Weber is forced to spend more time and significant money on experts and trial preparation for these counts, it is respectfully suggested that it is time to extinguish the baseless allegations of Sears, so that the parties and the Court can focus on the real trade dress and patent claims that are at the core of this action.

## II.   FACTUAL BACKGROUND

Weber incorporates its Statement of Undisputed Material Facts filed herewith.

## III.   LEGAL STANDARD

Summary judgment is proper where "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks omitted) (footnote omitted). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp., v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the . . . [non-moving party's] position will be insufficient; there must be

2

evidence on which the jury could reasonably find for the . . . [non-movant]." *Anderson*, 477 U.S. at 252.

## IV. ARGUMENT

### A. Count X (Sherman Act, Section 2)

Sears' purported Sherman Act, Section 2, counterclaim (Count X) alleges that Weber has "monopoly power" in a supposed market for grills that sell between $500 and $2,000, and that by "seeking to enforce a patent that was obtained through fraud, Weber has engaged in ***exclusionary*** conduct intended to maintain its monopoly power." (Def.'s Ans. to Pl.'s Am. Compl. & Countercl., Apr. 16, 2014, ECF No. 139 (hereinafter, "Countercl.") ¶ 126) (emphasis added). Weber is entitled to summary judgment as a matter of law on this claim. Sears has no evidence that properly defines the arbitrary "market" it asserts, or that Weber has monopoly power, or that this lawsuit has excluded Sears from any market. The last point, exclusion, is totally absent here and alone defeats this claim as a matter of law. Sears has continued to sell its grills and compete to this day.

The controlling law over Sears' Sherman Act claim is *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965). To succeed on its counterclaim, Sears must follow the two-part test established by the U.S. Supreme Court. *Id.* at 174 ("[T]he enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present."). First, Sears has to show, by clear and convincing evidence, that Weber fraudulently procured its patent:

> "[T]he road to the Patent Office is so tortuous and patent litigation is usually so complex, that 'knowing and willful fraud' as the term is used in Walker can mean no less than clear, convincing proof of intentional fraud involving ***affirmative dishonesty***, 'a deliberately planned and carefully executed scheme to defraud * * * the Patent Office.'"

*C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364-65 (Fed. Cir. 1998) (citation omitted); *See also, Tyco Healthcare Group LP v. Mutual Pharm. Co.*, 2014 U.S. App. LEXIS 15096 at *29 (Fed. Cir. Aug. 6, 2014) (affirming summary judgment of no *Walker Process* fraud for failure to

3

show "intentional fraud involving affirmative dishonesty" (citing *C.R. Bard, Inc.*, 157 F.3d at 1364)).

For purposes of this motion only, Weber focuses on the second prong of the test[1], which requires that Sears must *also* prove Weber's "exclusionary power" through the prosecution of the '874 patent "in terms of the relevant market for the product involved." *Walker Process,* 382 U.S. at 177. As the U.S. Supreme Court explained, Sears must prove under the Sherman Act that Weber used a patent, procured by fraud, to "exclude a competitor from the market." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 512-13 (1972) (citation omitted). For Sears to succeed on its *Walker Process* counterclaim, Sears must establish all of the elements of a Sherman Act violation, *Walker Process*, 382 U.S. at 177-78, including: the identification of a relevant market; Weber's monopoly power in that market; the exclusionary power of the patent in the relevant market; and an injury suffered by Sears as a result of Weber excluding Sears from the market. Sears has no facts which would support such claims. If anything, the undisputed facts (including Sears' own binding admissions) clearly establish that Sears' *Walker Process* counterclaim is wholly without merit.

