IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEBER-STEPHEN PRODUCTS LLC, | Case No. 1:13-cv-1686 |
| Plaintiff, | Honorable Edmond E. Chang |
| v. | Magistrate Judge Michael T. Mason |
| SEARS HOLDINGS CORPORATION and SEARS, ROEBUCK AND COMPANY, | |
| Defendants. | |

**WEBER'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56.1(a)(3)**

**REDACTED PUBLIC VERSION**

Plaintiff/Counter-Defendant Weber-Stephen Products LLC ("Weber"), by and through its attorneys, Niro, Haller & Niro, Ltd. and Hogan Lovells US LLP, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, submits this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment and states that there is no genuine issue with respect to the following material facts:

## I. THE PARTIES

1. Plaintiff Weber-Stephen Products LLC ("Weber") is a Delaware limited liability company having its principal place of business at 200 East Daniels Road, Palatine, Illinois 60067. (Def.'s Ans. to Pl.'s Am. Complaint & Countercl., Apr. 16, 2014, ECF No. 139 (hereinafter, "Countercl.") ¶ 2).

2. Weber designs, develops, manufactures, and provides outdoor gas, charcoal and electric grills and grilling accessories sold under the Weber brand name, including those within the Genesis product line; Weber holds certain design and utility patents. (Countercl. ¶3).

3. Weber owns and has standing to sue for infringement of United States Patent No. 8,347,874 B2, entitled "Grease Drip Pan and Gas Tank Blocker for a Barbecue Grill," which issued on January 8, 2013 (the "'874 patent"). (Countercl. ¶ 4).

4. Weber also owns and has standing to sue for infringement of United States Design Patent No. D564,834 S, entitled "Shroud for a Barbecue Grill," which issued on March 25, 2008 (the "'834 patent"). (Countercl. ¶ 5).

5. Weber also owns and has standing to sue for infringement of United States Design Patent No. D609,045 S, entitled "Grill," issued on February 2, 2010 (the "'045 patent"). (Countercl. ¶ 6).

6. Defendant Sears Holdings Corporation ("SHC") is a Delaware corporation having its principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179. (Countercl. ¶ 7).

7. Defendant Sears, Roebuck & Co. ("SRC") is a New York corporation having its principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179. SRC is

registered to do business in the State of Illinois. SRC is a wholly owned subsidiary of SHC. (Countercl. ¶ 8).

8. SHC, SRC, and their various related entities own and operate Kmart and Sears retail stores, as well as the sears.com, kmart.com and kenmore.com websites. These entities sell outdoor grills and accessories under the Kenmore brand name. (Countercl. ¶ 10).

9. SRC sells and offers for sale the Kenmore Elite 500 Series of grills. (Countercl. ¶ 11).

10. SRC sells and offers for sale the Kenmore Elite 550 Series of grills. (Countercl. ¶ 12).

11. SRC sells and offers for sale the Kenmore Elite 600 Series of grills. (Countercl. ¶ 13).

12. SRC sells and offers for sale the Kenmore Elite 700 Series of grills. (Countercl. ¶ 14).

## II. JURISDICTION AND VENUE

13. This court has personal jurisdiction over SHC and SRC (together, "Sears"). (Countercl. ¶ 15).

14. Venue is proper pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(b). (Countercl. ¶ 16).

## III. THE RELEVANT MARKET

15. ███████████████████████████████████████ (See Exhibit 2, Kruszewski Dep. 184:17-21).

16. ███████████████████████████████████████ (See Exhibit 1, Sears 30(b)(6) Dep. 26:9-28:7; 29:19-30:18).

17. ███████████████████████████████████████ (See Exhibit 2, Kruszewski Dep. 72:19-73:9).



18. █████████████

(Exhibit 2, Kruszewski Dep. 179:13-180:13).

19. █████████████

(*See* Exhibit 1, Sears 30(b)(6) Dep. 34:13-36:2; Exhibit 2, Kruszewski Dep. 179:13-180:13).

20. █████████████ (*See* Exhibit 1, Sears 30(b)(6) Dep. 90:18-91:14; Exhibit 2, Kruszewski Dep. 179:13-180:13; Exhibit 3, PX 65).

21. █████████████ (*See* Exhibit 1, Sears 30(b)(6) Dep. 90:18-91:14 (█████████████).

22. █████████████ (*See* Exhibit 1, Sears 30(b)(6) Dep. 147:20-148:5).

