**EXHIBIT I**

**TO SEARS'S MOTION FOR SUMMARY JUDGMENT ON WEBER'S '834 (SHROUD) DESIGN PATENT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEBER-STEPHEN PRODUCTS LLC,<br><br>           Plaintiff / Counter-Defendant,<br><br>   v.<br><br>SEARS HOLDINGS CORPORATION; SEARS ROEBUCK & COMPANY,<br><br>           Defendants / Counter-Plaintiffs. | Civil Action No. 13-cv-1686<br><br>Hon. Edmond E. Chang<br><br>Magistrate Judge Michael T. Mason |

## REBUTTAL EXPERT REPORT OF JIM GANDY AS TO NON-INFRINGEMENT OF THE ASSERTED DESIGN PATENTS

I, Jim Gandy, respectfully submit this Expert Report on behalf of Sears Holdings Corporation and Sears Roebuck & Co. (collectively "Sears").

## INTRODUCTION & SUMMARY OF OPINIONS

1.     I have been retained by Sears in connection with the above matter to provide opinions relating to two design patents, U.S. Patent No. D564,834 S (the "'834 patent") and U.S. Patent No. D609,045 S (the "'045 patent"). This Report contains my opinions concerning the alleged infringement of those design patents in rebuttal to the opinions of John Holecek as set forth in his report dated February 20, 2015.

2.     As I understand, Mr. Holecek opines that the Sears' Kenmore Elite 500 (now 550) Series Gas Grills, Item Nos. 7123675, 7123674, 7129162, 7129163 and 7129164 (the "Accused Grills") infringe "certain elements of each of the '834 and '045 design patents". I disagree with Mr. Holecek's opinion for the reasons set forth below. In my opinion, the accused Kenmore Elite grills do not infringe either the '834 or the '045 design patent. Mr. Holecek makes no mention of

Sears' 600 and 700 Series grills, nor do the Final Infringement Contentions upon which Mr. Holecek bases his opinions.

3.      First, it is my understanding that the claim in a design patent application is directed to the entire design and not individual parts or elements thereof. In addition, it is my understanding that the proper inquiry in determining if a patented design has been infringed is whether the accused design appropriates the claimed design as a whole. Therefore, Mr. Holecek's opinion that the Accused Grills infringe "certain elements of the '834 and '045 design patents" is incorrect since the proper test is whether an accused design appropriates the claimed design as a whole, not individual elements thereof.

4.      It's further my understanding that under the "ordinary observer" test for infringement of a patented design an accused design must be so similar in overall appearance to the claimed design that an "ordinary observer" would be deceived into  purchasing one, supposing it to be the other. Moreover, it's my understanding that under this test an "ordinary observer" is one who is conversant with the prior art and that in order to determine whether an accused design appropriates the patented design a comparison of the features of the patented design with the prior art and the accused design may be necessary.

5.      In his report, Mr. Holecek concludes that the design of the Accused Grills are "substantially the same" as that claimed in the '834 and '045 patents and relies on the side-by-side comparisons of the figures of the '834 and '045 patents and the photographs of the Accused Grills as shown in Exhibits B and C of Weber's Final Infringement Contentions. Mr. Holecek makes no further comparison of the features of the design claimed in the '834 and '045 patents with the design of the Accused Grills or the prior art presented by Sears. Rather, Mr. Holecek

2

simply refers to Weber's Final Infringement Contentions. Those Final Contentions, moreover, make no mention of the Kenmore Elite 600 and 700 Series grills.

6.     Again, I disagree with Mr. Holecek's opinion especially since he has failed to provide any further analysis as to how the features of the Accused Grills appropriate those of the patented designs nor how the features of the patented designs distinguish them from the prior art. I will provide such an analysis below and establish that the design of the Accused Grills do not infringe the claimed design of the '834 and '045 design patents. I also note, as explained further below, that Mr. Holecek does not comment on accused Kenmore Elite 600 and 700 series grills, which have at least four and five control knobs on the front facia—and sometimes more—which further differentiate those grills from the '045 patent.

## BACKGROUND & EXPERIENCE

7.     My background and experience are set forth in my invalidity report dated February 20, 2015, which I incorporate by reference herein. In short, I have a broad legal and technical background in examining design patent applications with more than 32 years of experience at the United States Patent and Trademark Office. I have held various titles over the years in the United States Patent and Trademark Office. My background and experience is outlined in the resume attached as Exhibit A. Although I am providing my opinions in this case based on my experience and expertise, I understand that the ultimate question of design patent infringement is determined from the perspective of the ordinary observer.

8.     All of the materials in this case have been made available to me in connection with my work. I have reviewed numerous documents, including the '834 and the '045 patents and their respective prosecution histories; the parties' respective infringement/non-infringement contentions insofar as they relate to '834 and '045 patents; the parent application 29/256,991 file

prosecution history of the '045 patent; all of the prior art references relating to the '834 and '045 patents; the Court's claim construction order; the Amended Complaint; and images of the parties respective grills.

9.      I reserve the right to rely on any additional materials provided to me or brought to my attention and to modify, add to, or amend my opinions. I also reserve the right to create and use any demonstrative exhibits to explain or further detail my opinions.

10.     I am being compensated $350.00 per hour in connection with my work in this matter. My compensation is not contingent on any opinions I give or on the outcome of the case.

## DETAILED OPINIONS

### A.      THE ACCUSED GRILLS DO NOT INFRINGE THE '834 PATENT.

11.     In order to assess whether the design of the Accused Grills appropriates the claimed overall design of the '834 patent, it is appropriate to identify the features of each and then compare them with each other and the prior art.

12.     The claimed design of the '834 patent is comprised of the following features:

      (a)      an inner band with spaced protrusions – A

      (b)      a flat, plain outer surface – B, having

      (c)      a short vertical front edge – C

      (d)      a diagonally sloping forward edge having a slight convexity – D

      (e)      a top horizontal edge having a slight convexity – E

      (f)      a diagonally sloping rear edge having a slight convexity – F

      (g)      a bottom edge – G

      (h)      hinge members protruding out from the rear edge – H

13.     Figures 1, 2, 3, 4, 6 and 7 of the '834 patent are reproduced below with the above features identified.

4









14.     The cover of the Accused Grills has side panels comprised of the following features:

(a)     an inner band with spaced protrusions – A

(b)     an outer surface with a raised peripheral band - B and

(c)     a slightly recessed flat, plain inner surface - C

(d)     a vertical front edge - D having a substantially greater height than the short
        vertical front edge of the claimed design in the '834 patent

(e)     a large convexly curved top edge - E that extends from the front vertical edge to
        the rear vertical edge

(f)     a vertically straight rear edge – F

(g)     a bottom edge – G

15.     Photographs and Spec. drawings of the cover of the Accused Grills are reproduced below
with the above features identified.





6



16.     A review of the features of the claimed design of the '834 patent and the cover of the Accused Grills listed above reveals that the inner band with spaced protrusions identified as "A" is the only feature that is common to both that has an appearance similar to each other, (see side-by-side comparison below).



Claimed Design of '834 patent         cover of Accused Grill

17.      However, as shown in the prior art references of BBQ PRO and Permasteel providing a grill cover with an inner band having spaced protrusions exists in the prior art (see areas circled in red on the images below).



