**EXHIBIT M**

**TO SEARS'S MOTION FOR SUMMARY JUDGMENT
ON WEBER'S '834 (SHROUD) DESIGN PATENT**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| WEBER-STEPHEN PRODUCTS LLC, | |
|           Plaintiff / Counter-Defendant, | Civil Action No.  13-cv-1686 |
|   v. | Hon. Edmond E. Chang |
| SEARS HOLDINGS CORPORATION; SEARS ROEBUCK & COMPANY, | Magistrate Judge Michael T. Mason |
|           Defendants / Counter-Plaintiffs. | |

**<u>EXPERT REPORT OF JIM GANDY</u>**

I, Jim Gandy, respectfully submit this Expert Report on behalf of Sears Holdings Corporation and Sears Roebuck & Co. (collectively "Sears").

**INTRODUCTION & SUMMARY OF OPINIONS**

1.    I have been retained by Sears in connection with the above matter to provide opinions relating to two design patents, U.S. Patent No. D564,834 S (the "'834 patent") and U.S. Patent No. D609,045 S (the "'045 patent").  This Report contains my opinions concerning the invalidity of those patents.

2.    In my opinion, the '834 patent is invalid as being obvious under 35 U.S.C. § 103(a) over the prior art as specified below.

3.    In my opinion, the '834 patent is invalid as being nonenabling and indefinite under 35 U.S.C. § 112(a) & (b) due to drawing deficiencies and inconsistencies as specified below.

4.    In my opinion, the '834 patent is invalid for failing to comply with the written description requirement under 35 U.S.C. § 112(a) due to the introduction of new matter as specified below.

1

5.      In my opinion, the '045 patent is invalid as being nonenabling and indefinite under 35 U.S.C. § 112(a) & (b) due to drawing deficiencies and inconsistencies as specified below.

6.      In my opinion, the '045 patent is invalid for failing to comply with the written description requirement under 35 U.S.C. § 112(a) due to the introduction of new matter as specified below.

7.      All of the materials in this case have been made available to me in connection with my work.  I have reviewed numerous documents, including the '834 and the '045 patents and their respective prosecution histories; the parties' respective invalidity/validity contentions insofar as they relate to '834 and '045 patents; the parent application 29/256,991 file prosecution history of the '045 patent; all of the prior art references relating to the '834 and '045 patents; the Court's claim construction order; the Amended Complaint; the Declaration of Hazel Hu; Sears Deposition Exhibit 80 and sales data relating thereto; and the Manual of Patent Examining Procedure.

8.      I reserve the right to rely on any additional materials provided to me or brought to my attention and to modify, add to, or amend my opinions.  I also reserve the right to create and use any demonstrative exhibits to explain or further detail my opinions.

9.      I am being compensated $350.00 per hour in connection with my work in this matter. My compensation is not contingent on any opinions I give or on the outcome of the case.

### BACKGROUND & EXPERIENCE

10.      I have a broad legal and technical background in examining design patent applications with more than 32 years of experience at the United States Patent and Trademark Office.  I am a leading expert in the field of design patent examination practice and procedure and the application of patentability standards to design patent applications.  On behalf of the United States Patent and Trademark Office, I gave presentations on the filing and examination of design

patent applications to organizations such as the American Intellectual Property Law Association as well as the National Independent Inventors Conference.

11.     I have held various titles over the years in the United States Patent and Trademark Office. My background and experience is outlined in the resume attached as Exhibit A.  I was a design patent examiner in Art Unit 2911 from 1972-1996 and examined primarily in class D12 "Transportation".  During portions of that time period I also examined in class D06 "Furnishings", D08 "Tools and Hardware, D15 "Machines Not Elsewhere Specified", D34 "Material or Article Handling Equipment" and D99 "Miscellaneous".  Because design patent examiners are considered generalists they are expected to be able to examine design patent applications in any class under the design patent classification schedule. As such I was asked on occasion to help reduce the backlog of pending design patent applications by examining date cases from other examiners dockets. For instance, I have examined design patent applications assigned to class D04 "Brushware", D07 "Equipment for Preparing or Serving Food or Drink not elsewhere specified", D10 "Measuring, Testing, or Signaling Instruments", D13 "Equipment for Production, Distribution, or Transformation of Energy", D14 "Recording, Communication, or Information Retrieval Equipment", D16 "Photography and Optical Equipment", D21 "Games, Toys and Sports Goods", D22 "Arms, Pyrotechnics, Hunting and Fishing Equipment", D23 "Environmental Heating and Cooling; Fluid Handling and Sanitary Equipment", D24 "Medical and Laboratory Equipment", D25 "Building Units and Construction Elements", D26 "Lighting", D27 "Tobacco and Smokers Supplies" and D29 "Equipment for Safety, Protection and Rescue. I have examined and issued design patents in all of the classes identified above. In addition, a patent examiner search also reveals that as a primary examiner and supervisor I reviewed and signed design patent applications allowed by assistant examiners for proper search and

classification as well as technical and legal accuracy in all of the remaining classes under the design patent classification schedule, D01, D02, D03, D05, D09, D11, D17, D18, D19, D20, D28, D30 and D32.

12.    In 1996, I was promoted to Supervisory Patent Examiner in Art Unit 2913. In that capacity I was responsible for distributing and monitoring the flow of work for examiners in the art unit as well as reviewing the overall quality and timeliness of the work product performed by examiners. It was also my responsibility to train junior examiners on practice and procedure for examining design patent applications, including the proper application of the statutes and rules.

