IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEBER-STEPHEN PRODUCTS LLC,<br><br>Plaintiff,<br><br>v.<br><br>SEARS HOLDINGS CORPORATION,<br><br>Defendant. | Case No. 1:13-cv-1686<br><br>Judge Chang<br>Magistrate-Judge Mason<br><br>**PUBLIC REDACTED VERSION** |

**WEBER'S RESPONSE TO SEARS' MOTION FOR SUMMARY JUDGMENT ON WEBER'S '834 DESIGN PATENT FOR NON-INFRINGEMENT AND INVALIDITY**

## TABLE OF CONTENTS


I. INTRODUCTION ........................................ 1

II. THE TESTIMONY OF SEARS' EXPERT, JIM GANDY, SHOULD BE EXCLUDED ........................................ 1

III. THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING NON-INFRINGEMENT ........................................ 2

- A. Sears Impermissibly Focuses on the Individual Features of the '834 Patent Rather Than on the Overall Appearance of the Claimed Design ........................................ 2
- B. Any Alleged Differences Between the '834 Patent and the Accused Grills Do Not Prevent a Finding of Infringement ........................................ 4
- C. The Prior Art Cited by Sears Supports a Finding of Infringement ........................................ 6
- D. Sears' Examples of Summary Judgment are Distinguishable From This Case ........................................ 8
- E. The Accused Product is a Copy of Weber's Commercial Embodiment ........................................ 9

IV. THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING INVALIDITY ........................................ 10

- A. The '834 Patent is Not Invalid as Non-Enabling and Indefinite ........................................ 10
  1. The Features Claimed in the '834 Patent are Consistently Displayed in the Drawings ........................................ 11
  2. Alleged Inconsistencies in the Claimed Design are Inconsequential ........................................ 12
  3. Sears' Examples of Summary Judgment Underscore Why Summary Judgment is Inappropriate in This Case ........................................ 13
- B. The '834 Patent is Not Invalid for Failing to Comply with the Written Description Requirement ........................................ 15

V. CONCLUSION ........................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Am. Bev. Corp. v. Diageo N.A., Inc.*,
936 F. Supp. 2d 555 (W.D. Pa. 2013) .......................................................................13

*Amini Innovation Corp. v. Anthony California, Inc.*,
439 F.3d 1365 (Fed. Cir. 2006) ...........................................................................2, 3

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..............................................................................................7

*Antonious v. Spalding & Evenflo Companies., Inc.*,
217 F.3d 849 (Fed. Cir. 1999) ......................................................................11, 12, 13

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
932 F. Supp. 2d 1076 (N.D. Cal. 2013) .............................................................10, 11

*Arner v. Sharper Image Corp.*,
CV 94-1713 ABC (BOR), 1995 WL 873730 (C.D. Cal. Oct. 5, 1995) ..................................10

*Australia Vision Services Pty. Ltd. v. Dioptics Med. Products, Inc.*,
29 F. Supp. 2d 1152 (C.D. Cal. 1998) ................................................................11, 15

*Braun Inc. v. Dynamics Corp. of Am.*,
975 F.2d 815 (Fed. Cir. 1992) ...........................................................................3, 7, 9

*Contessa Food Products, Inc., v. Conagra, Inc.*,
282 F.3d 1370 (Fed. Cir. 2002) ...............................................................................5

*Crocs, Inc. v. Intl. Trade Commn.*,
598 F.3d 1294 (Fed. Cir. 2010) ...........................................................................3, 4

*DataQuill Ltd. v. Handspring, Inc.*,
01 C 4635, 2003 WL 737785 (N.D. Ill. Feb. 28, 2003) ...............................................1

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ..............................................................................................1

*DCNL Inc. v. Almar Sales Co.*,
No. C-97-3738 DLJ, 1997 WL 913941 (N.D. Cal. Dec. 22, 1997) ..............................11, 12

*Dioptics Med. Products, Inc. v. IdeaVillage Products Corp.*,
CV 08-03538 PVT, 2010 WL 4393876 (N.D. Cal. Oct. 29, 2010) ......................................8

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ......................................................................*passim*

*Gorham Mfg. Co. v. White*,
81 U.S. 511 (1871) ....2, 4, 9

*Hadco Products, Inc. v. Lighting Corp. of Am.*,
312 F. Supp. 1173 (E.D. Pa. 1970),
*vacated on other grounds*, 462 F.2d 1265 (3d Cir. 1972) ....15

*HR U.S. LLC v. Mizco Intern., Inc.*,
CV-07-2394(DGT)(JO), 2009 WL 890550 (E.D.N.Y. Mar. 31, 2009) ....12, 13, 14