### 1. Sears Has Failed to Define a Valid Relevant Market

A "[r]elevant market . . . [is defined as being made up of] commodities reasonably interchangeable by consumers for the same purpose." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956). It is necessary for Sears to prove a relevant market because "[w]ithout a definition of that market there is no way to measure [the defendant's] ability to lessen or destroy competition." *Walker Process*, 382 U.S. at 177-78. As the Supreme Court explained:

> [a] common misconception has been that a patent or copyright, a high market share, or a unique product that competitors are not able to offer suffices to demonstrate market power. ... [F]or example, a patent holder has no market power in any relevant sense if there are close substitutes for the patented product.

---

[1] Weber reserves the right to challenge the first element, if necessary, at trial. However, because of Sears' undisputed failure to prove the second prong of the test (which alone is completely dispositive of its claim), Weber limits this motion to the second element of the *Walker Process* standard.

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 37 n.7 (1984) (O'Connor, J., concurring); *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 45-46 (2006) (owning a patent does not mean the owner has "market power"). For example, if "an increase in price" of a Weber grill "would lead its purchasers to switch to a different variety" of grill, like a Kenmore, Char-broil, Brinkmann, Broil King, etc., then all of those substitutes are "part of the same market." *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1351 (Fed. Cir. 2011) (affirming dismissal of *Walker Process* claims because of a lack of facts establishing the patent holder's power in a properly defined market) (*citing Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)); *see also E.I. du Pont*, 351 U.S. at 395.

Sears claims that Weber is monopolizing a supposed market for "premium gas grills," Countercl. ¶ 126, priced from $500.00 to $2,000.00. *Weber-Stephen Prods. LLC v. Sears Holding Corp.*, 2014 U.S. Dist. LEXIS 21338, at *22 (N.D. Ill. Feb. 20, 2014) (Sears alleges that the relevant market is "premium grills between $500 and $2,000"). Sears has failed, however, to show that this is a relevant market for purposes of its antitrust counterclaim. Moreover, none of Sears' documents or witnesses support this market definition.

First, Sears admitted that ████████████████████████████████████████ ██████. Specifically, Sears' 30(b)(6) witness, James Alt, Senior Vice President and President of Seasonal Outdoor Living for Sears Corporation, admitted that ████████████████ ████████████████████████████████████████████ (Exhibit 1, Sears 30(b)(6) Dep. 29:19-30:18). Because non-gas grills are "reasonably interchangeable . . . for the same purpose" as gas grills, *E. I. du Pont*, 351 U.S. at 395, they properly are included in the relevant market. *See Walker Process*, 382 U.S. at 177-78 (a proper market definition is essential because there "may be effective substitutes for the device which do not infringe the patent").

Second, Sears admitted that the market for outdoor grills ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████. (*See* Exhibit 1, Sears 30(b)(6) Dep. 128:16-129:14 (████████████████████

); *see also* Id. at 90:18-91:8 (

); Exhibit 2, Kruszewski Dep. 179:13-180:4 (

); Exhibit 3,

PX65 (advertising the Kenmore Elite 3 Burner Duel Fuel 500 Series grill in espresso for $399.88)).

Moreover, Sears has identified its own Kenmore Elite 500 Series grill

. (*See* Exhibit 2, Kruszewski Dep. 72:19-73:1 (

); Id. at 179:13-180:13 (admitting that a

)). Notwithstanding, Sears routinely sells its

Kenmore Elite 500 Series grill for

. (*See* Exhibit 1, Sears 30(b)(6) Dep. 34:22-23

(

)). Nor did Sears' witnesses agree that

. (*See* Exhibit 2, Kruszewski Dep. 69:8-22 (

██████████████ ); Exhibit 1, Sears 30(b)(6) Dep. 147:20-148:5 (acknowledging that ██████████
████████████████████ ).

Sears filed a complaint with a fabricated "market" that does not even match its own view of the actual marketplace and that has no support in a single Sears' document or single line of deposition testimony. The undisputed proof shows that the relevant market is far broader than that alleged by Sears, and Sears' definition does not provide a basis for evaluating whether Weber used its patent to harm competition. (Exhibit 1, Sears 30(b)(6) Dep. 72:6-19 (████████████████████ ); Id. at 74:1-2 (████████████████ ). There is simply no evidence to support Sears' alleged market.