23. █████████████ (*See* Exhibit 2, Kruszewski Dep. 69:8-22).

24. █████████████ (*See* Exhibit 1, Sears 30(b)(6) Dep. 128:16-129:14).

### IV. LACK OF MARKET POWER

25. █████████████ (*See* Exhibit 1, Sears 30(b)(6) Dep. 67:2-9, 72:6-19).

26. Sales of grills are competitive at various price points. Sears acknowledged that █████████████ (*See* Exhibit 1, Sears 30(b)(6) Dep. 72:6-19; 74:1-11).

27. ███████ (*See* Exhibit 1, Sears 30(b)(6) Dep. 73:5-74:23; 110:13-17; 147:14-19).

28. ███████ (*See* Exhibit 5, PX 314 (table titled "Propane Grills")).

29. ███████ (*See* Exhibit 4, PX 310A).

30. ███████ (Exhibit 1, Sears 30(b)(6) Dep. 271:23-272:14).

## V. LACK OF EXCLUSIONARY CONDUCT

31. ███████ (*See* Exhibit 1, Sears 30(b)(6) Dep. 19:18-24; 22:11-24).

32. ███████ Thus Sears has not been excluded from the sale of gas grills. (*See* Exhibit 1, Sears 30(b)(6) Dep. 19:18-24; 23:2-18).

33. ███████ (*See* Exhibit 1, Sears 30(b)(6) Dep. 25:2-19).

34. ███████ (*See* Exhibit 6, Kobrick Dep. 235:21-236:16).

35. ███████ (*See* Exhibit 6, Kobrick Dep. 235:21-236:16).

36. ███████ (*See* Exhibit 1, Sears 30(b)(6) Dep. 56:2-57:2, 118:24-119:8; Exhibit 19, PX312).

4

## VI. BREACH OF CONTRACT

37. The parties to the suit are Weber-Stephen Products LLC, Sears Holding Corporation, and Sears, Roebuck & Co. (*See* Countercl. ¶¶ 7-8).

38. The parties to the contract dated January 1, 1998 (hereinafter "the Agreement") are Weber-Stephen Products Co. ("WSP Co.") and SRC. (*See* Countercl., Ex. A. pp. 1, 4.)

39. ████████████████████████████████████████ (Exhibit 7 at WeberEmail00071955-56, Nov. 22, 2010 WSP Co. Ltr. to Sears).

40. Weber, the LLC, is a separate entity from WSP Co., which is now named WSP Holdings Co. (*See* Exhibits 10 and 11).

41. The Agreement signed by WSP Co. and SRC states that "Seller shall not assign (by contract, operation of law or otherwise) its rights or obligations under this Agreement or under any other agreement . . . except with Sears prior written consent[.]" (*See* Countercl., Ex. A. p. 4).

42. The Agreement signed by WSP Co. and SRC expressly states that "This Agreement may be amended or modified only by a written instrument signed by the duly authorized representatives of the parties hereto." (*See* Countercl., Ex. A. p. 4).

43. ████████████████████████████████████████ (*See* Exhibit 9 at WeberEmail00071943).

44. ████████████████████████████████████████ (*See* Exhibit 8, WeberEmail 00071941; Exhibit 9, WeberEmail00071942; Exhibit 7, WeberEmail00071953).

45. Sears never consented to an assignment of the Agreement ████████████████████████████████████████. (*See* Exhibit 8, WeberEmail 00071941; Exhibit 9, WeberEmail00071942; Exhibit 7 at WeberEmail00071953 and 00071957).

5

46. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Exhibit 8, WeberEmail 00071941; Exhibit 9, WeberEmail00071942; Exhibit 7 at WeberEmail00071953 and 00071957).

47. Sears has alleged that, in connection with its sales of Weber outdoor grills, it offers consumers service contracts or extended warranties, under which Sears will replace or repair Weber grills and parts during the term of the service contract. (*See* Countercl. ¶ 21).

48. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Exhibit 20, PX 1009).

49. Weber offers its own free warranty with every product, the duration of which is from 2 to 25 years, depending on the part. (*See* Exhibit 14, Weber Warranties).

50. Sears does not directly purchase repair parts from Weber. (*See* Exhibit 12, Fidelitone 30(b)(6) Dep. 14:1-13; 15:9-15; 69:9-12).

51. Fidelitone Logistics ("Fidelitone") bought parts from Weber for stocking and distribution for Sears warranty service repair parts of Weber grills. (*See* Exhibit 12, Fidelitone 30(b)(6) Dep., 10:2-11:4; 14:1-13; 26:2-16).