BBQ-PRO 720-0267         PERMA_03605-3630

18.     Therefore, since the inner band with spaced protrusions exists in the prior art it can hardly be relied upon as a basis for infringement against the Accused Grills.

19.     All other features comprising the claimed design of the '834 design patent are either not part of the cover of the Accused Grills or have a significantly different shape and appearance. Specifically, the outer surface of the claimed design of the '834 patent identified as "B" above is flat and plain, whereas the outer surface of the cover of the Accused Grills includes a raised peripheral band "B" and a recessed, flat inner surface "C" as identified above, (see side-by-side comparison of Fig. 1 and 4 of the '834 patent with the corresponding spec. drawing and photograph of the cover of the Accused Grills below).









Claimed Design of '834 patent              cover of Accused Grills

20.     In addition, the claimed design of the '834 patent has a short vertical front edge identified as "C" above, whereas the cover of the accused grills has a large vertical front edge "D" as identified above having a much greater height than that of the claimed design, (see side-by-side comparison of Fig 4 of the '834 patent with the corresponding photograph of the cover of the Accused Grills below).

    

Claimed Design of '834 patent                    cover of Accused Grills

21.     Furthermore, the claimed design of the '834 patent has a diagonally sloping forward edge having a slight convexity identified as "D" above, whereas the cover of the Accused Grills has no corresponding edge, (see Fig. 4 of '834 patent below).



22.     Moreover, the claimed design of the '834 patent has a top horizontal edge having a slight convexity identified as "E" above, whereas the cover of the Accused Grills has a large convexly curved top edge "E" as identified above which, unlike the top horizontal edge of the claimed design, extends from the front vertical edge to the rear vertical edge, (see side-by-side

comparisons of Fig. 4 of the '834 patent and the corresponding photograph of the cover of the Accused Grills below).

 

Claimed Design of '834 patent                    cover of Accused Grills

23.     Additionally, the claimed design of the '834 patent has a diagonally sloping rear edge having a slight convexity identified as "F" above, whereas the cover of the Accused Grills has a vertically straight rear edge "F" as identified above, (see side-by-side comparison of Fig. 4 of the '834 patent and the corresponding photograph of the cover of the Accused Grills below).

 

Claimed Design of '834 patent                         cover of Accused Grills

24.     Furthermore, the bottom edge of the claimed design of the '834 patent and the cover of the Accused Grills which are both identified as "G" above differ in the manner indicated by the arrows in the illustrations below. That is, the inverted u-shaped notch in the bottom edge of the cover of the Accused Grills has vertical sides that connect to a horizontal edge on each side, whereas the inverted u-shaped notch of the claimed design of the '834 patent has diagonally

sloping sides that connect to a horizontal edge only on one side, (see side-by-side comparisons of Fig.4 of the '834 patent and the corresponding spec. drawing of the cover of the Accused Grills which is substituted for the corresponding photograph so as to clearly define the shape of the bottom edge).




Claimed Design of '834 patent                    cover of Accused Grills

25.    Finally, the claimed design of the '834 patent has hinge members protruding out from the rear edge identified as "H" above which have no counterpart in the cover of the Accused Grills, (see Fig. 4 and 7 of the '834 patent below).




Claimed Design of 834 patent

26.    It's my opinion that the differences in the shape and appearance of the features identified above that comprise the claimed design of the '834 patent as a whole and the cover of the Accused Grills as a whole are of such a magnitude that an ordinary observer, conversant with the

prior art, would not be deceived into purchasing one, supposing it to be the other. This will become further evident from a comparison of the features of the claimed design of the '834 patent with those of the prior art identified below.

27.     The Home '357 patent discloses a grill cover having side panels comprised of the following features:

> (a)     an inner band – A
>
> (b)     a flat, plain outer surface – B, having
>
> (c)     a short vertical front edge – C
>
> (d)     a diagonally sloping forward edge – D
>
> (e)     a top horizontal edge – E
>
> (f)     a vertically straight rear edge – F
>
> (g)     a bottom edge – G

28.     The Home '357 grill cover is reproduced below with the above features of the side panels identified.

 



29.    A review of the features of the side panels of the Home '357 grill cover reveals that five of them correspond substantially to those of the claimed design of the '834 patent and only two correspond to the cover of the Accused Grills. Specifically, with the exception of the absence of spaced protrusion, features "A", "B", "C", "D" and "E" of the side panels of the Home '357 grill cover are substantially identical in shape and appearance to the features of the claimed design of the '834 patent, (see side-by-side comparison of Fig. 1 and 2 of the '834 patent and the corresponding views of Home '357 below with features identified).







Claimed Design of '834 patent        side panels of Home '357 grill cover

30.    However, with the exception of the absence of spaced protrusions, only features "A" and "F" of the side panels of the Home '357 grill cover are substantially the same in shape and appearance to the side panels of the cover of the Accused Grills, (see side-by-side comparison of corresponding views of the side panels of the cover of the Accused Grills and those of the Home '357 grill cover below with features identified).





15

 

side panels of cover of Accused Grills     side panels of Home '357 grill cover

31.    In view of the side-by-side comparisons above it's my opinion that the side panels of the prior art Home '357 grill cover are much closer in overall shape and appearance to the claimed design of the '834 patent than they are to the side panels of the cover of the Accused Grills. Furthermore, it's evident from the side-by-side comparison below that the side panels of the cover of the Accused Grills, as a whole, are not as close in overall shape and appearance to the claimed design of the '834 patent as the side panels of the Home '357 grill cover.



Claimed Design of '834 patent    side panels of Home '357    cover of Accused Grills

16

32.     The Coleman '359 patent discloses a grill cover having side panels comprised of the following features:

    (a)    an inner band – A

    (b)    a flat, plain outer surface – B, having

    (c)    a short vertical front edge – C

    (d)    a diagonally sloping forward edge – D

    (e)    a top horizontal edge – E

    (f)    a vertically straight rear edge – F

    (g)    a bottom edge – G

33.     The Coleman '359 grill cover is reproduced below with the above features of the side panels identified.







17



34.     A review of the features of the side panels of the Coleman '359 grill cover reveals that five of them correspond substantially to those of the claimed design of the '834 patent and only two correspond to the cover of the Accused Grills. Specifically, with the exception of the absence of spaced protrusion, features "A", "B", "C", "D" and "E" of the side panels of the Coleman '359 grill cover are substantially identical in shape and appearance to the features of the claimed design of the '834 patent, (see side-by-side comparison of Fig. 1 and 2 of the '834 patent and the corresponding views of Coleman '359 below with features identified).



Claimed Design of '834 patent          side panels of Coleman '359 grill cover

35.     However, with the exception of the absence of spaced protrusions, only features "A" and "F" of the side panels of the Coleman '359 grill cover are substantially the same in shape and appearance to the side panels of the cover of the Accused Grills, (see side-by-side comparison of corresponding views of the side panels of the cover of the Accused Grills and those of the Coleman '359 grill cover below with features identified).



side panels of cover of Accused Grills          side panels of Coleman '359 grill cover

36.     In view of the side-by-side comparisons above it's my opinion that the side panels of the prior art Coleman '359 grill cover are much closer in overall shape and appearance to the claimed design of the '834 patent than they are to the side panels of the cover of the Accused Grills. Furthermore, it's evident from the side-by-side comparison below that the side panels of the cover of the Accused Grills, as a whole, are not as close in overall shape and appearance to the claimed design of the '834 patent as the side panels of the Coleman '359 grill cover.