13.    In 1998, I was assigned to the position of Design Patent Practice Specialist, the position I held until I retired from the Office in 2005. As the Design Patent Practice Specialist, I was in charge of all training for new and junior examiners as well as continuing education for all design examiners. I was also in charge of making updates to the Manual of Patent Examining Procedure and responding to all inquires from attorneys and the public regarding design patent practice. I was in charge of monitoring all examination activities in Technology Center 2900 including reviewing office actions for all examiners in the Technology Center for proper search and technical and legal accuracy under the Office wide In-process review program.

14.    Since retiring from the Office in 2005, I have on occasion counseled patent attorneys and agents in their filings of design patent applications at the United States Patent and Trademark Office. I have not testified in a deposition or at trial as an expert witness during the last four (4) years. I have not published any articles or books in the last ten (10) years.

**DETAILED OPINIONS**

**A.      Obviousness Of The '834 Patent.**

15.     It is my understanding that the ultimate question of design patent obviousness is, essentially, whether the claimed design would have been obvious at the time of the invention to a designer of ordinary skill who designs articles of the type involved.  In response to Interrogatory No. 3, Weber has taken the position that a person of ordinary skill has a degree in mechanical engineering or industrial design, or has 3-5 years of working experience in the industry, and I understand that Sears does not dispute that this is the appropriate level of skill.

16.     To answer the ultimate obviousness question, it is my understanding that the fact finder must determine whether a person of ordinary skill would have combined the teachings of the prior art to create the same overall impression as the claimed design.  In so doing, I understand that the fact finder must find a single reference for which the design characteristics are basically the same as the claimed design, and then modify it by appropriate related references to create a design that has the same overall visual appearance as the claimed design.

17.     I also understand that the fact finder also considers "secondary considerations" on the question of obviousness and that the party relying on such considerations must both establish them as well as demonstrate a "nexus" between the considerations and the patented design. Weber stated in its Final Validity Contentions that it "may rely on secondary considerations of non-obviousness."  Final Contentions at 5.  If and when Weber advances specific evidence of any such secondary considerations, I will consider them and, if appropriate, modify or expand upon my opinions accordingly.

### 1.    *Overview of Prior Art.*

18.    The field of barbecue grill cover designs is crowded and includes numerous shapes and appearances. However, many of these prior art grill covers include common design elements and features that are old and well known in the art. Identified below, with images included, are prior art grills showing grill covers having common design elements and features as the claimed design in the '834 patent which render it invalid as being obvious under 35 U.S.C. § 103(a).

19.    The Uniflame NSG3902D grill, for example, has a grill cover with side panels having an appearance similar to the claimed design of the '834 patent including a bottom edge with a shape substantially identical thereto as circled in red below.



20.    The grills of Stephen '967, Schlosser '279, Johnson '600, Weber Genesis 1300 and Kenmore 141.15221 and 141.153372 all have a grill cover with side panels having an appearance similar to the design claimed in the '834 patent including an inner band as shown circled in red below.

6



Fig. 1 of Stephen '967     Fig. 1 of Schlosser '279     Fig. 1 of Johnson '600

  

Weber Genesis 1300     Kenmore 141.15221     Kenmore 141.153372

21.    The grills of Home '357, Coleman '359 and Kenmore 141.16680 have a grill cover with side panels having an overall appearance substantially similar to the claimed design of the '834 patent including a short vertical front edge, a diagonally sloping forward edge and horizontal top edge as well as an inner band as shown circled in red below.



Fig. 1 of Home '357          Fig. 1 of Coleman '359          Kenmore 141.16680

22.    The    BBQ-PRO    720-0266,    BBQ-PRO    720-0267,    PERMA_03579-3603    and

PERMA_03605-3630 grills all have a grill cover with side panels that include an inner band with

spaced protrusions such as the claimed design of the '834 patent. See areas circled in red below.





BBQ-PRO 720-0266                    BBQ-PRO 720-0267

 

PERMA_03579-3603          PERMA_03605-3630

23.    The Harrod '983 grill has a grill cover with side panels having an overall appearance substantially similar to the claimed design of the '834 patent including a diagonally sloping forward edge and top edge having a slight convexity and a diagonally sloping rear edge as well as an inner band and a bottom edge with a shape substantially the same as the design of the '834 patent. See areas circled in red below.

 

9

### 2. *Home '357/Harrod '983/BBQ Pro and/or Perma.*

24.    It's my opinion that the '834 patent is invalid since the design claimed therein is obvious under 35 U.S.C. § 103(a) over the Home '357 grill cover in view of the Harrod '983 grill cover and the BBQ-PRO 720-0266/or PERMA 03579-3603 grill cover.

25.    The side panels of the Home '357 grill cover have an overall appearance basically the same as the design claimed in the '834 patent, the only differences being the shape of the bottom edge and the absence of spaced protrusions along the inner band.  While the diagonally sloping forward edge and top edge are slightly convex and the rear edge diagonally sloping in the design claimed in the '834 patent these are minor variations that can hardly be considered to distinguish its overall appearance over the Home '357 side panels from an ornamental design standpoint. The claimed design of the '834 patent also includes rearward protruding hinges that are seen to be primarily functional and inconsistently depicted in the views of the drawing and as such are considered unrelated to the overall aesthetic appearance thereof.





side panels of Home '357 grill cover          claimed design of '834 patent

10

26.     The side panels of the Harrod '983 grill cover have an appearance substantially similar to the claimed design of the '834 patent including a bottom edge with a shape basically the same as said design and a diagonally sloping forward edge and top edge having a slight convexity as well as a diagonally sloping rear edge.