*In re Daniels*,
144 F.3d 1452 (Fed. Cir. 1998) ....15

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
988 F.2d 1117 (Fed. Cir. 1993) ....9, 10

*MRC Innovations, Inc. v. Hunter Mfg., LLP*
747 F.3d 1326 (Fed. Cir. 2014) ....4

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S. Ct. 2120 (2014) ....10, 11

*Park B. Smith, Inc. v. CHF Industries Inc.*,
06 CIV 869(LMM)(JCF), 2008 WL 650339 (S.D.N.Y. Mar. 6, 2008),
*vacated on other grounds*, 309 Fed. Appx. 411 (Fed. Cir. 2009) ....12

*Park B. Smith, Inc. v. CHF Industries Inc.*,
811 F. Supp. 2d 766 (S.D.N.Y. 2011) ....7

*P. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
739 F.3d 694 (Fed. Cir. 2014) ....4

*Racing Strollers, Inc. v. TRI Industries, Inc.*,
878 F.2d 1418 (Fed. Cir. 1989) ....14

*Refac Intern., Ltd. v. Lotus Dev. Corp.*,
81 F.3d 1576 (Fed. Cir. 1996) ....14

*Seed Lighting Design Co., Ltd. v. Home Depot*,
C 04-2291 SBA, 2005 WL 1868152 (N.D. Cal. Aug. 3, 2005) ....14

*Smith v. Whitman Saddle*,
148 U.S. 674 (1893) ....9

*Times Three Clothier, LLC v. Spanx, Inc.*,
13 CIV. 2157(DLC), 2014 WL 1688130 (S.D.N.Y. Apr. 29, 2014) ....13

*Vas-Cath Inc. v. Mahurkar*,
935 F.2d 1555 (Fed. Cir. 1991) ....................................................................................15

*Voltstar Technologies, Inc. v. Amazon.com, Inc.*,
13 C 5570, 2014 WL 3725860 (N.D. Ill. July 28, 2014) ...........................................................8

**Statutes**

35 U.S.C. § 112 ..........................................................................................................1, 10, 11, 15

## I. INTRODUCTION

Sears' motion for summary judgment of non-infringement should be denied because there are genuine issues of material fact as to whether the '834 Patent and the accused grills are substantially similar in the eyes of the ordinary observer. Further, Sears has not sustained its rigorous burden of proving that the '834 Patent is invalid by clear and convincing evidence. Summary judgment should be denied on both issues.

## II. THE TESTIMONY OF SEARS' EXPERT, JIM GANDY, SHOULD BE EXCLUDED

Sears' purported design patent expert, Jim Gandy ("Mr. Gandy"), does not have an engineering or industrial design degree, has never worked as a designer for a company that makes gas grills, never examined an application for a grill during his tenure at the USPTO, and has **no professional experience** in the grill industry. (Compare experience of Weber's design patent expert, J. Michael Alden ("Mr. Alden") (SAF ¶¶ 32-34) with Mr. Gandy (SAF ¶ 1)).[1]

Thus, Mr. Gandy lacks the expertise to opine on the issues in dispute in this case, and his evaluation of designs in the grill industry is inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993). (SAF ¶ 3). Additionally, Mr. Gandy's § 112 invalidity analysis should be excluded because his expert report is a carbon copy of Sears' Final Invalidity Contentions prepared by Sears' attorneys months ago. (SAF ¶ 2). *See DataQuill Ltd. v. Handspring, Inc*., 01 C 4635, 2003 WL 737785, at *4 (N.D. Ill. Feb. 28, 2003) (excluding expert's testimony because "large quantities" of plaintiff's interrogatory responses appeared "verbatim" in the expert's report; the court doubted "the value to the trier of fact of a hired expert's opinion when the party hiring him has put words in his mouth - or in this case, in his report -

[1] Weber's Local Rule 56.1 Statement of Additional Facts is cited herein as "SAF ¶___."

leaving him, in essence, a highly qualified puppet.”). The same rationale applies here. Even if considered, however, Mr. Gandy’s testimony merely creates genuine disputes of fact.

## III. THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING NON-INFRINGEMENT

Whether or not Sears’ Kenmore Elite grills infringe the ‘834 Patent is a question of fact, largely unsuitable for summary judgment. *See Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) (reversing summary judgment of non-infringement: “conclusions about reasonable jurors are difficult to make on an issue of this factual dimension.”). A design patent is infringed “if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.” *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871). This is the “sole test for determining whether a design patent has been infringed.” *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677-78 (Fed. Cir. 2008) (“[U]nlike the point of novelty test, the ordinary observer test does not present the risk of assigning exaggerated importance to small differences between the claimed and accused designs relating to an insignificant feature….”). Sears’ motion should be denied because there is abundant evidence that the ‘834 Patent and the accused Kenmore Elite grills are substantially the same.