### 2. Sears Cannot Prove that Weber Has Monopoly Power

Even if Sears properly defined a relevant market – which it has not done – to state an antitrust claim based upon fraudulent procurement of a patent, Sears also must prove that Weber has monopoly power in the relevant market. Monopoly power is defined as "the power to control prices or exclude competition." *E.I. du Pont*, 351 U.S. at 391 (citations omitted). The evidence demonstrates that Weber does not possess monopoly power in that alleged market sufficient to prove a Section 2 violation.

For example, Sears' own documents identify ████████████████████ ███████████████████████. (*See, e.g.*, Exhibit 4, PX 310A (████████████████████ ). *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1106-07 (7th Cir. 1983) (citing cases standing for the proposition that a market share of at least seventy percent allows courts to infer the existence of monopoly power). According to Sears, the market is ████ ████████████████. (*See* Exhibit 1, Sears 30(b)(6) Dep. 67:2-9 (████████████████████ ).



There is also no shortage of retail opportunities for consumers to purchase grills, each offering a range of competitive grill products. By Sears' own admission, it competes against



(Exhibit 1, Sears 30(b)(6) Dep. at 73:5-74:23; 110:13-17; 147:14-19).

. (*See* Exhibit 5, PX 314 (table titled "Propane Grills")).

In short, Weber could not possibly be monopolizing the alleged market because Sears admitted in its 30(b)(6) deposition that the market is ███████████████████ :

████████████████████████████████████████████████

(Exhibit 1, Sears 30(b)(6) 67:2-9; 72:6-19; 74:1-23).

In light of these binding admissions, Sears' allegation that Weber possesses monopoly power is baseless. See e.g., *IGT v. Alliance Gaming Corp.*, 702 F.3d 1338, 1348 (Fed. Cir. 2012) (affirming grant of summary judgment dismissing antitrust counterclaims where the "undisputed facts in this case show that meaningful competition exists" between the patented design and economic substitutes); *Kaiser Foundation v. Abbott Laboratories*, 2009 U.S. Dist. LEXIS 107512 at *30 (E.D. Cal. Oct. 8 2009) ("Because plaintiff cannot demonstrate monopoly power in a well-defined market, plaintiff's Section 2 monopolization claim fails"; granting summary judgment); *Carpenter Technology Corp. v. Allegheny Technologies, Inc.*, 2011 U.S. Dist. LEXIS 112556 at *33 (E.D. Pa. Sep. 29, 2011) ("Carpenter has failed to provide sufficient evidence in support of its proposed relevant market definition, and has therefore failed to show that ATI had market power"). The record is undisputed that there are many competitors selling competing grills in the United States from all over the world.[2] Weber lacks the requisite market power by

---

[2]     Sears' admission that ████████████████████████████████████ – also demonstrates that Sears' geographic market of the United States fails. (Exhibit 1, Sears 30(b)(6) Dep. 271:23-272:14).

which the exclusion of these competitive products could even conceptually be possible, and the '874 patent most certainly does not provide Weber with a means of exercising any such power either. Moreover, there is no evidence that Weber has ever attempted to reduce output of Weber grills, much less doing so with the goal of raising market prices. (Exhibit 1, Sears 30(b)(6) Dep.at 56:12-57:2 (Sears is ████████████████████████████████ ████████████). Thus, there is simply no evidence that Weber has monopolized any market for grills, much less the alleged market. *Unitherm Food Systems, Inc. v. Jennie-O Foods, Inc.*, 375 F.3d 1341, 1363-64 (Fed. Cir. 2004) (vacating judgment of antitrust liability where party "failed to present any facts that could allow a reasonable jury to accept either its proposed market definition or its demonstration of antitrust injury."). There is more.