52. Fidelitone purchased repair parts from Weber, warehoused them, and provided them to Sears when requested. (*See* Exhibit 12, Fidelitone 30(b)(6) Dep. 14:1-13; 15:9-15; 69:9-12).

53. Fidelitone also developed forecasts of what Weber parts Sears would need in the future. (*See* Exhibit 12, Fidelitone 30(b)(6) Dep. 11:14-17; 20:4-7).

54. Weber informed Fidelitone that Weber would no longer be selling Weber grills to Sears for sale in its retail stores or website. (*See* Exhibit 12, Fidelitone 30(b)(6) Dep. 27:16-28:4; 38:1-15).

55. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Exhibit 12, Fidelitone 30(b)(6) Dep. 39:5-40:12; Exhibit 13, PX 1008).

56. ████████████████████████████████████████████ (*See* Exhibit 13, PX 1008; Exhibit 12, Fidelitone 30(b)(6) Dep. 40:2-12).

57. Fidelitone purchased on average $40,000 worth of parts for Sears warranty replacement parts from Weber on behalf of Sears annually. (*See* Exhibit 12, Fidelitone 30(b)(6) Dep. 42:16-43:23).

58. ████████████████████████████████████████████ (*See* Exhibit 17, Fidelitone-00127; Exhibit 12, Fidelitone 30(b)(6) Dep. 42:7-21; 44:11-15; Exhibit 13, PX 1008; Exhibit 16, WeberEmail00074033).

59. ████████████████████████████████████████████ (*See* Exhibit 18, Fidelitone-00132).

60. Sears has never asked Fidelitone to purchase any additional parts from any other source. (Exhibit 12, Fidelitone 30(b)(6) Dep. 37:4-7; 44:16-21).

61. ████████████████████████████████████████████ (*See* Exhibit 12, Fidelitone 30(b)(6) Dep. 46:8-47:13; 60:4-22; Exhibit 15, SEARS005404; Exhibit 16, WeberEmail00074033; Exhibit 17, Fidelitone-00127; Exhibit 18 Fidelitone-00132).

62. Sears decided independently it would limit its final buy purchases to two years' worth of supply. (*See* Exhibit 12, Fidelitone 30(b)(6) Dep. 59:20-60:12).

63. Sears made its final last purchase of Weber parts through Fidelitone in September 2013. (*See* Exhibit 12, Fidelitone 30(b)(6) 48:1-4).

64. Weber sold parts to Fidelitone for Sears after Sears filed its counterclaim. (*See* Sears' Counterclaims & Answer & Affirmative Defenses to Counts I-III, Jul. 23, 2013, ECF No. 36).

65. There is no evidence that Weber would not sell parts to Sears if it needed them for future warranty work or that Weber has failed to provide customers parts under Weber's free warranty.

66. Sears has offered no evidence that it has suffered any harm from the alleged breach of contract.

Respectfully Submitted,

/s/ J. Robert Robertson

*Counsel for Plaintiff Weber-Stephen Products LLC*

Raymond P. Niro, Jr.
Brian E. Haan
NIRO, HALLER & NIRO
181 W. Madison Street, Suite 4600
Chicago, IL 60602
Tel: (312) 236-0733
Fax: (312) 236-3137
E-mail: rnirojr@nshn.com
E-mail: bhaan@nshn.com

J. Robert Robertson
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5774
Fax: (202) 637-5910
E-mail: robby.robertson@hoganlovells.com

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 2, 2014, a true and correct copy of Weber's Notice of Motion, Motion for Summary Judgment, Redacted Memorandum of Law in support thereof, and Redacted Statement of Undisputed Material Facts in support thereof (and non-confidential exhibits thereto), were served upon the following by electronic filing with the Clerk of the United States District Court for the Northern District of Illinois, and thus is available for viewing and downloading from the ECF system:

Paul R. Garcia
Stephen A. Wood
Catherine E. James
David R. Yohannan
KELLEY DRYE & WARREN, LLP
333 West Wacker Drive, 26th Floor
Chicago, IL 60606
Tel: (312) 857-7099
E-mail: pgarcia@kelleydrye.com
E-mail: swood@kelleydrye.com
E-mail: cjames@kelleydrye.com
E-mail: dyohannan@kelleydrye.com

/s/   J. Robert Robertson
*Counsel for Plaintiff Weber-Stephen Products LLC*