19



Claimed Design of '834 patent   side panels of Coleman'359   cover of Accused Grills

37.    The Harrod '983 patent discloses a grill cover having side panels comprised of the following features:

    (a)     an inner band – A

    (b)     a convexly curved plain outer surface – B, having

    (c)     a diagonally sloping front edge having a slight convexity– C

    (d)     a top horizontal edge having a slight convexity– D

    (e)     a diagonally sloping rear edge having a slight convexity – E

    (f)     a bottom edge – F

38.    The Harrod '983 grill cover is reproduced below with the above features of the side panels identified.





39.    A review of the features of the side panels of the Harrod '983 grill cover reveals that five of them correspond substantially to those of the claimed design of the '834 patent and only two correspond to the cover of the Accused Grills. Specifically, with the exception of the absence of spaced protrusion, features "A", "C", "D" "E" and "F" of the side panels of the Coleman '359 grill cover are substantially identical in shape and appearance to the features of the claimed design of the '834 patent, (see side-by-side comparison of Fig. 1 and 2 of the '834 patent and the corresponding views of Harrod '983 below with features identified).





Claimed Design of '834 patent     side panels of Harrod '983 grill cover

40.    However, with the exception of the absence of spaced protrusions, only features "A" and "F" of the side panels of the Harrod '983 grill cover are substantially the same in shape and appearance to the side panels of the cover of the Accused Grills, (see side-by-side comparison of corresponding views of the side panels of the cover of the Accused Grills and those of the Harrod '983 grill cover below with features identified).



side panels of cover of Accused Grills     side panels of Harrod '983 grill cover

41.    In view of the side-by-side comparisons above it's my opinion that the side panels of the prior art Harrod '983 grill cover are much closer in overall shape and appearance to the claimed

22

design of the '834 patent than they are to the side panels of the cover of the Accused Grills. Furthermore, it's evident from the side-by-side comparison below that the side panels of the cover of the Accused Grills, as a whole, are not as close in overall shape and appearance to the claimed design of the '834 patent as the side panels of the Harrod '983 grill cover.



Claimed Design of '834 patent          side panels of Harrod '983          cover of Accused Grills

42.     The Kenmore 141.16680 grill cover has side panels comprised of the following features:

(a)     an inner band – A

(b)     a flat, plain outer surface – B, having

(c)     a short vertical front edge – C

(d)     a diagonally sloping forward edge – D

(e)     a top horizontal edge – E

(f)     a vertically straight rear edge – F

(g)     a bottom edge – G

43.     The Kenmore 141.16680 grill cover is reproduced below with the above features of the side panels identified.

23



44.     A review of the features of the side panels of the Kenmore 141.16680 grill cover reveals that five of them correspond substantially to those of the claimed design of the '834 patent and only two correspond to the cover of the Accused Grills. Specifically, with the exception of the absence of spaced protrusion, features "A", "B", "C", "D" and "E" of the side panels of the Kenmore 141.16680 grill cover are substantially identical in shape and appearance to the features of the claimed design of the '834 patent, (see side-by-side comparison of Fig. 1 of the '834 patent and the corresponding view of the Kenmore 141.16680 grill cover below with features identified).



Claimed Design of '834 patent          side panels of Kenmore 141.16680 grill cover

However, with the exception of the absence of spaced protrusions, only features "A" and "F" of the side panels of the Kenmore 141.16680 grill cover are substantially the same in shape and

appearance to the side panels of the cover of the Accused Grills, (see side-by-side comparison of corresponding view of the side panels of the cover of the Accused Grills and that of the Kenmore 141.16680 grill cover below with features identified).



Side panels of cover of Accused Grills     side panels of Kenmore 141.16680 grill cover

45.     In view of the side-by-side comparisons above it's my opinion that the side panels of the prior art Kenmore 141.16680 grill cover are much closer in overall shape and appearance to the claimed design of the '834 patent than they are to the side panels of the cover of the Accused Grills. Furthermore, it's evident from the side-by-side comparison below that the side panels of the cover of the Accused Grills, as a whole, are not as close in overall shape and appearance to the claimed design of the '834 patent as the side panels of the Kenmore 141.16680 grill cover.



Claimed Design of '834 patent    cover of Kenmore 141.16680    cover of Accused Grills

25

46.     The PERMA_03579-3603 grill cover has side panels comprised of the following features:

> (a)     an inner band with spaced protrusions – A
>
> (b)     a flat, plain outer surface – B, having
>
> (c)     an outwardly projecting arm – C
>
> (d)     a diagonally sloping forward edge – D
>
> (e)     a top horizontal edge – E
>
> (f)     a diagonally sloping rear edge – F
>
> (g)     a bottom edge – G

47.     The PERMA_03579-3603 grill cover is reproduced below with the above features of the side panels identified.



48.     A review of the features of the side panels of the PERMA_03579-3603 grill cover reveals that five of them correspond substantially to those of the claimed design of the '834 patent and only one corresponds to the cover of the Accused Grills. Specifically, features "A", "B", "D" "E" and "F" of the side panels of the PERMA_03579-3603 grill cover are substantially identical in shape and appearance to the features of the claimed design of the '834 patent, (see side-by-

side comparison of Fig. 1 of the '834 patent and the corresponding view of the PERMA_03579-3603 grill cover below with features identified).



Claimed Design of '834 patent          PERMA_03579-3603 grill cover

49.     However, only feature "A" of the side panels of the PERMA_03579-3603 grill cover is substantially the same in shape and appearance to the side panels of the cover of the Accused Grills, (see side-by-side comparison of corresponding view of the side panels of the cover of the Accused Grills and that of the PERMA_03579-3603 grill cover below with features identified).



cover of Accused Grills          PERMA_03579-3603 grill cover

50.     In view of the side-by-side comparisons above it's my opinion that the side panels of the prior art PERMA_03579-3603 grill cover are much closer in overall shape and appearance to the claimed design of the '834 patent than they are to the side panels of the cover of the Accused

27

Grills. Furthermore, it's evident from the side-by-side comparison below that the side panels of the cover of the Accused Grills, as a whole, are not as close in overall shape and appearance to the claimed design of the '834 patent as the side panels of the PERMA_03579-3603 grill cover.



Claimed Design of '834 patent    PERMA_03579-3603 cover    cover of Accused Grills

51.    The comparison of the features comprising the claimed design of the '834 patent with those of the five prior art references set forth above reveals that only the feature "H", the hinge members protruding out from the rear edge are new. All of the other features of the claimed design of the '834 patent, taken individually or in combination, exist in the prior art. Furthermore, since the above comparison of common features show that, as a whole, the five prior art references are closer in overall shape and appearance to the claimed design of the '834 patent than the Accused Grills, as a whole, an ordinary observer, particularly taking into account the five prior art references, would not believe the Accused Grills to be the same as the claimed design of the '834 patent. Therefore, the Accused Grills cannot reasonably be viewed as so similar to the claimed design of the '834 patent that an ordinary observer familiar with the prior art would be deceived by the similarity between them, "inducing him to purchase one supposing it to be the other."