27.     The BBQ-PRO 720-0266/or PERMA 03579-3603 grill cover has side panels with an inner band having spaced protrusions such as the design of the '834 patent; any difference in the number of protrusions being a mere matter of choice well within the level of ordinary skill to a designer in the grill art.





BBQ-PRO 720-0266 grill cover          PERMA 03579-3603 grill cover

28.     It would have been obvious to a designer of ordinary skill in the art at the time the claimed design of the '834 patent was made to modify the bottom edge of the side panels of the Home '357 grill cover to a shape such as that taught by the side panels of the Harrod '983 grill cover, and providing the diagonally sloping forward edge and top edge of said panels with a slight convexity and the rear edge thereof with a diagonal slope as further suggested by the side

11

panels of the Harrod '983 grill cover, and by adding spaced protrusions to the inner band of the side panels of Home '357 as taught by the side panels of the BBQ-PRO 720-0266/or PERMA 03579-3603 grill.

29.     The reconstruction of the side panels of the Home '357 grill cover as set forth above is proper since it takes into account only knowledge which was within the level of ordinary skill in the art at the time the claimed invention was made and does not include knowledge gleaned only from applicant's disclosure, see MPEP 2145 X. A. In addition, said reconstruction would result in an appearance over which the claimed design of the '834 patent discloses no patentable ornamental distinctions as can be seen from the visual comparison below.




Modified side panels of Home '357            claimed design of '834 patent

30.     The motivation to modify the side panels of the Home '357 grill cover in view of the side panels of the Harrod '983 grill cover and BBQ-PRO 720-0266/or PERMA 03579-3603 grill cover is proper because they are all directed to grill covers having side panels substantially similar in shape and appearance and are therefore so related that the appearance of certain features in one would suggest the application of those features to the other. Further, it is my

understanding that a designer skilled in the art is charged with knowledge of the related art. Hence, the combination of old elements, herein, would have been well within the level of ordinary skill. See MPEP 1504.03.

### 3. Coleman '359/Harod '983/BBQ Pro and/or Perma.

31. It's also my opinion that the '834 patent is invalid since the design claimed therein is obvious under 35 U.S.C. § 103(a) over the Coleman '359 grill cover in view of the Harrod '983 grill cover and the BBQ-PRO 720-0266/or PERMA 03579-3603 grill cover.

32. The side panels of the Coleman '359 grill cover have an overall appearance basically the same as the design claimed in the '834 patent, the only differences being the shape of the bottom edge and the absence of spaced protrusions along the inner band. While the diagonally sloping forward edge and top edge are slightly convex and the rear edge diagonally sloping in the design claimed in the '834 patent these are minor variations that can hardly be considered to distinguish its overall appearance over the Coleman '359 side panels from an ornamental design standpoint. The claimed design of the '834 patent also includes rearward protruding hinges that are seen to be primarily functional and inconsistently depicted in the views of the drawing and as such are considered unrelated to the overall aesthetic appearance thereof.





side panels of Coleman '359 grill cover          claimed design of '834 patent

13

33.     The side panels of the Harrod '983 grill cover have an appearance substantially similar to the claimed design of the '834 patent including a bottom edge with a shape basically the same as said design and a diagonally sloping forward edge and top edge having a slight convexity as well as a diagonally sloping rear edge.



34.     The BBQ-PRO 720-0266/or PERMA 03579-3603 grill cover has side panels with an inner band having spaced protrusions such as the design of the '834 patent; any difference in the number of protrusions being a mere matter of choice well within the level of ordinary skill to a designer in the grill art.

          

BBQ-PRO 720-0266 grill cover          PERMA 03579-3603 grill cover

35.     It would have been obvious to a designer of ordinary skill in the art at the time the claimed design of the '834 patent was made to modify the bottom edge of the side panels of the

14

Coleman '359 grill cover to a shape such as that taught by the side panels of the Harrod '983 grill cover, and providing the diagonally sloping forward edge and top edge of said panels with a slight convexity and the rear edge thereof with a diagonal slope as further suggested by the side panels of the Harrod '983 grill cover, and by adding spaced protrusions to the inner band of the side panels of Coleman '359 as taught by the side panels of the BBQ-PRO 720-0266/or PERMA 03579-3603 grill.

36.     The reconstruction of the side panels of the Coleman '359 grill cover as set forth above is proper since it takes into account only knowledge which was within the level of ordinary skill in the art at the time the claimed invention was made and does not include knowledge gleaned only from applicant's disclosure, see MPEP 2145 X. A. In addition, said reconstruction would result in an appearance over which the claimed design of the '834 patent discloses no patentable ornamental distinctions as can be seen from the visual comparison below.




Modified side panels of Coleman '359           claimed design of '834 patent

37.     The motivation to modify the side panels of the Coleman '359 grill cover in view of the side panels of the Harrod '983 grill cover and BBQ-PRO 720-0266/or PERMA 03579-3603 grill cover is proper because they are all directed to grill covers having side panels substantially similar in shape and appearance and are therefore so related that the appearance of certain

features in one would suggest the application of those features to the other. Further, it is my understanding that a designer skilled in the art is charged with knowledge of the related art. Hence, the combination of old elements, herein, would have been well within the level of ordinary skill. See MPEP 1504.03.