### A. Sears Impermissibly Focuses on the Individual Features of the ‘834 Patent Rather Than on the Overall Appearance of the Claimed Design

Despite its recognition that the point of novelty test is “now-defunct” (Sears Mem. at p. 2), Sears’ entire non-infringement theory rests upon minor features of the accused Kenmore Elite grills that are allegedly different from the ‘834 Patent. But this is precisely the type of element-by-element analysis the Federal Circuit has rejected:

> Even if the claimed design simply combines old features in the prior art, it may still create an overall appearance deceptively similar to the accused design. In that case, this court will uphold a finding of infringement. In other words, "***the deception that arises is a result of the similarities in the overall design, not of similarities in ornamental features in isolation***." The ordinary observer test applies to the patented design in its entirety, as it is claimed.

*Crocs, Inc. v. Intl. Trade Commn.*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (the International Trade Commission "placed undue emphasis on particular details of its written description of the patented design. Those details became a ***mistaken checklist for infringement***.") (emphasis added). Sears identifies alleged differences between the patented and the accused designs (Sears Mem. at pp. 3-7); however, "[w]ithout a view to the design as a whole," Sears' arguments amount to nothing more than a "mistaken checklist for infringement." *Crocs*, 598 F.3d at 1303. As held in *Amini*:

> ***[T]he trial court mistakenly analyzed each element separately instead of analyzing the design as a whole from the perspective of an ordinary observer***. The trial court is correct to factor out the functional aspects of various design elements, but that discounting of functional elements must not convert the overall infringement test to an element-by-element comparison. Thus, the trial court erred in its application of the "overall similarity" test on summary judgment. This court cannot agree on this record that "no reasonable jury could find that the designs of these two pieces of furniture are substantially similar."

439 F.3d at 1372 (emphasis added); *cf. Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992) ("[A] trier of fact must consider the ornamental aspects of the design as a whole and not merely isolated portions of the patented design.").

In this case, a jury could reasonably conclude that Sears' Kenmore Elite grills infringe the '834 Patent in light of the similarities between the ***overall appearance*** of the claimed and accused designs, as explained in detail by Weber's design patent infringement expert, Mr. John Holecek ("Mr. Holecek") (SAF ¶¶ 4-7, 9-10), and several other witnesses (SAF ¶¶ 4, 10, 36-39).

### B. Any Alleged Differences Between the '834 Patent and the Accused Grills Do Not Prevent a Finding of Infringement

Sears asserts that the accused products and claimed design are dissimilar by identifying alleged differences that are, ***at most***, minor. (SAF ¶ 6). But the Federal Circuit has rejected this approach, too. *Crocs*, 598 F.3d at 1303 ("[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement."). Sears' argument that design patents have "almost no scope" is misleading:

> [W]e have often noted that design patents have "almost no scope" beyond the precise images shown in the drawings. ***However, in practice, our focus on the "overall visual appearance" of a claimed design rather than on individual features has led us to <u>find products infringing despite differences in specific ornamental features</u>***.

*MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1333 n.1 (Fed. Cir. 2014) (citation omitted; emphasis added). Further,

> if the test for infringement required the accused design to reproduce all elements of the patented design, "[t]here never could be piracy of a patented design, for human ingenuity has never yet produced a design, in all its details, exactly like another, so like, that an expert could not distinguish them."

*P. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 701 (Fed. Cir. 2014) (quoting *Gorham*, 81 U.S. at 527) (reversing summary judgment of non-infringement; "the test for design patent infringement is not identity, but rather sufficient similarity.").

Mr. Holecek testified that although the shapes of the grill shrouds may differ in "small[] aspects," the "totality of the comparison between" the designs is "very similar." (SAF ¶ 6). At a minimum, there is a dispute between two experts over how ordinary observers would discern the '834 Patent and the Kenmore Elite grills. This dispute cannot be resolved on summary judgment.

Moreover, several of the features that Sears asserts are different between the accused and claimed grill designs are, in fact, the same. For example, Sears argues that spaced protrusions are visible on the trim of the lid from the side view of the '834 Patent, but not from a side view of the

accused design. (Sears Mem. at p. 4). However, Mr. Holecek testified that the protrusions are indeed visible from the side view of the Kenmore Elite grills, and noted that the quality of the image depicting the accused grill "doesn't really do justice to what an ordinary observer would truly see." (SAF ¶ 7). ***Even Sears' purported expert, Mr. Gandy, stated that he could see raised protrusions from the side view of the accused design illustrated in Sears' brief***. (SAF ¶ 7). Spaced protrusions are <u>clearly</u> visible from the side views of both the claimed and accused designs:

FIG. 2



**Fig. 2 of '834 Patent**



**Accused Kenmore Elite Grill**

(SAF ¶ 7). Sears also falsely claims that the accused design lacks so-called "rear hinge members" (Sears Mem. at pp. 4-6), but the images above illustrate that this element is common to the patented and the accused designs. (SAF ¶ 7).