### 3. Sears Cannot Prove that Weber Enforced the '874 Patent in this Lawsuit to Exclude Sears from Selling Grills

Sears also cannot show that Weber engaged in *exclusionary* conduct – meaning that it used the '874 patent to exclude Sears from selling grills. This is the *sine qua non* of a *Walker Process* claim and is the only alleged wrongful conduct in Count X. As the court explained in *Walker Process,* even if there was "evidence of knowing and willful acts which were intended to exclude competition," that is insufficient to show monopolization in the absence of proof of "the exclusionary power" of such acts "in terms of the relevant market for the product involved." *Jack Winter, Inc. v. Koratron Co., Inc.*, 375 F. Supp. 1, 69 (N.D. Cal. 1974) (citing *Walker Process,* 382 U.S. at 177). If there are "effective substitutes" for the grill that "do not infringe the patent," there is no *Walker Process* claim because the patent cannot exclude a competitor from the market. *Id.* at 178; *Augustine Medical, Inc. v. Mollinakrodt Inc.*, 2003 U.S. Dist. LEXIS 6079 at *26 (D. Del. Apr. 9, 2003) (granting summary judgment where "there is no evidence of record of any actual lost sales or other specific obstacles to [defendant's] ability to compete related to [plaintiff's] alleged anticompetitive activities.").

In this case, the absence of exclusionary power of the patent is undisputed. First, there are many, many other non-infringing substitutes for the '874 patented feature on the Weber grill.

9

Sears itself claims to have at least one. Rather than having the '874 patent exclude them from the market, ███████████████████████████████████████████████████████████████ (*see* Exhibit 6, Kobrick Dep. 235:21-236:16), ███████████████████████████████████████████████████. Thus, this lawsuit has not excluded Sears from selling competing grills:



(Exhibit 1, Sears 30(b)(6) Dep. at 22:17-24). Sears admitted that it has █████████████████

(Id. at 19:18-24; 23:2-8; *see also* 22:11-16). As Sears further testified:

(Id. at 25:2-19). This evidence makes plain that the '874 patent has not and will not exclude Sears (or any other party) from selling a competing, non-infringing grill; *See, Carpenter Technology Corp.*, 2011 U.S. Dist. LEXIS 112556 at *33 (granting summary judgment dismissal of Section 2 claim because of plaintiff's failure "to prove that there are no reasonable substitutes for the [patented product]"); *CCPI Inc. v. American Premier*, 967 F. Supp. 813, 817 (D. Del.

1997) ("While stopping short of holding the relevant product market for an antitrust claim can never be defined by a patent, the Court feels such cases will at best be a rarity.").

It is undisputed that Weber lacks monopoly power, did not engage in exclusionary conduct, and imposed no harm on Sears through the enforcement of its patent. Even if Sears had continued to infringe, and Weber obtained an injunction against Sears, there are many other substitutes for the '874 patent. Accordingly, there is no genuine issue of material fact by which a jury could reasonably find Weber used the '874 patent, allegedly "obtained by fraud to exclude a competitor from the market" – the very definition of a *Walker Process* claim. *Cal. Motor Transp.*, 404 U.S. at 512-13 (citations omitted). Weber is entitled to summary judgment as a matter of law on Count X.

### B.    Count XIII – Breach of Contract

Weber is also entitled to summary judgment as a matter of law on Sears' Count XIII – Breach of Contract, because it is not a party to the contract identified in Sears' Counterclaim but more importantly because Sears has suffered no damages from the alleged breach. (ECF No. 139-1, Ex. A to Countercl. (hereinafter, the "Agreement")). That Agreement specifies that it should be "construed and enforced" pursuant to Illinois law. (Id. at 4).