52.    Even without considering the prior art, in my opinion an ordinary observer would consider the Accused Grills *dis*similar to the claimed design of the '834 patent and would *not* be

deceived into purchasing one supposing it to be the other. Hence, it's my opinion that the Accused Grills do not infringe the claimed design of the '834 patent for the reasons stated above.

**B.      THE ACCUSED GRILLS DO NOT INFRINGE THE '045 PATENT.**

53.      As with the '834 patent, in order to assess whether the design of the Accused Grills appropriates the claimed design of the '045 patent as a whole, it is appropriate to identify and then compare the features of each with each other and the prior art.

54.      The claimed design of the '045 patent is comprised of the following components:

> (1)      a cover, 1,
>
> (2)      a flat, plain, horizontally elongated vertical surface, 2, below the cover, 1,
>
> (3)      shelves, 3, that extent out to the right and left of the vertical surface, 2, and are horizontally continuous therewith,
>
> (4)      a base cabinet, 4, and
>
> (5)      a firebox, 5.

55.      The five components comprising the claimed design of the '045 patent include the following features:

> (1)      a cover, 1, having:
>
>> a.      a short vertical front surface, A,
>>
>> b.      a diagonally sloping forward surface having a slight convexity, B,
>>
>> c.      a horizontal top surface, C, having a slight convexity,
>>
>> d.      a diagonally sloping rear surface, D, having a slight convexity,
>>
>> e.      a bottom edge, E,
>>
>> f.      inner bands with spaced protrusions, F,
>>
>> g.      a horizontal handle, G, attached to the short vertical front surface, A,

       h.      flat, plain end panels, H,

       i.       and hinge members, I, that project out from the rear.

(2)     a flat, plain, horizontally elongated vertical surface, 2, below the cover, 1,

(3)     shelves, 3, that extent out to the right and left of the vertical surface, and are horizontally continuous therewith that include

       a.      a vertical front surface, J,

       b.      a convexly curved side surface, K,

       c.      that includes 3 vertical cutouts, L, that extend up from the bottom edge to the top edge of the side surface, K, for hanging grilling tools,

       d.      a vertical rear surface, M, with a bottom horizontal edge that is spaced up from the bottom edge of the side surface, J,

       e.      and a flat top surface, N,

       f.      defined by the continuous line, O, which extends down onto the vertical front surface, J.

       g.      The top surface, N, of the right shelf includes control knobs that are shown in broken lines and form no part of the claimed design.

(4)     a base cabinet, 4, having

       a.      four vertical corner members, P, that connect to casters which are shown in broken lines and form no part of the claimed design,

       b.      two front doors, Q, the details of which are shown in broken lines and form no part of the claimed design,

       c.      right and left side panels, R, that are flat and plain and devoid of any vents,

       d.      and a rear panel, S, that includes five rows of horizontally elongated vents, T, that are spaced down slightly from the top edge and wherein the vents in the second and fourth rows are offset with the vents in the first, third and fifth rows.

(5)     a fire box, 5, having

       a.     a rear horizontal member, U,

       b.     and rectangular member, V, behind it as shown in Fig. 3.

56.     Figures 1 through 5 of the '045 patent are reproduced below with the features identified.







57.    The Accused Grills are comprised of the following components:

        (1)     a cover, 1,

        (2)     a horizontally elongated vertical surface, 2, below the cover, 1,

        (3)     shelves, 3, that extent out to the right and left of the vertical surface, 2, and are horizontally continuous therewith,

        (4)     a base cabinet, 4,

        (5)     a pedestal base, 5,

        (6)     and a fire box, 6.

58.    The six components comprising the Accused Grills include the following features:

        (1)     a cover, 1, having

              a.     a vertical front surface, A, having a substantially greater height  than the short vertical front surface of the claimed design of the '045 patent,

              b.     a large convexly curved top surface, B, extending from the front vertical surface to the rear vertical surface,

              c.     a vertically straight rear surface, C,

              d.     a bottom edge, D,

              e.     inner bands with spaced protrusions, E,

f.      a horizontal handle, F, attached to the vertical front surface, A,

g.      and end panels, G,

h.      with a raised peripheral band, H.

(2)      a horizontally elongated vertical surface, 2, below the cover, 1,

      a.      that includes horizontally spaced control knobs, I.

(3)      shelves, 3, that extent out to the right and left of the vertical surface, 2, and are horizontally continuous therewith that include

      a.      a vertical front surface, J,

      b.      a horizontally straight side surface, K,

      c.      that includes 4 vertical cutouts, L, that extend up from the bottom edge approximately half way to the top edge and are located just in front of the rear edge of the side surface, K. A substantial portion of the bottom edge of the side surface, K, is spaced up from the bottom edge of the front surface, J.

      d.      a vertically flat rear surface, M, having a bottom edge that is horizontally aligned with the bottom edge of the side surface, K,

      e.      a flat top surface, N.

(4)      a base cabinet, 4, having

      a.      two front doors, O, each having a horizontal handle located just below the top edge thereof, and a trim strip that extends around the peripheral edges of the doors and extends around onto the side panels of the cabinet,

      b.      right and left side panels, P, that include

      c.      four rows of horizontally elongated vents, Q, that are vertically aligned and located just below the top edge thereof,

      d.      and three rows of horizontally elongated vents, R, that are vertically aligned and located just above the bottom edge of the side panels, P,

      e.      a rear panel, S, that includes

      f.      four rows of horizontally elongated vents, T, that are vertically aligned and located just below the top edge thereof,

      g.      and three rows of horizontally elongated vents, U, that are vertically aligned and located just above the bottom edge of the rear panel, S.

(5)      a pedestal base, 5, with casters.

(6)      a fire box, 6, having

      a.      a rear panel with two rows of horizontally elongated vents, V, that are vertically aligned,

      b.      and an opening, W, between the bottom edge of the rear surface, C, of the cover, 1, and the top edge of the fire box, 6.

59.    Photographs and spec drawings of the Accused Grills are reproduced below with the features identified.









60.    A review of the first component, of the claimed design of the '045 patent and the Accused Grills listed above, namely the cover, 1, reveals that the inner bands with spaced protrusions and the horizontal handle identified above as "F" and "G" respectively in the claimed design and "E" and "F" respectively in the Accused Grills are the only common features to both that have an appearance similar to each other, (see side-by-side comparison of Fig. 1 of the '045 patent and corresponding view of the Accused Grills below).



Claimed design of '045 patent                    Accused Grill

36

61.     However, as shown in the prior art references of Permasteel and Home '357 providing a grill cover with an inner band having spaced protrusions and a horizontal handle exists in the prior art (see areas circled in red on the images below).



PERMA_03605-3630                                      Home '357 grill

62.     Therefore, since the inner band with spaced protrusions and horizontal handle exists in the prior art, they can hardly be relied upon as a basis for infringement against the Accused Grills.