### 4.    Home '357/Uniflame/BBQ Pro and/or Perma/Harrod '983.

38.    It's additionally my opinion that the '834 patent is invalid since the design claimed therein is obvious under 35 U.S.C. § 103(a) over the Home '357 grill cover in view of the UniFlame NSG3902D grill cover, the BBQ-PRO 720-0266/or PERMA 03579-3603 grill cover and the Harrod '983 grill cover

39.    The side panels of the Home '357 grill cover have an overall appearance basically the same as the design claimed in the '834 patent, the only differences being the shape of the bottom edge and the absence of spaced protrusions along the inner band. While the diagonally sloping forward edge and top edge are slightly convex and the rear edge diagonally sloping in the design claimed in the '834 patent these are minor variations that can hardly be considered to distinguish its overall appearance over the Home '357 side panels from an ornamental design standpoint. The claimed design of the '834 patent also includes rearward protruding hinges that are seen to be primarily functional and inconsistently depicted in the views of the drawing and as such are considered unrelated to the overall aesthetic appearance thereof.



side panels of Home '357 grill cover            claimed design of '834 patent

40.     The side panels of the UniFlame NSG3902D grill cover, have an appearance similar to the design of the '834 patent including a bottom edge with a shape substantially identical thereto as depicted below.



41.     The BBQ-PRO 720-0266/or PERMA 03579-3603 grill cover has side panels with an inner band having spaced protrusions such as the design of the '834 patent; any difference in the number of protrusions being a mere matter of choice well within the level of ordinary skill to a designer in the grill art.

17



BBQ-PRO 720-0266 grill cover          PERMA 03579-3603 grill cover

42.     The side panels of the Harrod '983 grill cover have an appearance substantially similar to the design of the '834 patent including a diagonally sloping forward edge and top edge having a slight convexity as well as a diagonally sloping rear edge.



43.     It would have been obvious to a designer of ordinary skill in the art at the time the design of the '834 patent was made to modify the bottom edge of the side panels of the Home '357 grill cover to a shape such as that taught by the side panels of the UniFlame NSG3902D grill cover, and by further providing the inner band of the side panels of Home '357 with spaced protrusions and the diagonally sloping forward edge and top edge of said panels with a slight convexity and the rear edge thereof with a diagonal slope all as suggested by the side panels of the BBQ-PRO 720-0266/or PERMA 03579-3603 grill cover and the Harrod '983 grill cover respectively.

18

44.     The reconstruction of the side panels of the Home '357 grill cover as set forth above is proper since it takes into account only knowledge which was within the level of ordinary skill in the art at the time the claimed invention was made and does not include knowledge gleaned only from applicant's disclosure, see MPEP 2145 X. A. In addition, said reconstruction would result in an appearance over which the claimed design of the '834 patent discloses no patentable ornamental distinctions as can be seen from the visual comparison below.







    modified side panels of Home           claimed design of '834 patent

45.     The motivation to modify the side panels of the Home '357 grill cover in view of the side panels of the UniFlame NSG3902D grill cover, BBQ-PRO 720-0266/or PERMA 03579-3603 grill cover and the Harrod '983 grill cover is proper because they are all directed to grill covers having side panels substantially similar in shape and appearance and are therefore so related that the appearance of certain features in one would suggest the application of those features to the other. Further, it is my understanding that a designer skilled in the art is charged with knowledge of the related art. Hence, the combination of old elements, herein, would have been well within the level of ordinary skill. See MPEP 1504.03.

### 5. *Coleman '359/Uniflame/BBQ Pro and/or Perma/Harrod '983.*

46.    Furthermore, it's my opinion that the '834 patent is invalid since the design claimed therein is obvious under 35 U.S.C. § 103(a) over the Coleman '359 grill cover, in view of the UniFlame NSG3902D grill cover, the BBQ-PRO 720-0266/or PERMA 03579-3603 grill cover and the Harrod '983 grill cover.

47.    The side panels of the Coleman '359 grill cover have an overall appearance basically the same as the design claimed in the '834 patent, the only differences being the shape of the bottom edge and the absence of spaced protrusions along the inner band.  While the diagonally sloping forward edge and top edge are slightly convex and the rear edge diagonally sloping in the design claimed in the '834 patent these are minor variations that can hardly be considered to distinguish its overall appearance over the Coleman '359 side panels from an ornamental design standpoint. The claimed design of the '834 patent also includes rearward protruding hinges that are seen to be primarily functional and inconsistently depicted in the views of the drawing and as such are considered unrelated to the overall aesthetic appearance thereof.





side panels of Coleman '359 grill cover          claimed design of '834 patent

20

48.    The side panels of the UniFlame NSG3902D grill cover, have an appearance similar to the design of the '834 patent including a bottom edge with a shape substantially identical thereto as depicted below.



49.    The BBQ-PRO 720-0266/or PERMA 03579-3603 grill cover has side panels with an inner band having spaced protrusions such as the design of the '834 patent; any difference in the number of protrusions being a mere matter of choice well within the level of ordinary skill to a designer in the grill art.

  

BBQ-PRO 720-0266 grill cover          PERMA 03579-3603 grill cover

50.    The side panels of the Harrod '983 grill cover have an appearance substantially similar to the design of the '834 patent including a diagonally sloping forward edge and top edge having a slight convexity as well as a diagonally sloping rear edge.