Incredibly, Sears argues that the claimed design of the '834 Patent "displays raised edges above the inner surface between the end panels," whereas the trim on the accused grills is "smooth and flush with the interior cover surface between the end panels with no notches visible under the trim piece…." (Sears Mem. at p. 5). Figure 1 of the '834 Patent <u>clearly</u> shows that these so-called "notches" are in <u>broken lines</u>, and thus "form no part of the claimed design." (SAF ¶ 8). *See Contessa Food Products, Inc. v. Conagra, Inc*., 282 F.3d 1370, 1378 (Fed. Cir. 2002) ("[T]he patentee is permitted to show the features in broken lines to exclude those features from the claimed design.").

Weber has submitted abundant evidence that the alleged differences between the claimed design of the '834 Patent and the accused grills are non-existent or insubstantial, thereby creating additional fact issues unsuitable for resolution on summary judgment.

### C. The Prior Art Cited by Sears Supports a Finding of Infringement

The Federal Circuit has held:

> When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art…***If the accused design has copied a <u>particular feature</u> of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing***.

*Egyptian Goddess*, 543 F.3d at 676-77 (emphasis added). In this case, an ordinary observer considering the prior art would be **<u>more likely</u>** to regard the accused and claimed designs as "deceptively similar" because the designs share a distinct and prominent feature that "departs conspicuously from the prior art," *id*. at 677: metal bands bordering the edges of the grill shroud with evenly-spaced, exposed rivets. (SAF ¶ 9).[2]

As for the BBQ Pro and Permasteel grills, there is a factual dispute as to whether they even constitute prior art at all.[3] Moreover, the exposed rivets on the grill shroud of the accused and claimed designs span the <u>entire</u> metal bands and are <u>spaced uniformly</u>, whereas the purported rivets on the Permasteel grill are <u>arranged asymmetrically</u> on only a <u>portion</u> of the metal bands, and Sears

---

[2] In a footnote, Sears argues that the fastener elements claimed in the '834 and '045 Patents are functional, yet states that the "Court need not decide that issue here, however, as it is immaterial to the success of Sears's motion." (Sears Mem. at p. 7). As such, the functionality issue is irrelevant to the Court's consideration of the summary judgment motions at bar.

[3] Sears argues that Weber's focus on the riveted band element of the '834 Patent "fails as a matter of law" because that feature "indisputably was known and disclosed" in view of the Permasteel and BBQ Pro grills. (Sears Mem. at p. 7). But, **Sears' assertion that these grills were sold prior to March 27, 2006** (Sears S56.1 at ¶¶ 11-12), **<u>conflicts with the sworn testimony of</u>** [redacted] **<u>and others</u>**. (SAF ¶ 10).

has not produced any evidence that the apparent rivets on the Permasteel or BBQ Pro grills are raised. (SAF ¶¶ 11-12). Weber's design patent expert, Mr. Alden, testified that the fasteners depicted in the Permasteel and BBQ Pro grills look "flush" with the grill shrouds. (SAF ¶ 13). Mr. Gandy even conceded that he <u>assumed</u> that the BBQ Pro grill has raised protrusions and that "it could still be a question as to whether they were flush or whether they were raised. I think it was open to question." (SAF ¶ 13). At this stage, <u>Weber</u> is entitled to have all inferences drawn in its favor, <u>not Sears</u>. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Additionally, the ordinary observer's attention "will be drawn to those aspects [the uniformly spaced, exposed rivets] of the claimed design that differ from the prior art" cited by Sears. *Egyptian Goddess*, 543 F.3d at 676. Thus, the accused Kenmore Elite grills are "naturally more likely to be regarded as deceptively similar" to the claimed features of the '834 Patent. *Id.* at 677. *See also Park B. Smith, Inc. v. CHF Industries Inc.*, 811 F. Supp. 2d 766, 778 (S.D.N.Y. 2011) (denying summary judgment); *Braun*, 975 F.2d at 820 (affirming infringement).