Under Illinois law, when a contract is unambiguous – as it is here – then the court must interpret the contract "as a matter of law without the use of parol evidence." *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999) (citation omitted); *Midwest Builder Distrib., Inc. v. Lord & Essex, Inc.*, 891 N.E.2d 1, 19 (Ill. App. Ct. 2007) ("This is sometimes referred to as the 'four corners' rule: when interpreting an integrated contract, courts are limited to considering material that lies within the four corners of the text, rather than resorting to extrinsic evidence." (citation omitted)).

In Count XIII, Sears claims that Weber breached the Agreement with Sears, Roebuck & Co. by not selling parts to Sears, Roebuck & Co. after Weber, the LLC, stopped selling Weber Grills to Sears. Yet, Weber *is not a party* to that Agreement. This integrated Agreement is

11

unambiguous in expressly naming "Sears, Roebuck & Co." and "Weber-Stephen Products Co." ("Seller" or "WSP Co.") as the only two parties to the Agreement.

Before Sears brought this baseless breach of contract claim against Weber, it knew in 2010 that WSP Co. was a different company and was selling substantially all of its *assets* to the LLC and thus would no longer be selling Weber grills or parts.[3] ███████████████ ███████████████████████. (*See* Exhibit 7, WeberEmail00071953, Nov. 22, 2010 WSP Co. Ltr. to Sears; Exhibit 8, WeberEmail00071941, Dec. 6, 2010 WSP Co. E-mail to Sears; Exhibit 9, WeberEmail00071942, Dec. 6, 2010 Sears E-mail to Sears Employees and WSP Co. Employee).[4] Indeed, the Agreement expressly prohibits assignment without Sears' prior written consent. (Agreement, p.4 ("Seller shall not assign (by contract, operation of law or otherwise) its rights or obligations under this Agreement … except with Sears prior written consent")). Thus, the Agreement was never assigned to Weber, the LLC. Instead, Sears wanted Weber to ██████ ███████████████████████. (*See* Exhibit 7 at WeberEmail00071953, WeberEmail00071957).

But this is not the only reason why Sears' contract claim fails. Specifically, in 2012, when Weber gave notice that it was no longer going to sell grills to Sears, Weber provided Sears and Fidelitone Logistics, which was actually the company that bought parts for Sears' service plan repairs from Weber and stocked them for Sears, the opportunity to ensure that Sears had all the necessary parts to service outstanding warranty work on Weber grills. (Exhibit 12, Fidelitone 30(b)(6) 14:1-13, 26:2-16, 69:9-12). When Weber told Fidelitone that ██████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████. (Exhibit 13, PX

---

[3]    According to public records, Weber, the LLC, is a separate entity from WSP Co., which is now named "WSP Holdings Co." (*See, e.g.,* Exhibits 10 and 11).

[4]    It is important to note that WSP Co. has no obligation to sell parts to Sears. The Agreement does not obligate the Seller to do so it if stops "manufacturing or supplying" parts. Here, ████████████████████████. (Exhibit 7 at WeberEmail00071955).

12

1008; Exhibit 12, Fidelitone 30(b)(6) 44:11-21, 46:8-25). The reason this made sense was that

███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████.[5] (Exhibit 12, Fidelitone 30(b)(6) 42:16-43:23; Exhibit 13, PX 1008).

Weber and Fidelitone ██████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████ (Exhibit 13, PX 1008; *see also* Exhibit 12, Fidelitone 30(b)(6) Dep. 42:7-21). The parties agreed to a one-time buy of future purchases, ***which had no limitation on it***. (Exhibit 12, Fidelitone 30(b)(6) Dep. 46:14-47:13; 60:4-22). It was Sears that unilaterally decided that it wanted to buy only "two years" worth of Weber parts. (Id. at 59:25-60:12). Sears, through Fidelitone, could have purchased as many parts from Weber as it wanted or allegedly needed. (Id. at 60:8-22).