63.     All other features of the cover, 1, of the claimed design of the '045 design patent are either not part of the cover, 1, of the Accused Grills or have a significantly different shape and appearance. Specifically, the cover, 1, of the claimed design of the '045 patent has a short vertical front surface identified as "A" above, whereas the cover, 1, of the accused grills has a large vertical front surface "A" as identified above having a much greater height than that of the cover, 1, of the claimed design.

64.     In addition, the cover, 1, of the claimed design of the '045 patent has a diagonally sloping forward surface having a slight convexity identified as "B" above, whereas the cover, 1, of the Accused Grills has no corresponding surface. Furthermore, the cover, 1, of the claimed design of

the '045 patent has a top horizontal surface having a slight convexity identified as "C" above, whereas the cover, 1, of the Accused Grills has a large convexly curved top surface "B" as identified above which, unlike the top horizontal surface of the cover, 1, of the claimed design, extends from the front vertical surface to the rear vertical surface.

65.    Moreover, the cover, 1, of the claimed design of the '045 patent has a diagonally sloping rear surface having a slight convexity identified as "D" above, whereas the cover, 1, of the Accused Grills has a vertically straight rear surface "C" as identified above.

66.    Additionally, the bottom edge of the cover, 1, of the claimed design of the '045 patent and the cover, 1, of the Accused Grills which are identified as "E" and "D" respectively above differ in that, the inverted u-shaped notch in the bottom edge of the cover, 1, of the Accused Grills has vertical sides that connect to a horizontal edge on each side, whereas the inverted u-shaped notch of the cover, 1, of the claimed design of the '045 patent has diagonally sloping sides that connect to a horizontal edge only on one side.

67.    Furthermore, the cover, 1, of the claimed design of the '045 patent has an outer surface identified as "H" above that is flat and plain, whereas the outer surface identified as "G" of the cover, 1, of the Accused Grills includes a raised peripheral band identified as "H" above.

68.    Finally, the cover, 1, of the claimed design of the '045 patent has hinge members protruding out from the rear identified as "I" above which have no counterpart in the cover, 1, of the Accused Grills, (see side-by-side comparison of Fig. 1 and 4 of the '045 patent with the corresponding photograph and spec drawing of the Accused Grills below).





Claimed design of 045 patent    Accused Grills

69. In my opinion the above described differences in the shape and appearance of the features

of the cover, 1, of the claimed design of the '045 patent and the Accused Grills creates a

significant visual distinction between the two grills as a whole such that an ordinary observer,

conversant with the prior art, would not be deceived into purchasing one, believing it to be the

other.

70. The second component, of the claimed design of the '045 patent and the Accused Grills

differ in that the horizontally elongated vertical surface, 2, below the cover, 1, in the claimed

design of the '045 patent is flat and plain and includes no specific features, whereas the

corresponding surface, 2, of the Accused Grills includes the feature of horizontally spaced control knobs identified as "I" above, (see side-by-side comparison of Fig. 2 of the '045 patent with the corresponding photograph of the Accused Grills below).



      Claimed design of '045 patent            Accused Grills

71.     Again, it's my opinion that the above described difference in the second component of the claimed design of the '045 patent and the Accused Grills creates a significant visual distinction between the two grills as a whole that an ordinary observer, conversant with the prior art, would not be deceived into purchasing one, believing it to be the other.

72.     A review of the third component, of the claimed design of the '045 patent and the Accused Grills listed above, namely the shelves, 3, that extent out to the right and left of the vertical surface, 2, and are horizontally continuous therewith reveals that the vertically flat rear surface and flat top surface identified above as "M" and "N" respectively in the claimed design and the Accused Grills are the only common features to both that have an appearance similar to each other, (see side-by-side comparison of Fig. 3 of the '045 patent and the spec. drawing of the Accused Grills below).



Claimed design of '045 patent                    Accused Grill

73.     However, as shown in the prior art reference of Chung, D471,057, (Chung '057), providing a grill with right and left outwardly extending shelves having flat top surfaces and vertically flat rear surfaces exists in the prior art (see areas circled in red on the images below)



74.     All other features of the shelves, 3, of the claimed design of the '045 design patent have either a different shape or appearance than the shelves, 3, of the Accused Grills. Specifically, the vertical front surface of the shelves, 3, of the claimed design of the '045 patent identified as "J" above includes a continuous line identified as "O" above, whereas the vertical front surface, "J" of the shelves, 3, of the Accused Grills have no corresponding line. In addition, the side surface of the shelves, 3, of the claimed design of the '045 patent identified as "K" above is convexly curved and includes 3 vertical cutouts identified as "L" above that extend up from the bottom

41

edge to the top edge of the side surface "K" for hanging grilling tools. However, the side surface

of the shelves, 3, of the Accused Grills identified as "K" above are horizontally straight and

include 4 vertical cutouts identified as "L" above that extend up from the bottom edge

approximately half way to the top edge and are located just in front of the rear edge of the side

surface, K. Also, a substantial portion of the bottom edge of the side surface "K" of the Accused

Grills is spaced up from the bottom edge of the front surface "J" whereas the bottom edge of the

side surface "K" of the claimed design is horizontally aligned with the bottom edge of the front

surface "J", (see side-by-side comparison of Fig. 2 and 4 of the '045 patent with the photograph

and spec. drawing of the Accused Grills below).



Claimed design of '045 patent                    Accused Grills

75.     In my opinion the above described differences in the shape and appearance of the features

of the shelves, 3, of the claimed design of the '045 patent and the Accused Grills creates a

significant visual distinction between the two grills as a whole such that an ordinary observer, conversant with the prior art, would not be deceived into purchasing one, believing it to be the other.

76. A review of the fourth component, of the claimed design of the '045 patent and the Accused Grills listed above, namely the base cabinet, 4, reveals that none of the features of the base cabinet, 4, of the claimed design of the '045 patent correspond to the shape and appearance to the features of the base cabinet, 4, of the Accused Grills. Specifically, the base cabinet, 4, of the claimed design of the '045 patent has four vertical corner members identified as "P" above that connect to casters which are shown in broken lines and form no part of the claimed design. However, the base cabinet of the Accused Grills does not have any corresponding corner members.

77. Additionally, since the details of the two front doors of the base cabinet of the claimed design of the '045 patent identified as "Q" above are set forth in broken lines and form no part of the claimed design there is no correspondence to the details of the two front doors of the base cabinet of the Accused Grills identified as "O" above.

78. Furthermore, the right and left panels of the base cabinet of the claimed design of the '045 patent identified as "R" above are plain and flat and devoid of any vents, whereas the corresponding panels of the base cabinet of the Accused Grills identified as "P" above include four rows of horizontally elongated vents, Q, that are vertically aligned and located just below the top edge thereof, and three rows of horizontally elongated vents, R, that are vertically aligned and located just above the bottom edge of the side panels, P.

79. Moreover, the rear panel of the base cabinet of the claimed design of the '045 patent identified as "S" above has five rows of horizontally elongated vents identified as "T" above that

are spaced down slightly from the top edge and wherein the vents in the second and fourth rows are offset with the vents in the first, third and fifth rows. However, the rear panel of the base cabinet of the Accused Grills identified as "S" above has four rows of horizontally elongated vents identified as "T" above that are vertically aligned and located just below the top edge thereof, and three rows of horizontally elongated vents identified as "U" above that are vertically aligned and located just above the bottom edge of the rear panel, S, (see side-by-side comparison of Fig. 1 and 3 of the '045 patent with the photograph and spec. drawing of the Accused Grills below).