21



51.    It would have been obvious to a designer of ordinary skill in the art at the time the design of the '834 patent was made to modify the bottom edge of the side panels of the Coleman '359 grill cover to a shape such as that taught by the side panels of the UniFlame NSG3902D grill cover, and by further providing the inner band of the side panels of Coleman '359 with spaced protrusions and the diagonally sloping forward edge and top edge of said panels with a slight convexity and the rear edge thereof with a diagonal slope all as suggested by the side panels of the BBQ-PRO 720-0266/or PERMA 03579-3603 grill cover and the Harrod '983 grill cover respectively.

52.    The reconstruction of the side panels of the Coleman '359 grill cover as set forth above is proper since it takes into account only knowledge which was within the level of ordinary skill in the art at the time the claimed invention was made and does not include knowledge gleaned only from applicant's disclosure, see MPEP 2145 X. A. In addition, said reconstruction would result in an appearance over which the claimed design of the '834 patent discloses no patentable ornamental distinctions as can be seen from the visual comparison below.

 

Modified side panels of Coleman '359          claimed design of '834 patent

53.    The motivation to modify the side panels of the Coleman '359 grill cover in view of the side panels of the UniFlame NSG3902D grill cover, BBQ-PRO 720-0266/or PERMA 03579-3603 grill cover and the Harrod '983 grill cover is proper because they are all directed to grill covers having side panels substantially similar in shape and appearance and are therefore so related that the appearance of certain features in one would suggest the application of those features to the other. Further, it is my understanding that a designer skilled in the art is charged with knowledge of the related art. Hence, the combination of old elements, herein, would have been well within the level of ordinary skill. See MPEP 1504.03.

**B.    The '834 Patent Is Non-Enabling And Indefinite.**

54.    35 U.S.C. § 112(a) requires that "[t]he specification shall contain a written description of the invention, …… in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same…."  It is my understanding that the drawing along with any narrative description in the specification constitute the written description and enabling disclosure for the purpose of satisfying the requirements of 35 U.S.C. § 112(a).  It is my further understanding that definiteness is evaluated from the person skilled in the relevant art, and that the question in

23

essence is whether the disclosure reasonably conveys that the inventor had possession of the claimed subject matter at the time of the filing date. See MPEP 1504.04

55.     35 U.S.C. § 112(b) requires that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." Because the drawing disclosure and any narrative description in the specification are incorporated into the claim by the use of the language "as shown and described," in a design patent it is my understanding that any determination of the scope of protection sought by the claim is also a determination of the subject matter that must be enabled by the disclosure. It is my further understanding, therefore, that if the appearance and shape of a claimed design cannot be determined or understood due to an inadequate visual disclosure, then the claim, which incorporates the visual disclosure, fails to particularly point out and distinctly claim the subject matter the inventor(s) regard as their invention. See MPEP 1504.04.

56.     It is my opinion that the '834 patent is invalid since the claimed design is in violation of 35 U.S.C § 112(a) and (b) as it is not described in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the same, and fails to particularly point out and distinctly claim the subject matter which the applicant regards as the invention. The claimed design is non-enabling and indefinite due to the lack of clarity and consistency in the depiction of the rear hinge members forming part thereof between the views of the drawing.

57.     Specifically, as shown in Figures 1, 2, and 4 of the drawing, the rear hinge members are shown as a flat surface devoid of any contour. The hinge members as viewed from the side in Figures 1, 2, and 4 appear to be a flat surface, with a slightly sloping top edge as circled in red on Figures 1, 2 and 4 of the '834 patent drawing below.



58.     However, in Figures 5 and 7 the outer side edge of the hinge members slopes diagonally inwardly and merges with a vertical surface, which is in conflict with Figures 1, 2, and 4, note areas circled in red on Figures 5 and 7 of the '834 patent drawing below.



59.     Furthermore, in Figure 5, the bottom of the hinge members appear to be a solid flat surface. However, as shown in Figure 6, the hinge members have a horizontal top portion that merges with a downwardly extending vertical edge, which is in conflict with the Figure 5 illustration, see areas circled in red on Figures 5 and 6 of the '834 patent drawing below.



60.    In addition, as shown in Figures 2 and 4, the hinge members have a gentle sloping diagonal top edge; whereas in Figure 6, the top edge thereof appears to be horizontally straight, see areas circled in red on Figures 2, 4 and 6 of the "834 patent drawing below.



61    It's noted that Figure 1 of the drawing of the '834 patent is a perspective view; however, all of the remaining views are either elevation or plan views. Therefore, no justification can be made for the inconsistencies between Figures 2, 3, 4, 5, 6 and 7 described above due to the fact that they are drawn in perspective, since they are not. Specifically, since Figures 2, 3, 4 and 6 are elevation views and Figures 5 and 7 plan views, the shape and appearance of all elements and features comprising the claimed design should be consistently depicted between these views.

62.    While it's understood that design patents protect the overall appearance of a claimed design and not individual features, it is well established that "there are 'no portions of a design which are 'immaterial' or 'not important.' A design is a unitary thing and all of its portions are material in that they contribute to the appearance which constitutes the design'." See MPEP 1503.01 III.   Furthermore, since the drawing constitutes the whole disclosure of a claimed design, "…it is of utmost importance that it be so well executed both as to clarity of showing and completeness, that nothing regarding the design sought to be patented is left to conjecture." MPEP 1503.02, ¶ 15.48. Such is not the case with the '834 patent; that is, due to the inconsistencies described above, it is unclear what the exact shape and appearance of the rear hinge members forming part of the claimed design are intended to be. Therefore, one skilled in

the art would not be able to understand the bounds of the claim due to the lack of an enabling visual disclosure.