Sears argues that there is no infringement in this case based on Weber's statement at the claim construction hearing that the accused products would not infringe the '834 Patent if the Kenmore grills hypothetically "only had the bands without the rivets." (Sears Mem. at p. 7). As counsel for Weber stated immediately after Sears' quotation to the claim construction transcript, "the exposed rivets on the band is an integral part of this design patent [the '834 Patent] and the appearance of it." (Claim Const. Trans. at pp. 35-36, Ex. 3 to Weber R56.1 Resp.). A hypothetical design without the exposed rivets would likely have a different overall visual effect on the ordinary observer and, more importantly, the actual accused Kenmore Elite grills ***contain exposed*** rivets.

Finally, Sears' motion should be denied, independently, because Sears failed to present <u>all views</u> of the prior art when comparing the accused and claimed designs to the alleged prior art:

> [Defendant's] attempt to show that its accused products are "more similar" to the prior art than to the patented designs suffers from at least one major deficiency in that it has not presented all views of the prior art, and thus it has based its argument on an incomplete comparison.

*Dioptics Med. Products, Inc. v. IdeaVillage Products Corp*., CV 08-03538 PVT, 2010 WL 4393876, at *3 (N.D. Cal. Oct. 29, 2010). Sears provided only one perspective view of the BBQ Pro, Permasteel and Kenmore grills. (SAF ¶ 14). An ordinary observer may find the side, front, bottom, rear and/or top views of these grills to be primary considerations under the ordinary observer test. *See Dioptics*, 2010 WL 4393876 at *3. Thus, "there is a genuine issue of material fact that would preclude summary judgment." *Id.* at *3.

**D. Sears' Examples of Summary Judgment are Distinguishable From This Case**

Sears relies on *Voltstar* for the proposition that "[c]ourts consistently grant summary judgment based solely on differences between the accused and patented designs" (Sears Mem. at p. 2), but this assertion has no logical force; given the fact-intensive nature of an infringement analysis, courts frequently rule in favor of the patentee on summary judgment. (SAF ¶ 35).

Moreover, in *Voltstar Technologies, Inc. v. Amazon.com, Inc.*, 13 C 5570, 2014 WL 3725860, at *4 (N.D. Ill. July 28, 2014), defendant's accused product was patented, whereas here, Sears has no design patent on the accused Kenmore Elite grills. (SAF ¶ 15). Additionally, the accused and claimed designs in this case both share a prominent feature (a riveted band on each side of the grill lid) that departs conspicuously from the prior art, unlike in *Voltstar*:

> [I]t is clear to any would-be observer [familiar with the prior art] that the Amazon and Voltstar products have significant differences in the way they taper…***If both the Amazon and Voltstar designs had tapered in the same way, then an inference of infringement might arise***. *Egyptian Goddess,* 543 F.3d at 677 ("If the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design...."). ***This is not the case here***. 2014 WL 3725860 at *4 (emphasis added).

Further, to support its argument that the "field of prior art designs here is even more crowded than that in in [*sic*] *Egyptian Goddess*" (Sears Mem. at p. 9), Sears relies on the following quotation: "Where there are many examples of similar prior art designs, as in a case such as [*Smith v.*] *Whitman Saddle* [148 U.S. 674 (1893)], differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." 543 F.3d at 678. However, in *Whitman Saddle*, the "evidence established that there were ***several hundred***" pieces of prior art. 148 U.S. at 681 (emphasis added). Here, Sears produced ***less than ten*** prior art references to support its non-infringement position. (SAF ¶ 16). The burden is on Sears, not Weber, to produce relevant prior art. *See Egyptian Goddess*, 543 F.3d at 678 ("[I]f the accused infringer elects to rely on the comparison prior art as part of its defense against the claim of infringement, the burden of production of that prior art is on the accused infringer."). Clearly, "the field of prior art" is not nearly as "crowded" as Sears argues. (*See* Sears Mem. at p. 9).

**E. The Accused Product is a Copy of Weber's Commercial Embodiment**

Directly comparing the accused product with plaintiff's commercial embodiment is "not error" and "may facilitate application of the *Gorham* criterion of whether an ordinary purchaser would be deceived into thinking that one were the other." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125-26 (Fed. Cir. 1993) (affirming infringement; citation omitted); *Braun*, 975 F.2d at 821 (affirming infringement; "[n]othing in *Gorham* suggests that, in finding design patent infringement, a trier of fact may not as a matter of law rely exclusively or primarily on a visual comparison of the patented design, as well as the device that embodies the design, and the accused device's design."). In this case, Sears' accused grill has substantially the same appearance as Weber's Genesis grill (i.e., the commercial embodiment of the '834 and '045 Patents). (SAF ¶¶ 4-11, 36-39).