When Weber offered to sell Sears or Fidelitone these additional surplus parts, Weber also made it clear, and both Sears and Fidelitone were on notice, that ██████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
(Exhibit 13, PX1008 at WeberEmail00073442; Exhibit 12, Fidelitone 30(b)(6) Dep. 40:2-12). Sears thus knew that ███████████████████████████████████████████████████████
████. (Exhibit 12, Fidelitone 30(b)(6) Dep. 39:5-40:12; Exhibit 13, PX 1008). But Weber nonetheless indicated that Sears or Fidelitone could purchase whatever parts they needed to support Sears' warranties. (Exhibit 12, Fidelitone 30(b)(6) Dep. at 60:8-22). Sears asked Fidelitone to order two years' worth of parts and has never asked Fidelitone to purchase any additional parts from any other source. (Id. 37:4-7 ("Q … Sears has never requested that your company find another source for Weber grill parts? A None to my knowledge.")). Notably, Weber was still selling parts to Fidelitone for Sears *at the same time* Sears wrongfully filed its

---

[5]     Consumers can also get parts from Weber. Weber offers a free warranty with every product that lasts from 2-25 years, depending on the part. (*See, e.g.* Exhibit 14, Weber Warranties).

13

counterclaim, falsely claiming that it had suffered damages due to Weber's alleged failure to sell it parts. (*Cf.* Sears' Countercls. & Answer & Affirmative Defenses to Counts I-III, Jul. 23, 2013, ECF No. 36 ¶ 147). Sears made its final purchase of Weber parts through Fidelitone in September 2013 (Exhibit 12, Fidelitone 30(b)(6) Dep. 48:1-4).

The bottom line is that Sears has not suffered any damages from the supposed breach of contract. *Allstate Ins. Co. v. Winnebago Cnty. Fair Ass'n Inc.*, 475 N.E.2d 230 (Ill. App. 1985) (proof of damages is a necessary element of a breach of contract claim in Illinois). As indicated,

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████. (*See* Exhibit 13, PX1008 at WeberEmail00073441; Exhibit 15, SEARS005404; Exhibit 16, WeberEmail00074033 (████████
██████████████████████████████████
██████████████████████████████); Exhibit 17, Fidelitone-00127; Exhibit 18, Fidelitone-00132).

As a result, it is undisputed that Sears has incurred no damage from any supposed inability of Sears or Fidelitone to obtain Weber parts for warranty work. Thus, Weber should be granted summary judgment on Count XIII.

## V.     CONCLUSION

For the foregoing reasons, Weber respectfully requests summary judgment on Sears' Counterclaims X and XIII.

Respectfully Submitted,

/s/ J. Robert Robertson
J. Robert Robertson
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5774
Fax: (202) 637-5910
E-mail: robby.robertson@hoganlovells.com

Raymond P. Niro, Jr.
Brian E. Haan
NIRO, HALLER & NIRO
181 W. Madison Street, Suite 4600
Chicago, IL 60602
Tel: (312) 236-0733
Fax: (312) 236-3137

E-mail: rnirojr@nshn.com
E-mail: bhaan@nshn.com

*Counsel for Plaintiff Weber-Stephen Products LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 2, 2014, a true and correct copy of Weber's Notice of Motion, Motion for Summary Judgment, Redacted Memorandum of Law in support thereof, and Redacted Statement of Undisputed Material Facts in support thereof (and non-confidential exhibits thereto), were served upon the following by electronic filing with the Clerk of the United States District Court for the Northern District of Illinois, and thus is available for viewing and downloading from the ECF system:

Paul R. Garcia
Stephen A. Wood
Catherine E. James
David R. Yohannan
KELLEY DRYE & WARREN, LLP
333 West Wacker Drive, 26th Floor
Chicago, IL 60606
Tel: (312) 857-7099
E-mail: pgarcia@kelleydrye.com
E-mail: swood@kelleydrye.com
E-mail: cjames@kelleydrye.com
E-mail: dyohannan@kelleydrye.com

/s/ J. Robert Robertson
*Counsel for Plaintiff Weber-Stephen
Products LLC*