Claimed design of '045 patent                    Accused Grills

80.     It's my opinion again that the above described differences in the shape and appearance of the features of the base cabinet, 4, of the claimed design of the '045 patent and the Accused Grills creates a significant visual distinction between the two grills as a whole such that an ordinary observer, conversant with the prior art, would not be deceived into purchasing one, believing it to be the other.

81.     A review of the fifth component, of the claimed design of the '045 patent and the Accused Grills listed above, namely the fire box, 5, reveals that none of the features of the fire box, 5, of the claimed design of the '045 patent correspond to the shape and appearance to the features of the fire box, 6, of the Accused Grills. Specifically, the fire box, 5, of the claimed design of the '045 patent includes a rear horizontal member identified as "U" above and rectangular member identified as "V" above behind it that have no counter part in the fire box, 6, of the Accused Grills.

82.     Additionally, the fire box, 6, of the Accused Grills includes a rear panel with two rows of horizontally elongated vents identified as "V" above that are vertically aligned and an opening identified as "W" above between the bottom edge of the rear surface, C, of the cover, 1, and the top edge of the fire box, 6. These features, "V" and "W" of the fire box, 6, of the Accused Grills have no counterpart in the fire box, 5, of the claimed design of the '045 patent, (see side-by-side comparison of Fig. 3 of the '045 patent with the spec. drawing of the Accused Grills below).

45



Claimed design of '045 patent          Accused Grills

83.     The above described differences in the shape and appearance of the fire box, 5, of the

claimed design in the '045 patent and the fire box, 6, of the Accused Grills creates, in my

opinion, a significant visual distinction between the two grills as a whole such that an ordinary

observer, conversant with the prior art, would not be deceived into purchasing one, believing it to

be the other.

84.     The Accused Grills also include a fifth component, namely a pedestal base with casters

that has no counterpart in the claimed design of the '045 patent, (see picture of Accused Grills

below).



46

85.    In my opinion this additional component of the Accused Grills creates a significant visual distinction over the claimed design of the '045 patent as a whole such that an ordinary observer, conversant with the prior art, would not be deceived into purchasing one, believing it to be the other.

86.    The above described differences in the shape and appearance of the features of the components that comprise the claimed design of the '045 patent as a whole and the Accused Grills as a whole are, in my opinion, of such a magnitude that an ordinary observer, conversant with the prior art, would not be deceived into purchasing one, believing it to be the other. This will become further evident from a comparison of the features of the components of the claimed design of the '045 patent with those of the prior art identified below.

87.    All of the prior art references shown below depict grills comprised of five components corresponding to those of the claimed design, namely:

(i)      a cover, 1,

(ii)     an elongated surface, 2, below the cover, 1,

(iii)    shelves, 3, that extent out to the right and left of the elongated surface, 2,

(iv)     a base cabinet, 4,

(v)      and a fire box, 5.

See images below with components identified.



Coleman '359          PERMA_03605-3630          Uniflame NSG3902D



Charbroil Stainless          Chung '057          Charbroil Terrace

Kenmore 119.16301800      Kenmore 141.153372      Tseng '308

88.     Five of the above prior art grills show feature "A" of the cover, 1, component of the claimed design of the '045 patent. Specifically, the Coleman '359, Charbroil Stainless and Terrace, Kenmore 119.16301800 and Tseng '308 grills all have a short vertical front surface corresponding to that of the claimed design.

89.     In addition, six of the above prior art grills include feature "B" of the cover, 1, component of the claimed design of the '045 patent. Namely, the Coleman '359, PERMA_03605-3630, Charbroil Stainless and Terrace, Chung '057, and Kenmore 141.153372 grills all have a diagonally sloping forward surface corresponding to that of the claimed design.

90.     Furthermore, seven of the above prior art grills have feature "C" of the cover, 1, component of the claimed design of the '045 patent. Specifically, the Coleman '359, PERMA_03605-3630, Uniflame NSG3902D, Charbroil Stainless and Terrace, Chung '057, and

48

Kenmore 141.153372 grills all include a horizontal top surface corresponding to that of the claimed design.

91.     Moreover, the PERMA_03605-3630 grill has a diagonally sloping rear surface and inner bands having spaced protrusions corresponding to feature "D" and "F" respectively of the cover, 1, component of the claimed design of the '045 patent.

92.     Additionally, the Uniflame NSG3902D grill has a bottom edge corresponding to feature "E" of the cover, 1, component of the claimed design of the '045 patent. While none of the above grills show a handle having the specific shape and appearance of feature, "G" of the cover, 1, component of the claimed design of the '045 patent this feature was shown to be old and well known in the grill art by the Home '357 grill referenced above on page 34.

93.     Furthermore, seven of the above prior art grills show feature "H" of the cover, 1, component of the claimed design of the '045 patent. Specifically, the Coleman '359, PERMA_03605-3630, Uniflame NSG3902D, Charbroil Stainless and Terrace, Kenmore 119.16301800 and 141.153372 and Tseng '308 grills all have flat, plain end panels corresponding to those of the claimed design, (see images below of the prior art grills with corresponding features to the claimed design of the '045 patent identified).



Coleman '359      PERMA_03605-3630      Uniflame NSG3902D

Charbroil Stainless      Chung '057      Charbroil Terrace

Kenmore 119.16301800      Kenmore 141.153372      Tseng '308

94.     The only feature of the cover, 1, component of the claimed design of the '045 patent not shown by any of the prior art grills is feature "I" the hinge members protruding out from the rear. Therefore, feature "I" is the only new feature of the cover, 1, component of the claimed design.

95.     Component 2, the flat, plain, horizontally elongated vertical surface below the cover, 1, of the claimed design of the '045 patent is also not shown by the prior art grills. That is, the Coleman '359, PERMA_03605-3630, Uniflame NSG3902D, Charbroil Stainless and Kenmore 141.153372 grills all have a horizontally elongated vertical surface below the cover that include horizontally spaced control knobs like the Accused Grills. Therefore, component, 2, of the claimed design of the '045 patent can be considered to be new.

96.     Two of the above prior art grills show feature "J" of the shelves, 3, component of the claimed design of the '045 patent. Specifically, the Coleman '359 and Charbroil Stainless grills include shelves that have a vertical front surface corresponding to those of the claimed design. In addition, the Coleman '359 and Chung '057 grills include shelves having a vertical rear surface corresponding to feature "M" of the shelves, 3, component of the claimed design. Furthermore, seven of the above prior art grills show feature "N" of the shelves, 3, component of the claimed design of the '045 patent. Specifically, the PERMA_03605-3630, Uniflame NSG3902D, Charbroil Stainless and Terrace, Chung '057, Kenmore 119.16301800 and Tseng '308 all include shelves having a flat top surface corresponding to those of the claimed design, (see images below of the prior art grills with corresponding features to the claimed design of the '045 patent identified).