**C.    The '834 Patent Fails To Comply With The Written Description Requirement.**

63.    If an amendment to the drawing is submitted during the examination of a design patent application, it may not introduce new matter into the disclosure of the claimed design, 35 U.S.C. § 132(a), which states "[n]o amendment shall introduce new matter into the disclosure of the invention." If new matter is introduced into the disclosure of the claimed design, the claim does not comply with 35 U.S.C. § 112(a).  I understand that the question that must be answered when an amendment to the claim is made after its filing date is whether the inventor had possession of what is now claimed as the ornamental design at the time the application was filed.

64.    It is my opinion that the '834 patent is invalid under 35 U.S.C. § 112(a) since the claimed design fails to comply with the written description requirement thereof because the drawings of the '834 patent introduce new matter not supported by the original disclosure. The original disclosure does not reasonably convey to a designer of ordinary skill in the art that the patentees were in possession of the design now claimed in the '834 patent at the time the application was filed.

65.    Specifically, there is nothing in the original disclosure to support the shape and appearance of the rear hinge members shown in Figure 6 of the '834 patent. In Figure 6 of the original disclosure it cannot be determined what the shape and appearance of the rear hinge members are due to the solid black illustration, note areas circled in red on Figure 6 of the original disclosure below.



Figure 6

66.     However, in Figure 6 of the '834 patent the rear hinge members have an inverted "L" shape comprising a top horizontal edge merging with a downwardly extending vertical edge, see areas circled in red on Figure 6 of the '834 patent drawing below.



FIG. 6

67.     Nowhere in the original disclosure can this specific shape be found. On the contrary, Figures 1, 2, and 4 of the original disclosure show a rear hinge member that appears to be a flat surface, having a slightly sloping top edge, note areas circled in red on Figures 1, 2 and 4 of the original disclosure below.



68.     Furthermore, Figures 5 and 7 of the original disclosure show rear hinge members that have a diagonally inwardly sloping edge that merges with a vertical edge, see areas circled in red on Figures 5 and 7 of the original disclosure below.



69.     Therefore, the specific shape and appearance of the rear hinge members shown in Figure 6 of the '834 patent have no support in the views of the original disclosure. Hence, the patentees

29

were not in possession of what is now claimed as the ornamental design in the '834 patent at the time the application was filed.

70.    I've reviewed the prosecution history of the '834 patent file, and there is no indication that the examiner raised the issue regarding the inability to understand the shape and appearance of the rear hinge members in Figure 6 of the original disclosure due to the solid black illustration. On the contrary, the examiner merely indicated in the second office action that the areas circled as "D", which included the rear hinge members, were "…inconsistent with the original view." as depicted in Figure 5 of the replacement drawings submitted in response to the first office action. An indication that the rear hinge members are "inconsistent with the original view" does not address the fact that the shape and appearance of the rear hinge members could not be understood as shown in Figure 6 of the original disclosure as set forth above.

**D.    The '045 Patent Is Non-Enabling And Indefinite.**

71.    It is my opinion that the '045 patent is also invalid since the claimed design is in violation of 35 U.S.C. § 112(a) and (b) as it is not described in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the same, and fails to particularly point out and distinctly claim the subject matter which the applicant regards as the invention. The claimed design is non-enabling and indefinite due to the lack of clarity and consistency of various features thereof between the views of the drawing.

72.    Specifically, as shown in Figure 3 of the drawing, there is internal structure shown in solid lines in the open areas to the left and the right of the firebox which are incapable of being understood as to what they are intended to represent, note areas circled in red on Figure 3 of the drawing below.



73.     Furthermore, the exact shape and appearance of the horizontal member shown extending across the rear of the grill cover in Figure 3 as well as the rectangular structure shown behind the horizontal bar in Figure 3 cannot be determined in the absence of additional views, see areas circled in red on Figure 3 of the drawing below.



74.     Moreover, the bottom horizontal line shown in Figure 4 is not shown in Figure 1, and in the absence of any additional disclosure it cannot be understood what the bottom horizontal line shown in Figure 4 and 5 is intended to represent, note areas circled in red on Figures 1, 4 and 5 of the drawing below.



75.     Additionally, the outer edge of the outwardly extending panel on the left side of the design in Figure 1 has a much greater convex curvature than the corresponding edge shown in Figures 2 and 3, see areas circled in red on Figures 1, 2 and 3 of the drawing below.



76.     Due to this inconsistency between Figures 1, 2, and 3, it is unclear what the exact contour of the outer edge of the outwardly extending panels is intended to be. Furthermore, in Figure 5 the vertical edge directly below the bottom edge of the grill cover has a diagonally upwardly sloping top portion that connects to the bottom edge of the grill cover, note circled area in red in Figure 5 of the drawing below.



77.     However, as shown in Figures 1, 2, and 4, the corresponding vertical edge does not include a diagonally upwardly sloping top portion, see areas circled in red in Figures 1, 2 and 4 of the drawing below.



78.     In addition, in Figures 4 and 5, the rear edge that extends up above the outwardly extending shelves includes a vertical portion that connects with an outwardly sloping diagonal edge which in turn connects to an outer vertical edge, note areas circled in red in Figures 4 and 5 of the drawing below.



79. However, as shown in Figures 1 and 3, the outwardly sloping diagonal edge is horizontally straight, see areas circled in red on Figures 1 and 3 of the drawing below.