Additionally, evidence of Sears' intent to copy Weber's patented designs, along with other likelihood of confusion evidence supporting Weber's trade dress infringement claim, should be considered in connection with this motion as well. *Arner v. Sharper Image Corp.*, CV 94-1713 ABC (BOR), 1995 WL 873730, at *13 (C.D. Cal. Oct. 5, 1995) (denying summary judgment of non-infringement; "[m]uch of the same evidence discussed…under the rubric of trade dress infringement applies" in the design patent infringement context). *See also L.A. Gear*, 988 F.2d at 1125-26 (rejecting defendants' argument that the district court improperly referred to its "findings on likelihood of confusion relative to the trade dress issue" in the portion of its opinion relating to design patent infringement). As discussed at length in Weber's summary judgment response on its trade dress claim, there is substantial evidence supporting a finding of likelihood of confusion, which requires denial of summary judgment here as well. (SAF ¶¶ 4, 10, 36-39).

## IV. THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING INVALIDITY

### A. The '834 Patent is Not Invalid as Non-Enabling and Indefinite

A patent claim is not invalid for indefiniteness under 35 U.S.C. § 112 if the claim, "read in light of the specification delineating the patent, and the prosecution history," informs "with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). The Supreme Court recognized that "some modicum of uncertainty" must be permitted given the "inherent limitations of language" and the fact that "absolute precision is unattainable." *Id.* at 2128-29. *See also Apple, Inc. v. Samsung Electronics Co., Ltd.*, 932 F. Supp. 2d 1076, 1088 (N.D. Cal. 2013) ("[D]efiniteness does not require that persons of skill in the art be able to clearly describe the designs in words; they must simply be able to replicate the patented design and understand what is claimed."). Particularly bearing in mind that "patents are 'not addressed to lawyers, or even to the public generally,' but

rather to those skilled in the relevant art," *Nautilus*, 134 S. Ct. at 2128, Sears has failed to prove that the '834 Patent is indefinite by clear and convincing evidence. *See Australia Vision Services Pty. Ltd. v. Dioptics Med. Products, Inc*., 29 F. Supp. 2d 1152, 1159 (C.D. Cal. 1998).

### 1. The Features Claimed in the '834 Patent are Consistently Displayed in the Drawings

Sears contends (incorrectly) that the '834 Patent is non-enabling and indefinite because the rear hinge members are not consistently displayed in the figures of the claimed design. (Sears Mem. at p. 11). However, as Weber's design patent expert, Mr. Alden, explained, any purported inconsistencies are due to the perspective of each cited figure of the '834 Patent. (SAF ¶¶ 17-20). For this reason alone, there is a genuine dispute as to whether there are any inconsistencies or ambiguities in the drawings of the '834 Patent. *Antonious v. Spalding & Evenflo Companies., Inc*., 217 F.3d 849, at *8 (Fed. Cir. 1999) (reversing summary judgment of invalidity under § 112 where discrepancies between the drawings were due to the perspective used). Similarly, as held in *Apple*:

> Regarding the differently oriented drawings in the D'889 Patent, the Court sees nothing inconsistent about these drawings. They show a device facing different directions, but there is no place in which an identifiable feature of the design appears in two different places in two different figures, ***taking into account the rotation of the object*** depicted. The fact that a feature may be invisible in one of the figures ***due to the resolution and orientation of the drawing*** does not make it impossible to determine whether or not the feature is part of the design.

932 F. Supp. 2d at 1086 (emphasis added).

Mr. Alden refutes Sears' assertion that there are inconsistencies in the claimed design of the '834 Patent. (SAF ¶ 20). The computer-aided designs ("CAD") attached to Mr. Alden's report also illustrate that the rear hinge members are consistently displayed in the '834 Patent, further highlighting Mr. Gandy's misinterpretation of the claimed design. (SAF ¶ 19).

Additionally, this Court should show deference to the patent examiner's decision to issue the '834 Patent in the first place. *DCNL Inc. v. Almar Sales Co*., C-97-3738 DLJ, 1997 WL

913941, at *2 (N.D. Cal. Dec. 22, 1997) (courts should give "deference to the patent examiner's decision to issue the patent"; the examiner was "free to reject the design patent upon a finding that a defect in the drawings rendered the patent unclear. The fact that the examiner issued the patent implies that the examiner did not consider the drawings unclear.").

### 2. Alleged Inconsistencies in the Claimed Design are Inconsequential

As Mr. Alden testified:

> Q And is it your testimony that even considering Mr. Gandy's incorrect analysis as far as the alleged inconsistencies, even if you accept those as true, are they consequential or inconsequential to the overall design of the '834…patent[]?
>
> * * *
>
> A I would say even if they were true, which they're not, they would be inconsequential.

(SAF ¶ 21). Mr. Alden provided additional detail and explanation in his report. (SAF ¶¶ 21-23).