Coleman '359            Charbroil Stainless



Chung '057            PERMA_03605-3630



Uniflame NSG3902D     Charbroil Terrace     Kenmore 119.16301800



Tseng '308

97.     The only features of the shelves, 3, component of the claimed design of the '045 patent not shown by any of the prior art grills are features "K" and "L", the convexly curved side surface, K, that includes 3 vertical cutouts, L, that extend up from the bottom edge to the top edge of the side surface, K, for hanging grilling tools. Therefore, features "K" and "L" are the only new features of the shelves, 3, component of the claimed design.

98.     Five of the above prior art grills show feature "P" of the base cabinet, 4, component of the claimed design of the '045 patent. Specifically, the Coleman '359, Charbroil Stainless and Terrace, Chung '057 and Tseng '308 grills all have four vertical corner members that connect to casters corresponding to feature "P" of the base cabinet, 4, component of the claimed design. In addition, all nine of the above prior art grills show feature "Q" of the base cabinet, 4, component of the claimed design of the '045 patent.  That is, all nine prior art grills have two front doors corresponding to those shown in the claimed design. However, since the details of the two doors identified as feature "Q" above are shown in broken lines and form no part of the claimed design no further comparison will be made.

99.     Furthermore, the Chung '057 grill has plain, flat side panels devoid of any vents that correspond to the side panels identified as feature "R" of the base cabinet, 4, component of the claimed design of the '045 patent, (see images below of the prior art grills with corresponding features to the claimed design of the '045 patent identified).



Coleman '359        Charbroil Stainless        Charbroil Terrace

Chung '057        Tseng '308        PERMA_03605-3630

Uniflame NSG3902D        Kenmore 119.16301800        Kenmore 141.153372

100.    The only features of the base cabinet, 4, component of the claimed design of the '045 patent not shown by any of the prior art grills are features "S" and "T", the rear panel, S, that includes five rows of horizontally elongated vents, T, that are spaced down slightly from the top edge and wherein the vents in the second and fourth rows are offset with the vents in the first,

third and fifth rows. Therefore, features "S" and "T" are the only new features of the base cabinet, 4, component of the claimed design.

101.   Component 5, the fire box has feature "U" a rear horizontal member and feature "V" a rectangular member behind it which are not shown in any of the prior art grills. Therefore, features "U" and "V" located behind the fire box, 5, component of the claimed design of the '045 patent can be considered new.

102.   The comparison of the features comprising the claimed design of the '045 patent with those of the nine prior art grills set forth above reveals that component 2, of the claimed design differs from the corresponding component of the prior art grills and seven of the features of the claimed design are not shown in the prior art grills. They are:

   (a)   Feature "I" the hinge members protruding out from the rear of the cover, 1, component of the claimed design;

   (b)   Features "K" and "L" the convexly curved side surface, K, that includes 3 vertical cutouts, L, of the shelves, 3, component of the claimed design;

   (c)   Features "S" and "T" the rear panel, S, that includes five rows of horizontally elongated vents, T, of the base cabinet, 4, component of the claimed design; and

   (d)   Features "U" and "V" located behind the fire box, 5, component of the claimed design.

103.   Since component 2 of the claimed design differs from the corresponding component of the above prior art grills and none of the above prior art grills show the seven features of the claimed design identified above they can be considered new. However, neither the component 2 nor the seven features of the claimed design of the '045 patent identified above are included in the Accused Grills.

104.   Specifically, component 2 of the Accused Grills includes horizontally spaced control knobs identified as feature "I" above. The inclusion of control knobs, I, gives component 2 of the Accused Grills a significantly different visual appearance than the flat, plain appearance of

component 2 of the claimed design of the '045 patent. Furthermore, it's my opinion that this difference between component 2 of the claimed design of the '045 patent and the Accused Grills creates a significantly different visual effect between the claimed design and the Accused Grills as a whole, (see side-by-side comparison of Fig. 2 of the '045 patent with the corresponding photograph of the Accused Grills below).



Claimed design of '045 patent                              Accused Grills

105.    The distinct overall impression created by the inclusion of control knobs is even more apparent on the Kenmore Elite 600 and 700 Series grills, which have additional knobs for four and five burners, respectively, and even more knobs if options such as side burners are included, as shown in these images:





106.    Mr. Holelek's report makes no mention of the knobs on the 3 burner Kenmore Elite grill, let alone the additional knobs on the accused 4 and 5 burner Kenmore Elite grills.  In fact, as noted above, Mr. Holecek does not mention the 600 and 700 Series grills at all.  This in my opinion is another serious deficiency in Mr. Holecek's opinions.

107.    Additionally, feature "I" the hinge members protruding out from the rear of the cover, 1, component of the claimed design has no counterpart in the Accused Grills.

108.    Furthermore, features "K" and "L" differ between the claimed design of the '045 patent and the Accused Grills in that the side surface, K, of the shelves, 3, component of the claimed design is convexly curved and includes 3 vertical cutouts, L, that extend up from the bottom edge to the top edge of the side surface, K, whereas the side surface, K, of the shelves, 3, component of the Accused Grills are horizontally straight and include 4 vertical cutouts, L, that extend up from the bottom edge approximately half way to the top edge and are located just in front of the rear edge of the side surface, K.

109.    Also, a substantial portion of the bottom edge of the side surface, K, of the Accused Grills is spaced up from the bottom edge of the front surface, J, whereas the bottom edge of the side surface, K, of the claimed design is horizontally aligned with the bottom edge of the front surface, J. Again, it's my opinion that the above differences between the side surface, K, of component, 3, of the claimed design of the '045 patent and the Accused Grills creates a significantly different visual effect between the claimed design and the Accused Grills as a whole, (see side-by-side comparison of Fig. 4 of the '045 patent with the spec. drawings of the Accused Grills below).



Claimed design of '045 patent                    Accused Grills

58

110.    Moreover, features "S" and "T" differ between the claimed design of the '045 patent and the Accused Grills in that the rear panel, S, of the base cabinet, 4, component of the claimed design has five rows of horizontally elongated vents, T, in which the second and fourth rows are offset with the vents in the first, third and fifth rows, whereas the rear panel, S, of the base cabinet, 4, component of the Accused Grills has just four rows of horizontally elongated vents, T, that are vertically aligned as well as three rows of horizontally elongated vents identified as "U" above that are vertically aligned and located just above the bottom edge of the rear panel, S. In addition, features "U" and "V" located behind the fire box, 5, component of the claimed design of the '045 patent have no counterpart in the Accused Grills. Instead, the fire box, 6, component of the Accused Grills has a rear panel with two rows of horizontally elongated vents identified as "V" above that are vertically aligned as well as an opening identified as "W" above between the bottom edge of the rear surface, C, of the cover, 1, component and the top edge of the fire box, 6, component. These features, "V" and "W" of the fire box, 6, component of the Accused Grills have no counterpart in the fire box, 5, component of the claimed design of the '045 patent.

111.    The above differences between the rear panel, S, of the claimed design of the '045 patent and the Accused Grills as well as the features "U" and "V" behind the fire box, 5, of the claimed design and features "V" and "W" of the fire box, 6, of the Accused Grills creates a significantly different visual effect between the claimed design and the Accused Grills as a whole, (see side-by-side comparison of Fig. 3 of the '045 patent with the spec. drawing of the Accused Grills below).