 

80. Moreover, the appearance of the rear hinge member shown in Figures 4 and 5 does not correspond to the appearance of the rear hinge members in Figure 3, and it cannot be determined from these three views what the exact configuration of the rear hinge members are intended to be, note areas circled in Figures 3, 4 and 5 of the drawing below.

34



81.     The fact that the five views of drawing are perspectives in the '045 patent does not justify the deficiencies and inconsistencies in the drawing described above. For instance, the inability to understand what the internal structure is intended to represent in the open areas to the left and right of the fire box is not the result of Figure 3 being drawn in perspective, but rather the absence of any additional views to qualify what the structure is. Furthermore, failure to understand what the exact shape and appearance of the horizontal member and rectangular structure circled in red in Figure 3 above is not the result of that view being drawn in perspective, but rather the absence of any additional views to qualify the three dimensional shape thereof. In addition, failure to understand what the bottom horizontal line circled in red in Figure 4 and 5 above is intended to represent is not the result of those views being drawn in perspective, but rather the absence of any additional views to qualify what said line represents. The same holds true for the remaining deficiencies and inconsistencies described above.

82.     As in the '834 patent, reference to the criteria in sections 1503.01 and 1503.02 of the MPEP set forth in paragraph 62 above apply equally to the '045 patent. That is, since the drawing constitutes the whole disclosure of a claimed design, "…it is of utmost importance that it be so well executed both as to clarity of showing and completeness, that nothing regarding the design sought to be patented is left to conjecture." MPEP 1503.02, ¶ 15.48. Such is not the case with the '045 patent. Therefore, due to the inconsistencies and discrepancies between the views

35

of the drawing of various features of the claimed design described above, one skilled in the art would not be able to understand the bounds of the claim due to the lack of an enabling visual disclosure.

**E.     The '045 Patent Fails To Comply With The Written Description Requirement.**

83.     "Applicants are entitled to claim the benefit of the filing date of earlier applications for later claimed inventions under 35 U.S.C. 120 only when the earlier application discloses that invention in the manner required by 35 U.S.C. 112(a)." MPEP 1504.20. Thus, I understand that one looks to the drawings of the earlier application for disclosure of the subject matter claimed in the later application.

84.     In addition, in a divisional application, "there maybe no departure therefrom in substance or variation in the disclosure that would amount to 'new matter' if introduced by amendment into the parent application." MPEP 201.06. A change in the configuration of a claimed design in a later filed application that claims priority under 35 U.S.C. § 120 to an earlier filed application is considered a departure from the original disclosure in the earlier application and introduces prohibited new matter. See MPEP 1504.04 and 1504.20.

85.     It is my opinion that the '045 patent is invalid under 35 U.S.C. § 112(a) since the claimed design fails to comply with the written description requirement thereof inasmuch as the drawings of the '045 patent introduce new matter not supported by the original disclosure in parent application no. 29/256,991 (hereafter the "parent application"). Specifically, as can be understood, the center portion of the outwardly extending shelves, as shown in Figure 1A of the parent application, are slightly recessed down and inwardly from the peripheral frame of the shelves, so that a distinct edge can be seen defining the center portion from the peripheral frame, note areas circled on Figure 1A photograph from parent application below.



86.     However, Figures 1, 2, 3, and 5 of the '045 patent do not show this edge or that the center portion of the outwardly extending shelves is recessed down and in from the peripheral frame. On the contrary, as shown in Figures 1, 2, 3, and 5 of the '045 patent, the peripheral frame and center portion of the outwardly extending shelves has a flat, continuous uniform appearance, see areas circled in red on Figures 1, 2, 3 and 5 of the '045 patent drawings below.





87.    Additionally, as can be understood from Figure 1A of the parent application, the inner peripheral edge of the outwardly extending shelves projects slightly outwardly from the center panel below the grill cover defining a protruding edge, note areas circled in red on Figure 1A photograph from the parent application below.



88.    However, in Figures 1 and 2 of the '045 patent the inner peripheral edge of the outwardly extending shelves is continuous with the center panel below the grill cover, and does not define a protruding edge, see areas circled in red on Figures 1 and 2 of the '045 patent drawings below.

38



89.     Furthermore, as can be understood from Figure 1A of the parent application, the inwardly extending bands of the side panels of the grill cover are raised up slightly above the center portion of the grill cover, note areas circled in red on Figure 1A of photograph from parent application below.



90.     However, as shown in Figures 1, 2, and 3 of the '045 patent, the center portion of the grill cover and the inwardly extending bands of the side panels have a continuous uniform appearance, with no defined raised edge, see areas circled in red on Figures 1, 2 and 3 of the '045 patent drawings below.



91. Moreover, as can be understood, from Figure 4A of the parent application, the side surface directly below the bottom edge of the grill cover appears to be contoured and does not have a flat appearance as is shown in Figures 1, 4, and 5 of the '045 patent, note area circled in red on Figure 4A photograph of parent application and Figures 1, 4 and 5 of the '045 patent drawing below.





92.     In addition, as can be understood from Figure 3A of the parent application, the rear hinge members, as well as the structure above the pattern of openings differs from the hinge members and the structure above the pattern of openings shown in Figure 3 of the '045 patent, note areas circled in red on Figure 3A of photographs from parent application and Figure 3 of the '045 patent drawings below.



93.     In view of the above differences in the configuration of the grill shown in the photographs of the parent application and the drawings in the '045 patent, in my opinion the claimed design of the '045 patent fails to comply with the written description requirement of 35 U.S.C. § 112(a).  Accordingly, the '045 is not entitled to the March 27, 2006, priority date of the parent application.