Summary judgment is unwarranted under these circumstances. *HR U.S. LLC v. Mizco Intern., Inc.*, CV-07-2394(DGT)(JO), 2009 WL 890550, at *6 (E.D.N.Y. Mar. 31, 2009) (denying summary judgment on invalidity; "in order for a design patent to be invalidated for indefiniteness, errors and inconsistencies in the patent drawings must be ***material and of such magnitude*** that the overall appearance of the design is unclear.") (emphasis added); *Park B. Smith, Inc. v. CHF Industries, Inc.*, 06 CIV 869(LMM)(JCF), 2008 WL 650339, at *6 (S.D.N.Y. Mar. 6, 2008), *vacated on other grounds*, 309 Fed. Appx. 411 (Fed. Cir. 2009) (denying summary judgment of invalidity):

> [T]he presence of the extraneous horizontal line in two of the ten drawings does not appear to constitute an inconsistency "of such magnitude that the overall appearance" of the design is unclear. The horizontal line in question appears simply to be extraneous, and is ***not a sufficiently serious inconsistency to prevent an ordinary observer, <u>much less a trained designer</u>, from understanding the intended overall design***.

(citation omitted; emphasis added); *Antonious*, 217 F.3d at *8 (reversing summary judgment of invalidity for indefiniteness). Still further, Sears erroneously places undue emphasis on **<u>one</u>**

**<u>feature</u>** of the '834 Patent, the rear hinge members, rather than focusing on the overall design. (SAF ¶ 18). *See Am. Bev. Corp. v. Diageo N.A., Inc*., 936 F. Supp. 2d 555, 590 (W.D. Pa. 2013).

Sears' purported expert, Mr. Gandy, also failed to explain "why a person of skill in the art would not look to the multiple views" of the '834 Patent that consistently display the hinge members to overcome the alleged inconsistencies in the claimed design. (SAF ¶¶ 21-23). *Mizco*, 2009 WL 890550 at *8 ("[D]efendants' [three] experts do not explain why a person of skill in the art ***would not look to the multiple views that are consistent***.") (emphasis added). (S*ee also* Sears Mem. at pp. 11-12; (SAF ¶ 24) acknowledging that multiple views of the '834 Patent consistently display the hinge members). This approach is recognized by the Federal Circuit, and provides an additional factual basis to deny summary judgment here. *Antonious*, 217 F.3d at *8 (reversing summary judgment of invalidity).

### 3. Sears' Examples of Summary Judgment Underscore Why Summary Judgment is Inappropriate in This Case

Sears' reliance on *Times Three Clothier* (Sears Mem. at pp. 10-13) is misplaced. In *Times Three Clothier*, plaintiff <u>ignored</u> the fact that the '558 Patent <u>explicitly stated</u> that the claimed figures depicted "two different embodiments." (SAF ¶ 25). *Times Three Clothier, LLC v. Spanx, Inc*., 13 CIV. 2157(DLC), 2014 WL 1688130, at *7 (S.D.N.Y. Apr. 29, 2014). Like the '250 Patent drawings in *Mizco*, and contrary to the figures at issue in *Times Three Clothier*, the drawings of the '834 Patent depict <u>one embodiment</u> of a barbeque grill shroud. (SAF ¶ 26).

The court in *Times Three Clothier* even identified *Mizco* as being "inapposite" to the case before it. 2014 WL 1688130 at *7. As in *Mizco*, and again unlike *Times Three Clothier*, a person skilled in the art could readily look to the multiple views of the '834 Patent that consistently depict the rear hinge members to gain "an overall understanding of the total substance" of the claimed design, as Mr. Alden explained. (SAF ¶¶ 21-24). *See Antonious*, 217 F.3d at *8. Sears' assertion

that Mr. Alden engaged in "impermissible cherry picking" is therefore misplaced. (Sears Mem. at p. 13, n. 4).

Additionally, Sears cites *Seed Lighting* (Sears Mem. at pp. 11, 13), where plaintiff did not "identify a ***single piece of evidence or testimony*** that would demonstrate to the Court that a person skilled in the art would understand the bounds" of the patent-at-issue. *Seed Lighting Design Co., Ltd. v. Home Depot*, C 04-2291 SBA, 2005 WL 1868152, at *9 (N.D. Cal. Aug. 3, 2005) (emphasis added).[4] Even the <u>inventor</u> of the claimed design in *Seed Lighting* agreed "that the patent drawings are flawed and unclear." *Id.* *Mizco*, 2009 WL 890550 at *8 (recognizing that the inventor's "admissions appear to have been critical to the court's decision in *Seed Lighting.*").