Claimed design of '045 patent                                      Accused Grills

112.   Furthermore, the Accused Grills include a pedestal base, 5, component that has no counterpart in the claimed design of the '045 patent. This additional component of the Accused Grills also creates a significant different visual effect between the claimed design and the Accused Grills as a whole.

113.   In view of the significant visual differences between the claimed design of the '045 patent and the Accused Grills pointed out above, an ordinary observer familiar with the prior art would not be deceived into purchasing one, believing it to be the other.  The overall appearance of the Accused Grills and the patented design is quite different, particularly when considered in the context of the prior art.

114.   As further evidence of non-infringement, the prior art Charbroil Stainless grill has six features that correspond to the claimed design of the '045 patent, whereas the Accused Grills only have four features that correspond to the claimed design of the '045 patent. Specifically, the Charbroil Stainless grill has a cover, 1, component that has a short vertical front surface, A, a diagonally sloping forward surface, B, a horizontal top surface, C, and a flat, plain side surface, H, all corresponding to those features of the claimed design of the '045 patent. In addition, the

Charbroil Stainless grill has shelves, 3, component with a flat top surface, N, and a base cabinet, 4, component with four vertical corner members, P, corresponding to those feature of the claimed design of the '045 patent.

115.    However, the Accused Grills only have a cover, 1, component having inner bands with spaced protrusions, F, and a horizontal handle, G, and shelves, 3, component with a vertical rear surface, M, and flat top surface, N, corresponding to those features of the claimed design, ( see images of Charbroil Stainless grill and Accused Grills with the above features identified below).



Charbroil Stainless grill                    Accused Grills

116.    In view of the above comparison of features of the Charbroil Stainless grill and the Accused Grills that correspond to the features of the claimed design of the '045 patent it's my opinion that the Charbroil Stainless grill is as close in appearance to the claimed design of the '045 patent as the Accused Grills, (see side-by-side comparisons of the claimed design, Charbroil Stainless grill and Accused Grills below).



Claimed design of '045 patent    Charbroil Stainless grill         Accused Grills

117.   In particular because I consider the Charbroil Stainless grill to be as similar in overall appearance to the claimed design of the '045 patent as the Accused Grills, it's my opinion that a purchaser familiar with the prior art would not be deceived by any similarity between the claimed design of the '045 patent and the Accused Grills so as to induce them to purchase one believing it to be the other.

118.   Even without considering the prior art, in my opinion an ordinary observer would consider the Accused Grills *dis*similar in overall appearance to the claimed design such that an ordinary observer would *not* be deceived into purchasing one, supposing it to be the other. Hence, it's my opinion that the Accused Grills do not infringe the claimed design of the '045 patent for the reasons stated above.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated: March 24, 2015
Southport, North Carolina

_____
Jim Gandy

EXHIBIT A

# Jim Gandy

5113 Fernwood Drive

Southport, NC 28461

Telephone No.: (910) 599-1329

email: jgandy@expertdesignpatentservices.com

---

## Design Patent Consultant

### QUALIFICATIONS

Broad legal and technical background in examining design patent applications with more than 32 years experience at the United States Patent and Trademark Office, (USPTO). Expert knowledge of design patent examination practice and procedure and the application of statutes, rules and relevant case law for determining patentability of a claim in design patent applications. Extensive speaking experience on behalf of the USPTO regarding the filing and examination of design patent applications to various audiences such as the American Intellectual Property Law Association, Independent Inventors Conference and the Visiting Scholars program. I am currently a registered patent agent with the USPTO specializing in the field of design patents.

### EDUCATION

Bachelor of Science in Architectural Design Technology, 1972
Temple University, Philadelphia, PA.

### PROFESSIONAL EXPERIENCE

Design Patent Examiner, Art Unit 2911, USPTO, 1972-1996

As an examiner I worked primarily in class D12, "Transportation". In 1979 I was promoted to primary examiner and granted full signatory authority. I have experience in initiating interference proceedings, preparing examiner's answers for applications on appeal to the Board of Patent Appeals and Interferences and have examined both reexamination and reissue applications. As a primary examiner I trained new examiners and occasionally assumed supervisory patent examiner duties in the absence of the art unit supervisor. In my 24 years as an examiner I made patentability determinations in over 10,000 design patent applications examined.

Supervisory Patent Examiner, Art Unit 2913, USPTO, 1996-1998

In my capacity as supervisor I was in charge of distributing and monitoring the flow of work for examiners in the art unit as well as reviewing the overall quality and timeliness of the work product performed by examiners. It was also my responsibility to train junior examiners on practice and procedure for

examining design patent applications, including the proper application of the statutes and rules. In addition, I would provide refresher training to primary examiners when necessary to assure consistency of the work product. As supervisor I was responsible for evaluating and rating all examiners in the art unit at the end of the fiscal year based on the criteria for the elements under their performance appraisal plan. I was also in charge of the program for uniformity of examination practice for the entire Design Patent Technology Center. In that capacity I was responsible for the development of the Design Examiner Supplemental Training Guide.

Design Patent Practice Specialist, Technology Center 2900, USPTO, 1998-2005

As the design patent practice specialist I was in charge of all training for new and junior examiners as well as continuing education training for all examiners in Technology Center 2900. I was also in charge of making updates to Chapter 1500 Design Patents of the Manual of Patent Examining Procedure as well as the Design Examiner Supplemental Training Guide. I also responded to inquiries about design patent practice and procedure and filing design patent applications from external customers on a daily basis. In my capacity as the practice specialist I reviewed all cases coming back from the Courts, the Board of Patent Appeals and Interferences and the Office of Patent Quality Review for learning points and corrective action if necessary. I monitored all reissue and reexamination applications filed in the technology center and reviewed Office actions prepared by examiners for technical accuracy under the Office's in–process review program. In addition, I would make presentations to attorneys and inventor groups on behalf of the USPTO to share information and learn from each other.

Since retiring from the USPTO I have prepared expert reports and testified in a deposition as an expert witness in the following matters:

Complaint of Ford Global Technologies, LLC under Section 337 of The Tariff Act of 1930, As Amended

- Prepared expert report on sufficiency of disclosure of claim under 35 USC § 112, Re U.S. Design Patent Nos. D498,444, D500,717, D500,969, D500,970, D501,162, D508,223, D510,551 and D539,448 (2008).

Magnadyne Corp. vs. Best Buy Co., Inc.

- Prepared expert report on infringement of U.S. Design Patent No. D522,457 and lack of anticipation or obviousness under USC § 102 and 103(a) respectively, (2010).

- Gave deposition on expert report, (2010).

## AWARDS

Received outstanding rating at the end of fiscal year under performance appraisal plan both as an examiner, supervisor patent examiner and design patent practice specialist for 32 consecutive years.

Received Department of Commerce Bronze Medal Award in March of 1983 for outstanding competence in the performance of official duties in the design patent field over a long period of time.

Received Distinguished Career Award from the Patent and Trademark Office in December 2000, for sustained superior performance in the examination of design patent applications and in the leadership of art units.

Received Norman P. Morgenstern Award in June of 2004 for recognition of the Supervisory Patent Examiner whose work exemplifies bold leadership and innovative activities that make a significant contribution to the U.S. Patent and Trademark Office.