94.     I've reviewed the prosecution history of the '045 patent file, and parent application file and there is no indication that the examiner raised the issues set forth above in paragraphs 89 through 92 of this report.

*   *   *

95.     If as the Design Patent Practice Specialist I had reviewed the office action leading to the Notice of Allowability in both the '834 and '045 patents under the office wide In-Process Review Program, I would have returned them to the examiner's supervisor noting a patentability determination error in both cases and indicating that the claim in both cases should be rejected under 35 U.S.C § 112 for the reasons set forth above.  In addition, I would have indicated that the claim in the application resulting in the '834 patent should be rejected under 35 U.S.C. 103(a) for the reasons stated above.  And as I review the materials now, it is my opinion that both the '834 and '045 patents should be found invalid for the reasons explained above.


I declare under penalty of perjury pursuant to 28 USC Sec 1746 that the foregoing is true and correct.

Dated: February 20, 2015

Southport, North Carolina

Jim Gandy

# EXHIBIT A

# Jim Gandy

5113 Fernwood Drive

Southport, NC 28461

Telephone No.: (910) 599-1329

email: jgandy@expertdesignpatentservices.com

_____

## Design Patent Consultant

### QUALIFICATIONS

Broad legal and technical background in examining design patent applications with more than 32 years experience at the United States Patent and Trademark Office, (USPTO). Expert knowledge of design patent examination practice and procedure and the application of statutes, rules and relevant case law for determining patentability of a claim in design patent applications. Extensive speaking experience on behalf of the USPTO regarding the filing and examination of design patent applications to various audiences such as the American Intellectual Property Law Association, Independent Inventors Conference and the Visiting Scholars program. I am currently a registered patent agent with the USPTO specializing in the field of design patents.

### EDUCATION

Bachelor of Science in Architectural Design Technology, 1972
Temple University, Philadelphia, PA.

### PROFESSIONAL EXPERIENCE

Design Patent Examiner, Art Unit 2911, USPTO, 1972-1996

As an examiner I worked primarily in class D12, "Transportation". In 1979 I was promoted to primary examiner and granted full signatory authority. I have experience in initiating interference proceedings, preparing examiner's answers for applications on appeal to the Board of Patent Appeals and Interferences and have examined both reexamination and reissue applications. As a primary examiner I trained new examiners and occasionally assumed supervisory patent examiner duties in the absence of the art unit supervisor. In my 24 years as an examiner I made patentability determinations in over 10,000 design patent applications examined.

Supervisory Patent Examiner, Art Unit 2913, USPTO, 1996-1998

In my capacity as supervisor I was in charge of distributing and monitoring the flow of work for examiners in the art unit as well as reviewing the overall quality and timeliness of the work product performed by examiners. It was also my responsibility to train junior examiners on practice and procedure for

examining design patent applications, including the proper application of the statutes and rules. In addition, I would provide refresher training to primary examiners when necessary to assure consistency of the work product. As supervisor I was responsible for evaluating and rating all examiners in the art unit at the end of the fiscal year based on the criteria for the elements under their performance appraisal plan. I was also in charge of the program for uniformity of examination practice for the entire Design Patent Technology Center. In that capacity I was responsible for the development of the Design Examiner Supplemental Training Guide.

Design Patent Practice Specialist, Technology Center 2900, USPTO, 1998-2005

As the design patent practice specialist I was in charge of all training for new and junior examiners as well as continuing education training for all examiners in Technology Center 2900. I was also in charge of making updates to Chapter 1500 Design Patents of the Manual of Patent Examining Procedure as well as the Design Examiner Supplemental Training Guide. I also responded to inquiries about design patent practice and procedure and filing design patent applications from external customers on a daily basis. In my capacity as the practice specialist I reviewed all cases coming back from the Courts, the Board of Patent Appeals and Interferences and the Office of Patent Quality Review for learning points and corrective action if necessary. I monitored all reissue and reexamination applications filed in the technology center and reviewed Office actions prepared by examiners for technical accuracy under the Office's in–process review program. In addition, I would make presentations to attorneys and inventor groups on behalf of the USPTO to share information and learn from each other.

Since retiring from the USPTO I have prepared expert reports and testified in a deposition as an expert witness in the following matters:

Complaint of Ford Global Technologies, LLC under Section 337 of The Tariff Act of 1930, As Amended

- Prepared expert report on sufficiency of disclosure of claim under 35 USC § 112, Re U.S. Design Patent Nos. D498,444, D500,717, D500,969, D500,970, D501,162, D508,223, D510,551 and D539,448 (2008).

Magnadyne Corp. vs. Best Buy Co., Inc.

- Prepared expert report on infringement of U.S. Design Patent No. D522,457 and lack of anticipation or obviousness under USC § 102 and 103(a) respectively, (2010).

- Gave deposition on expert report, (2010).

## AWARDS

Received outstanding rating at the end of fiscal year under performance appraisal plan both as an examiner, supervisor patent examiner and design patent practice specialist for 32 consecutive years.

Received Department of Commerce Bronze Medal Award in March of 1983 for outstanding competence in the performance of official duties in the design patent field over a long period of time.

Received Distinguished Career Award from the Patent and Trademark Office in December 2000, for sustained superior performance in the examination of design patent applications and in the leadership of art units.

Received Norman P. Morgenstern Award in June of 2004 for recognition of the Supervisory Patent Examiner whose work exemplifies bold leadership and innovative activities that make a significant contribution to the U.S. Patent and Trademark Office.