Unlike *Seed Lighting*, Weber <u>has</u> submitted exhaustive expert testimony that one of ordinary skill in the art could reasonably ascertain the scope of the claimed design of the '834 Patent, *supra* Section IV(A)(1)-(2). (*See also* SAF ¶ 27). Whereas "[t]he bare, unsupported belief of Seed Lighting's *counsel* that the vagaries" were "insubstantial" was insufficient "to overcome summary judgment," *Seed Lighting*, 2005 WL 1868152 at *9, here, the extensive <u>evidence</u> Weber has produced establishes, at a minimum, that there is a genuine dispute regarding whether the purported inconsistencies in the drawings of the '834 Patent are "of such magnitude that the overall appearance of the design is unclear." *Mizco*, 2009 WL 890550 at *6.

---

[4] Sears also cites to the Manuel of Patent Examining Procedure ("MPEP"), but "[t]he MPEP is a looseleaf training and instruction manual for examiners" that "does not have the force of law or the force of the Patent Rules of Practice." *Racing Strollers, Inc. v. TRI Industries, Inc.*, 878 F.2d 1418, 1422 (Fed. Cir. 1989); *Refac Intern., Ltd. v. Lotus Dev. Corp.*, 81 F.3d 1576, 1584 n.2 (Fed. Cir. 1996) (The MPEP "does not have the force and effect of law.").

### B. The '834 Patent is Not Invalid for Failing to Comply with the Written Description Requirement

Compliance with the written description requirement is highly fact intensive, unsuited for resolution on summary judgment in this case. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1562-65 (Fed. Cir. 1991) (reversing summary judgment of invalidity). Contrary to Sears' assertions, Mr. Alden explained that "Figure 6 of the original disclosure necessarily describes the shape and appearance of the rear hinge members in Figure 6 of the '834 patent" (SAF ¶¶ 28, 31), which comports with Federal Circuit precedent. *See In re Daniels*, 144 F.3d 1452, 1456 (Fed. Cir. 1998) (finding claimed subject matter in design patent application was contained in earlier application).

In challenging the '834 Patent under § 112, Sears bears an especially heavy burden. *Hadco Products, Inc. v. Lighting Corp. of Am.*, 312 F. Supp. 1173, 1182 (E.D. Pa. 1970), *vacated on other grounds*, 462 F.2d 1265 (3d Cir. 1972) (finding design patent not invalid under § 112) ("[T]he action of the Patent Office in permitting an amendment constitutes an implicit determination that no new matter is included therein."). The examiner's acceptance of Weber's amended '834 Patent drawings "is entitled to special weight and should not be disturbed unless clearly erroneous." *Australia Vision*, 29 F. Supp. 2d at 1159-60 ("[T]here are material issues of fact in dispute as to (1) whether there are alterations between the original and amended set of drawings, and/or (2) if alterations exist between the original and the amended drawings, whether these differences constitute new matter or are merely insignificant inconsistencies."). Thus, the prosecution history of the '834 Patent also establishes compliance with 35 U.S.C. § 112. (SAF ¶¶ 29-30).

## V. CONCLUSION

For the foregoing reasons, the Court should deny Sears' motion for summary judgment of non-infringement and invalidity of the '834 Patent.

Respectfully submitted,

*/s/ Raymond P. Niro, Jr.*

Raymond P. Niro, Jr.
Matthew G. McAndrews
Kyle D. Wallenberg
NIRO McANDREWS, LLC
200 W. Madison Street, Suite 2040
Chicago, IL 60606
(312) 755-8575
Fax: (312) 674-7481
rnirojr@niro-mcandrews.com
mmcandrews@niro-mcandrews.com
kwallenberg@niro-mcandrews.com

*Attorneys for Plaintiff,*
WEBER-STEPHEN PRODUCTS LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 8, 2015 the foregoing:

**WEBER'S RESPONSE TO SEARS' MOTION FOR SUMMARY JUDGMENT ON WEBER'S '834 DESIGN PATENT FOR NON-INFRINGEMENT AND INVALIDITY**

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.


Paul R. Garcia
Jordan Arnot
PARTRIDGE & GARCIA P.C.
321 N. Clark Street, Suite 720
Chicago, IL 60654
(312) 634-9517
pgarcia@partridgegarcia.com
jarnot@partridgegarcia.com

David R. Yohannan
Stephen R. Freeland
KELLEY DRYE & WARREN LLP
3050 K Street, NW, Suite 400
Washington, DC 20007
(202) 342-8400
dyohannan@kelleydrye.com
sfreeland@kelleydrye.com


*/s/ Raymond P. Niro, Jr.*
*Attorney for Plaintiff,*
WEBER-STEPHEN PRODUCTS LLC