WEBER-STEPHEN PRODUCTS LLC,          )
                                     )
          Plaintiff,                 )          No. 13 C 01686
                                     )
     v.                              )
                                     )          Judge Edmond E. Chang
SEARS HOLDING CORPORATION and        )
SEARS, ROEBUCK & CO.,                )
                                     )
          Defendant.                 )

## MEMORANDUM OPINION AND ORDER

## I. Introduction

Weber-Stephen Products LLC makes and sells Weber grills. Sears Holding Corporation and Sears, Roebuck & Company own and operate retail and online stores.[1] Sears also makes and sells its own grills under the Kenmore brand name. Sears also sold Weber's grills until Weber stopped supplying Sears in 2012. Not long after that, Weber sued Sears, alleging, among other things, that Sears's Kenmore Elite grills infringed on three of Weber's patents. Sears countersued, seeking declarations of invalidity and non-infringement as to each patent.[2]

In three separate summary judgment motions (one for each asserted patent), Sears asks for judgment as a matter of law against Weber's patent-infringement

---

[1]This Opinion will refer to the two Defendants collectively as Sears.

[2]The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) & (b), 2201, 2202, and 1367(a). Docket citations are noted as "R." followed by the docket number and the page or paragraph number.

claims and in favor of Sears's corresponding counterclaims. For the reasons set out below, the motions are granted in part and denied in part.

## II. Background

This is the seventh written opinion in this case,[3] and the fourth on a summary judgment record. *See* R. 424, R. 419, R. 285. The prior summary judgment opinions discuss the background facts, so the Court will assume the reader's familiarity with those facts and turn immediately to a description of the relevant patents.

### A. The Patents

These motions concern three Weber patents: the '874 Utility Patent; the '045 Grill Design Patent; and the '834 Grill Shroud Design Patent. Here, briefly, is a description of each.

#### 1. The '874 Utility Patent

Weber obtained U.S Patent No. 8,347,874 for a "Grease Drip Pan and Gas Tank Blocker for a Barbecue Grill." R. 347-1, '874 Patent at 2. The patent claims various "barbecue grill assembl[ies]," *id*. at 11, which all include "a cooking chamber, a frame assembly, and a tank blocking structure." *Id*. Some claims also include grease drip trays, grease drip pans, and fuel tanks. *Id*. at 10 (*e.g.,* Claim 14).

---

[3]R. 50, Order Denying Sears's Motion to Dismiss Weber's Trade Dress Claim; R. 116, Order Granting in Part and Denying in Part Weber's Motion to Dismiss Certain Counterclaims and Strike Certain Affirmative Defenses; R. 235, Order on Claim Construction; R. 285, Order Granting in Part and Denying in Part Weber's Motion for Summary Judgment on Sears's Antitrust and Breach of Contract Claims; R. 419, Order Denying Sears's Summary Judgment Motion on Weber's Trade Dress Claim as to Secondary Meaning; R. 424, Order Denying Sears's Summary Judgment Motion on Weber's Trade Dress Claim as to Likelihood of Confusion.

The gist of the patent is to use a tank-blocking structure to prevent the grill user from storing a spare gas tank in the grill cart and, for some claims, to integrate the tank-blocking structure with the grease-catching components. By integrating tank blocking (a safety measure that some grill users avoid for convenience's sake) and grease catching (something grill users must have), the inventors hoped to force the user to install the tank blocker in the first place and to keep the user from removing it. *Id*. at 8 ("Unfortunately, it is believed that some consumers will not install the tank blockers or will remove them when they find out that they will be unable to store a replacement tank on the cart.").

Figure 3 shows an example of the invention:



*Id*. at 5. Here, component Nos. 64 and 62 are the tank-blocking structure and No. 66 is a "recess (or holder or support) for supporting a grease drip pan," which is not

itself shown in this figure. *Id.* at 9 (Detailed Drawing Description). Grease is collected in the "grease drip tray," which is component No. 80, and is "direct[ed] to the grease drip pan" resting on top of the tank-blocking structure. *Id.*

## 2. The '045 Grill Design Patent

Weber's '045 design patent (U.S. Design Patent No. 609,045) claims "the ornamental design for a grill, as shown and described." R. 328-1, '045 Patent. This is a "perspective view of a grill embodying the invention."



FIG. 1

And here is "a front view."



FIG. 2

And "a rear view."



FIG. 3

And finally "a left side view."



FIG. 4

Worth noting is that several prominent features are drawn in broken lines and therefore not claimed as part of the patented design. *See* Manual of Patent Examining Procedure (MPEP) § 1503.02.II (broken lines indicate unclaimed

features). These include the temperature gauge, the "Weber" nameplate, the trim and handles on the grill cart doors, the casters, and the burner knobs.

### 3. The '834 Shroud Design Patent

Weber's '834 Design Patent (really U.S. Design Patent No. 564,834) claims "the ornamental design for a shroud for a barbecue grill, as shown and described" in seven figures. R. 334-1, '834 Patent at 2. Here is "a perspective view of a shroud for a barbecue grill showing our new design":



FIG. 1

And here is "a right side view":



**B. The Accused Sears Kenmore Elite Grills**

Weber's patent-infringement arguments are directed at four "series" of Sears's Kenmore Elite grills. According to Weber, the Kenmore Elite 500 Series grills infringe on the '874 utility patent. And, as to both design patents, Weber accuses the Kenmore Elite 500, 550, 600 and 700 Series grills of infringement. (The 500/550 are, for design patent infringement purposes, the same. R. 423, Stipulation at 2.)

The 500/550 grills look like this from the front:



R. 423-1, Exemplars.

And like this from the back:



And like this from the side:



From the side and back, the 600 and 700 Series grills are similar enough to the 500/550 series that additional pictures are unnecessary here (though the Court has reviewed them and considered the differences). The main differences are visible from the front. Here is the 600 Series:



And here is the 700 Series:



The parties agree that the differences *within* a particular series are immaterial to the design patent infringement analysis. Stipulation at 1-2. But they ask the Court to consider each of the three series separately for infringement purposes. *Id.* The upshot of this is that if any one of a particular series of grills infringes on one of Weber's design patents, then all the grills in that series do too. *Id.* And, conversely, if any do not infringe, then none do.

### C. These Motions

Sears filed a summary judgment motion as to each patent. R. 332, Sears's '834 Mot.; R. 326, Sears's '045 Mot.; R. 345, Sears's '874 Mot. Each motion argues

that the targeted patent is invalid and, even if valid, is not infringed by the accused grills.

## III. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence" at trial, Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## IV. Analysis

The analysis of the motions proceeds as follows. First, the Court will address the parties' challenges to each other's proffered expert-opinion evidence. Then, the Court will consider the '874 patent, addressing infringement and then validity. Lastly, the Court will turn to the design patents, assessing first the infringement question as to both and then validity as to both.

### A. Expert Opinion Evidence

Summary judgment is about determining whether the evidence justifies a trial. To do that, the Court must first decide what counts as evidence. To remove a piece of evidence from consideration on summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence [at trial]." Fed. R. Civ. P. 56(c)(2). Here, Weber and Sears take aim at the admissibility of each other's expert evidence. Each challenged expert—Jim Gandy, John Holecek, and J. Michael Alden—will be addressed in turn.

#### 1. Jim Gandy

Jim Gandy is Sears's design patent expert. R. 334-13, Gandy Rep. ¶ 1. Gandy opines that both the '834 patent and the '045 patent are invalid, each for several reasons. Gandy Rep. ¶¶ 2-6. Weber moves to exclude these opinions for two reasons. R. 372, Weber's '834 Resp. Br. at 1-2. Neither justifies exclusion.

First, Weber argues that Gandy is not qualified under Rule 702 of the Federal Rules of Evidence. *Id*. The rule allows a witness to "testify in the form of an

opinion or otherwise" if that witness is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "[A] court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). On-the-job experience counts as practical experience. *See Walker v. Soo Line R. Co.*, 208 F.3d 581, 590-91 (7th Cir. 2000) (holding that district court did not abuse its discretion in admitting expert testimony from "Denbrock [who] was offered as an expert on the basis of his work for a power company, where he was responsible for ensuring the safety of its facilities from lightning").

Gandy has plenty of on-the-job experience. Gandy Rep. ¶¶ 10-14; R. 415-1, Sears's Exh. AA, Gandy Dep. 18-19, 21-23. Gandy spent 32 years in the USPTO evaluating design patents, including design patents in the "classes" to which the '834 and '045 patents belong. *Id.*; '834 Patent at 1 (identifying class as D7); '045 Patent at 1 (same); Gandy Rep. ¶ 11 ("I have examined design patent applications assigned to class … D7 'Equipment for Preparing or Serving Food or Drink not elsewhere specified' … ."). He trained and supervised examiners on design patent issues; he responded to public and attorney questions about design patents; and he was "in charge" of updating the design-patent portions of the agency's Manual of Patent Examining Procedure. *Id.* Because Gandy spent three decades making the same kinds of evaluations Sears hired him to make for this litigation, it stands to reason that he is qualified.

Notwithstanding Gandy's experience, Weber complains that Gandy lacks an industrial design degree (Gandy's degree is in architectural design), grill-industry experience, and experience examining grill-related design-patent applications. Weber's '834 Resp. Br. at 1-2. But subject-matter specific experience is not an absolute prerequisite in design-patent cases, especially where the expert has other relevant experience. *See Lemelson v. Gen. Mills, Inc.*, 1987 WL 26134, at *1 (N.D. Ill. Dec. 1, 1987) (allowing former-USPTO employee with fifty years of experience to testify on patentability in design-patent dispute despite lack of experience in toy design); *see also Nat'l Diamond v. Flanders Diamond*, 2003 WL 24890292, at *1 (N.D. Ill. Apr. 30, 2003) (finding former USPTO employee unqualified to testify because he lacked both subject-matter experience *and* design patent experience). Three decades of USPTO experience in considering design patent applications, including design patents in the patent classification to which these two patents belong, is enough experience to qualify as an expert under Rule 702.

Second, Weber seeks to exclude Gandy because, it says, his testimony will not help the jury. Weber's '834 Resp. Br. at 1-2. Opinion testimony by an expert, no matter how qualified, is inadmissible unless it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Under this rule, other courts have excluded experts who "admit[ted] that counsel [] actually did the typing" of their reports, in which "[l]arge quantities of [the retaining party's] interrogatory responses appear verbatim." *E.g.*, *DataQuill Ltd. v. Handspring, Inc.*, 2003 WL 737785, at *4 (N.D Ill. Feb. 28, 2003) ("We doubt the

value to the trier of the fact of a hired expert's opinion when the party hiring him has put words in his mouth."). Weber claims the "same rationale applies here" because, according to Weber, "[Gandy's] expert report is a carbon copy of Sears' Final Invalidity Contentions prepared by Sears' attorneys months ago." Weber's '834 Resp. Br. at 1-2. Not so.

Unlike the expert in *DataQuill*, Gandy appears to have written his report; at least Weber has not proven otherwise. Gandy's report is not a verbatim duplicate of any of Sears's filings. The report is in fact much more detailed than Sears's Invalidity Contentions. *Compare* Gandy Rep. ¶¶ 15-95 *with* R. 377-9, Sears' Final Invalidity Contentions**.** And, as Sears points out, Gandy did not even agree with Sears—his own client—that the '045 patent is invalid as obvious. Sears's '834 Reply Br. at 13. This suggests independence rather than puppetry. In light of all this, Weber's argument to exclude Gandy as simply regurgitating Sears's contentions is rejected.

### 2. John Holecek

John Holecek is Weber's proposed expert on utility and design-patent infringement. R. 398-2, Holecek Rep. at 1. Holecek "conclude[s] that the Accused Grills infringe claims 1-4, 6-10, and 14-20 of the '874 utility patent … as well as certain elements of each of the '834 and '045 design patents." *Id*. Sears argues that Holecek's design-patent opinions are inadmissible for two reasons. Sears '834 Reply at 13-14. First, Sears argues that Holecek is Weber's puppet: "Holecek could not identify a single position that Weber has taken in this case concerning its patents

with which he disagrees" and "everything Mr. Holecek knows about design patent infringement comes from Weber's counsel. The only thing Mr. Holecek knew about design patents coming into this case was that they are different from utility patents." *Id*. Second, Sears argues that Holecek's "opinions as to the design patents are nothing more than ipse dixit," *id*. at 14, meaning that, as to the design-patent opinions, Holecek does not explain *why* he holds those opinions.

The Court agrees that Holecek's design-patent infringement opinions must be excluded based on Sears's second argument. "[A]n expert's ipse dixit is inadmissible." *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791 (7th Cir. 2008). Holecek's infringement opinions amount to nothing more than the conclusions themselves. Except for a brief overview of the law, the entirety of the infringement analysis on the '834 patent is this:

> As depicted in its seven drawn figures, the '834 design patent claims an ornamental design for a shroud of a barbecue grill. Based on my review of the drawn figures of the '834 design patent, applying the "ordinary observer" test as described above, and bearing in mind differences between the design of the '834 design patent, the Accused Grills, and alleged prior art grills identified by Sears, I conclude that the design of the Accused Grills' shroud or lid is, if not the same, at least substantially the same as that claimed in the '834 patent, and that the resemblance between the two is sufficient to deceive an ordinary observer in the course of making purchasing decisions.

> The most compelling visual evidence I have seen of the substantial similarity between the claimed and accused designs is in the side-by-side comparison of the figures of the '834 design patent and photographs of the Accused Grills as shown, for example, at pages 2, 7, 9, 10, 12, 14, 15, 17 of Exhibit B to Weber's Final Infringement Contentions. In simple terms, one looks very much like the other.

Holecek Rep. at 43-44. His opinion on the '045 patent is the same length and follows the same format. *Id*. at 44-45. Holecek's report contains all his opinions in the case;

he added nothing at his deposition and said he had nothing to add. R. 398-3, Holecek Dep. 20:6-23.

So all Holecek will say about infringement is that there is infringement and that he can tell primarily by looking at a few pictures. He does not say how (or whether) he considered any differences between the claimed and accused designs, and why those differences do not matter. He does not say which features, if any, would be more or less important to the analysis. He does not use his experience in the industry to say, for example, that consumers tend to notice or not notice certain features. He adds nothing but his conclusion, which is unhelpful because it is just a conclusion.

Weber's response to Sears's arguments does not respond to this point. R. 418, Weber's Holecek Sur-Reply. Weber does not argue, for example, that Holecek explained how he got from his source materials to his conclusion in his deposition. Accordingly, Holecek's design-patent infringement opinions are excluded. To be clear, his opinions on functionality are not part of this decision. Functionality was not raised as part of the summary judgment motions and Sears never moved to exclude these opinions. This issue might be a proper subject for a pre-trial motion *in limine*, but there is no basis on which to decide the issue at this stage.

### 3. J. Michael Alden

J. Michael Alden is Weber's design-patent expert on validity. R. 417-1, Alden Rep. at 1. Sears argues that "Alden's opinions should be excluded and disregarded

for one[4] simple yet critical reason: He applies the incorrect level of skill in the art to the question of invalidity of Weber's design patents." R. 405, Sears's '045 Reply Br. at 11. The correct level of skill is that of the ordinary designer. *E.g.*, *Personalized Media Communications v. Int'l Trade Comm'n*, 161 F.3d 696, 706 (Fed. Cir. 1998). Sears argues that Alden applied his own, extraordinary level of skill to his analysis. For this reason, Sears argues, Alden's opinion is unreliable and therefore inadmissible under Rule 702.[5] Weber does not contest Sears's legal premise—that, if Alden failed to analyze the patents from the correct perspective, his opinions are inadmissible as unreliable. (They would probably also be inadmissible as irrelevant—because they would analyze a question that does not matter to the case.) So, as the parties have framed the issue, the only question is whether Alden applied the correct perspective to his analysis. Although the issue is not free from doubt, the Court is reasonably certain that he did.

Sears—relying on some convoluted Q & A from Alden's deposition—insists that Alden admitted that (a) he did the analysis from his own perspective and that (b) his perspective is that of an extraordinary, rather than ordinary, designer. Sears's '045 Reply Br. at 11-13. Sears is not completely wrong. If several ambiguous questions and several ambiguous answers are each construed in Sears's favor, then

---

[4]Sears hints at, but does not argue, other bases for exclusion. *E.g.*, R. 405, Sears's '045 Reply Br. at 15 (citing Fed. R. Evid. 403). Given the absence of development and Sears explicitly claiming only "one simple yet critical reason" for exclusion, the Court will disregard these passing references.

[5]Sears never explicitly identifies the legal basis of this wrong-skill-level theory of inadmissibility. But it does cite *Neutrino Dev. Corp. v. Sonosite, Inc.*, 410 F. Supp. 2d 529, 550-51 (S.D. Tex. 2006), as its principal case. *Nuetrino* corresponds to a similar argument, framed as a reliability argument. *Id.* So the Court will construe Sears's argument as a reliability argument as well.

the testimony supports Sears's position. So this is a close call. But the Court must side with Weber for three reasons.

First, when the question is put to Alden directly, he comes up with the right answer: "I looked at it from the point of view as an ordinary designer, not an expert designer." R. 369-1, Alden Dep. 208:3-15. And his report repeatedly refers to the correct standard. Alden Rep. at 8 ("I have carefully reviewed the alleged prior art combinations described in Mr. Gandy's report and referenced materials and conclude that from the perspective of the ordinary designer … ."). If Alden just got confused at parts of his deposition, then that does not necessarily make his opinions unreliable. Second, the Court is reluctant to exclude Alden based on Sears's chosen, ambiguous testimony—it just is not clear from the transcript that Alden and his questioner were talking about the same thing. The passage where Sears says Alden implicitly admitted he applied the wrong perspective is garbled and susceptible to exculpatory interpretations. Finally, the Court notes that Sears points to nothing in Alden's analysis itself—nothing about his conclusions or how he reached them— that supports its argument. If Sears were able to back up its assertion that Alden applied a higher-than-appropriate level of skill to his analysis by pointing to some portion of that analysis and saying, for example, "an ordinary designer would not do that," then the result may well have been different. But it did not do that. Alden's testimony stands.

## B. Utility Patents Versus Design Patents

The Constitution grants Congress the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. 1, § 8. cl. 8. Among these exclusive rights are patents. One type of patent is a utility patent: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor … ." 35 U.S.C. § 101. And another type is for designs: "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 171.

Design patents, unlike utility patents, are limited to a single claim. *See* 37 C.F.R. § 1.153(a) ("More than one claim is neither required nor permitted."). Typically, as with the patents here, that single claim will be for "the ornamental design for [some article of manufacture, like a grill] as described and shown" in the patent drawings. *E.g.*, '045 Patent; '834 Patent. The drawings may include unclaimed features, indicated typically with broken lines. *See* MPEP § 1503.02.II; *see also Apple, Inc. v. Samsung Electronics Co.*, 678 F.3d 1314, 1317 (Fed. Cir. 2012) ("The parts of the side beyond the bezel, as well as the phone's back, are disclaimed, as indicated by the use of broken lines in the patent figures."). The drawings thus control the scope of the patent; that is, the scope of the patentee's right to exclude

others. *See David A. Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010).

Here, Sears is challenging one of Weber's utility patents—the '874 patent—and two of its design patents—the '045 patent and the '834 patent. The Court will address the utility patent first and then the design patents.

### 1. The '874 Utility Patent

Weber claims that Sears's Kenmore Elite 500 Series grills infringed on the '874 Utility Patent. R. 138, Am. Compl. ¶¶ 17-32 (Count 1). Specifically, Weber asserts claims 1-4, 6-8, and 14-20. Am. Compl. ¶ 28; R. 356, Weber's '874 Resp. Br. at 1 n.2. Sears, in turn, argues that the 500 Series grills do not infringe those claims and that the patent is invalid. R. 346, Sears's '874 Br. at 1-2. As detailed below, the Court concludes that claims 9-13 of the patent are invalid as anticipated, so the summary judgment motion is granted as to those claims, but the motion is otherwise denied.

### a. *Super-Sack* Argument

Before getting to the merits, a jurisdictional detour is required. Weber argues that the Court lacks jurisdiction over its infringement claim and Sears's counterclaims as to patent claims 5 and 9-13 because "Weber will shortly issue a '*Super Sack*' covenant against suit in favor of Sears" on those claims. Weber's '874 Br. at 1, n.1. *Super Sack* refers to a case where the Federal Circuit affirmed a district court holding that a covenant not to sue on a patent, offered in a parties' brief, rendered a declaratory judgment claim non-justiciable under Article III's case

or controversy requirement. *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1059 (Fed. Cir. 1995). Although *Super Sack* relied on a now-discredited jurisdictional test, *see Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1339 (Fed. Cir. 2007) ("the Supreme Court in a detailed footnote stated that our two-prong 'reasonable apprehension of suit' test 'conflicts' with and would 'contradict' several cases in which the Supreme Court found that a declaratory judgment plaintiff had a justiciable controversy.") (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132 n.11 (2007)), the basic premise remains valid—no dispute means no jurisdiction.

But Weber is wrong that the statements in its briefing dissolve its dispute with Sears. The jurisdiction question boils down to whether "under all the circumstances … there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality … ." *Teva*, 482 F.3d at, 1337 (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). Here, the circumstances portray a live dispute. First, Weber sued Sears and has not taken any irrevocable steps to withdraw any of its claims: it has not dismissed any of its claims with prejudice, *see Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1098 n.1 (7th Cir. 2008) (recognizing that dismissal with prejudice of affirmative claims divested jurisdiction over declaratory judgment counterclaims in copyright case); nor has it actually delivered to Sears an enforceable covenant not to sue. So the case is still live.

The only thing that muddies the jurisdictional waters at all is Weber saying that it will "shortly" give Sears a covenant not to sue. But that statement alone is not enough to deprive the Court of jurisdiction for three reasons. First, the Court is reluctant to give what amounts to a non-binding statement to sometime in the *future* make a binding promise any effect at all. Second, Weber said it would "shortly" issue the covenant more than four months ago. Yet, as far as the record shows (no supplement on this issue has been filed), it still has not happened. That delay makes the Court even more reluctant to give effect to Weber's statement. And finally, other similarly ambiguous statements have been held insufficient to deprive courts of jurisdiction over declaratory relief claims. *See Arris Grp., Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1381 (Fed. Cir. 2011) (recognizing, under similar circumstances, that ambiguous statements are not enough to dissolve jurisdiction); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008) (same). The Court's jurisdiction is secure.

### b. Invalidity

Sears argues that all of the '874 patent's claims are invalid as either anticipated by prior art or obvious in light of prior art. Sears's '874 Br. at 4-5. Anticipation means that some prior art discloses "every limitation of the claimed invention, either explicitly or inherently." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001). A patent claim is obvious "if the differences between the subject matter sought to be patented [and prior art] would

have been obvious at the time the invention was made to a person having ordinary skill in the art … ." 35 U.S.C. § 103(a).

Sears's motion is granted as to patent claims 9-13 for two reasons. First, Weber does not contest Sears's motion as to those claims. Weber's '874 Rule 56.1 Statement ¶ 53. Second, these claims are, in fact, anticipated. Claims 9-13 purport to assert, as relevant here, a grill frame assembly with a tank blocking structure (these are the claims that do not mention connecting the tank blocking structure to a grease control system). '874 Patent. At that level of generality, certain Kenmore prior art disclosed all these limitations, as this diagram shows:



R. 347-15, Kenmore Operators Manual at 10. This Kenmore grill schematic exhibits a grill frame assembly with a tank blocking structure that is generally "L" shaped. That is enough to anticipate claims 9-13. Accordingly, summary judgment is appropriate as to those claims.

Summary judgment on invalidity is denied as to the other claims. The remaining claims (setting aside claim 5, for the moment) are 1-4, 6-8, and 14-20. What sets these claims apart from the invalid-as-anticipated claims is that they integrate the tank blocking structure with the grease management system. Sears's arguments that doing so was obvious or that prior art anticipated the integration are wrong. First, Sears argues that a Brinkman grill anticipated the integration claims. That grill looks like this:



R. 347-5, Dunham Dec., Exh. F at 26. The Brinkman grill's tank blocking structure, according to Sears, is made of the loop bracket (shown in the red circle) and the "Heat Shield Plate," upon which, as shown in the picture to the right, a grease cup rests. The problem for Sears is that the innovation behind Weber's integration claims is that if the consumer removes the tank blocking structure, then the grill will not work because the grease system will not work. That is not true of this grill.

Here, the consumer can remove the loop bracket, disabling any tank blocking properties, without upsetting the "Grease Cup."

Sears's remaining arguments that the integration claims were anticipated or made obvious by other prior art are also readily rejected. Sears relies on these designs:



R. 347-7, Giebel '985 Patent          R. 347-9, Schalk '051 Patent

Sears argues that, from those patents, it would have been obvious to a person having ordinary skill in the art to connect the grease management system and the tank blocking structure. The grill on the left, the Giebel '985, has no visible grease management apparatus and the patent makes no mention of grease whatsoever. And the grill on the right, the Schalk '051, rests a grease container (component 63, circled red by the Court) on top of the fuel tank *itself*, not a fuel tank blocking structure. The patent does mention grease, but only in that it keeps accumulated grease away from the heat source, and is not used as a means of keeping a user

from removing a tank blocking structure. Neither patent, alone or in combination, points in the direction of integration.

Returning to the claim that was earlier set aside, claim 5: Weber did not defend claim 5's validity, but the Court will nonetheless deny summary judgment on it. Claim 5 involves integrating the tank blocking structure and the grease management system so, like the other integration claims, it is neither obvious nor anticipated. Having said that, if Weber wants to voluntarily dismiss any reliance on this claim, then Weber must make that clear at the next status hearing.

### c. Infringement

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention … infringes the patent." 35 U.S.C. § 271(a). The infringement analysis takes two steps: claim construction and then "comparison of the claim to the accused device, requir[ing] a determination that every limitation … be found in the accused device." *In re Gabapentin Patent Litig.*, 503 F.3d 1254, 1259 (Fed. Cir. 2007). Here, Weber asserts that the Kenmore Elite 500 Series grills infringe on claims 1-4, 6-8, and 14-20 of the '874 patent (as already constructed, *see* R. 285, Claim Construction Order). R. 357, Weber's '874 Rule 56.1 Statement ¶ 7 ("The remaining asserted claims of the '874 utility patent are claims 1-4, 6-8, and 14-20"). Sears has one argument: None of its grills infringe because they do not practice one limitation that is common to all the asserted claims.

Specifically, Sears says that "[a]ll of the '874 patent claims require a tank blocking structure that prevents one of two fuel tanks of equal size from being

disposed in the grill frame assembly at the same time." Sears's '874 Br. at 4. Sears says that this limitation cannot be found in its 500 Series grills because the "structure asserted to constitute a tank blocking structure in the Kenmore 500 grills indisputably does not prevent two 5-pound or two 10-pound liquid propane tanks from being disposed in the grill frame assembly at the same time" like so:



Sears's '874 Br. at 4. Sears's argument is wrong because it misreads the relevant limitations.

The first relevant limitation in claims 1-4 and 6-8 is "the frame assembly having an interior volume *capable of* receiving two fuel tanks of equal size, except

32

that the tank blocking structure divides the interior of the frame assembly to create a plurality of compartments, such that only one of the two fuel tanks can be disposed in the frame assembly … ." '874 Patent at Claim 1 (emphasis added). The same limitation, though put slightly differently, appears in claims 14-20 as: "the frame assembly has a volume *capable* of housing both the fuel tank and replacement fuel tank except for the tank blocking structure." *Id*. at Claim 14 (emphasis added). The accused grills satisfy this limitation because their frame assembly does have a volume *capable* of housing two equal-sized tanks except that the tank blocking structure blocks out the second tank—the tanks just have to be large enough, that is, 20 pounds. R. 357-5, Photographs. Because the claim limitation speaks to capability, it is enough that the accused grills have the capability, even though—as Sears's photo shows—they do not use the capability in the case of tanks *smaller* than 20 pounds. That they have the capability at all satisfies the limitation, allows a finding of infringement, and so defeats summary judgment. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010) ("[Where] the claim language only requires the capacity to perform a particular claim element … it is [] enough to simply show that a product is capable of infringement … .").

Where Sears goes wrong is in taking the "tank blocking structure" limitation out of context; specifically, reading it in isolation from the "frame assembly" limitation of which it is a part. Sears's argument relies on this Court's construction of the term "tank blocking structure" as "a structure that prevents more than one

fuel tank from being placed inside the grill cart frame assembly at one time." Claim Construction Order at 16. From that definition, Sears argues that its accused grills do not infringe this limitation because they do not always prevent more than one fuel tank from being placed inside the grill cart frame assembly at one time. But this ignores the reference to "frame assembly" within the Court's construction of "tank blocking structure." That reference, in turn, points to the limitation that includes the capability language ("an interior volume *capable of*") and incorporates into the tank blocking structure limitation, converting it, in effect, into a capability limitation as well.

Moreover, reading the two limitations—tank blocking structure and frame assembly—together makes sense while reading them in isolation, like Sears does, does not. The patent describes a tank blocking structure that goes inside a grill frame assembly to do its work. Obviously, whether the structure blocks anything depends on the size of the assembly. By connecting the two terms, that relationship is taken into account. Disconnecting it, as Sears does, renders it meaningless. Sears is not entitled to summary judgment as to non-infringement on the utility patent.

## 2. The Design Patents

Part of Weber's case against Sears is the claim that Sears's Kenmore Elite grills—all three series—infringe Weber's '045 and '834 design patents. In its defense, Sears argues that the accused grills infringe neither patent and that both patents are invalid.

### a. Design Patent Infringement

A defendant infringes a design patent by "appl[ying] the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or [by] sell[ing] or expos[ing] for sale any article of manufacture to which such design or colorable imitation has been applied." 35 U.S.C. § 289. Here, Sears no doubt made and sold the accused grills, but Sears argues that no reasonable juror could find that the accused grills bear the patented "design or a colorable imitation" thereof. To determine whether the "patented design, or any colorable imitation thereof" has, in fact, been applied to an accused "article of manufacture," courts rely on the ordinary observer test: "if, in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (quoting *Gorham Co. v. White*, 81 U.S. 511 (1871)).

To apply this "ordinary observer" test, courts (and at trial, juries) must compare the patented design and the accused product's design. In practice, this requires comparing the patent drawings to the accused product. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1304 (Fed. Cir. 2010) ("The proper comparison requires a side-by-side view of the drawings of the '789 patent design and the accused products."); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125-26 (Fed. Cir. 1993). And one must carefully exclude the unclaimed and functional

features from the visual comparison (a feat of mental gymnastics, to be sure), because those features are not part of the patent's scope. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed.Cir.1995) ("A design patent protects the nonfunctional aspects of an ornamental design."); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993) (vacating order denying patent-holder's motion for a preliminary injunction because district court considered unclaimed features in its infringement analysis).

Ultimately, what matters is the "'overall ornamental visual impression.'" *Voltstar Technologies, Inc. v. Amazon.com, Inc.*, 2014 WL 3725860, at *2 (N.D. Ill. July 28, 2014) (quoting *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)), *aff'd*, 599 F. App'x 385 (Fed. Cir. 2015). Thus, it is a mistake to try comparing the designs strictly element-by-element. *Crocs*, 598 F.3d at 1303 ("Without a view to the design as a whole, the Commission used minor differences between the patented design and the accused products to prevent a finding of infringement."). And "infringement can be found even if the accused and patented designs are not identical." *Voltstar*, 2014 WL 3725860, at *2 (citing *OddzOn Prods.*, 122 F.3d at 1405); *see also* 35 U.S.C. § 289 (defining infringement to include "colorable imitation[s]").

Prior art also comes into play. In determining whether the "overall ornamental visual impressions" are "substantially similar," "the ordinary observer is deemed to view the differences between the patented design and the accused product in the context of the prior art." *Egyptian Goddess,* 543 F.3d at 676. This

awareness informs the analysis in a particular way: "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id*. There is no need, however, to even consider prior art if the designs are "plainly dissimilar." *Id.* at 678.

### i. Infringement of the '834 Design Patent

Summary judgment is warranted against Weber's claim that Sears's Kenmore Elite 500/550, 600, and 700 Series grills infringe on the '834 patent. To repeat, the crucial principle on this claim is "when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Egyptian Goddess*, 543 F.3d at 676. Here, the '834 patent is very close in design to the prior art, which includes several examples of grill shrouds that share the same basic shape as the '834 design:




Weber's '834 Design
(R. 334-1, '834 Patent at Fig. 1)

'357 Design
(R. 334-2, '357 Patent at Fig. 1)




'359 Design
(R. 334-3, '359 Patent at Fig. 1)

'983 Design
(R. 334-4, '983 Patent at Fig. 1)

And one item of prior art also includes exposed rivets:



R. 334-6, Hu Dec. ¶ 2, Ex. A. So the prior art shares the same basic shape as the

'834 design and also shares rivets, flat side panels, and rotisserie notches.

Given these similarities, "small differences between the accused design and the claimed design" must take on more importance. *Egyptian Goddess*, 543 F.3d at 676. These differences include the indented side panels on the Kenmore versus the flat side panels on the Weber:





Weber's Flat Side Panels
(R. 334-1, '834 Patent at Fig. 1)

The Kenmore Elite's Indented Panels
(R. 423-1, Exemplar Photos)

They also include the different slope to the shape of the grill shroud:





Weber's '834 Design's Profile
(R. 334-1, '834 Patent at Fig. 2)

The Kenmore Elite's Profile
(R. 423-1, Exemplar Photos)

The difference in the rear hinge on the Weber versus the Kenmore:





| Weber's '834 Design's Rear Hinge (R. 334-1, '834 Patent at Fig. 2) | The 700 Series Rear Hinge (R. 423-1, Exemplar Photos) | The 500/550 Series Rear Hinge (R. 423-1, Exemplar Photos) |

And the shapes of the rotisserie notches:




| Weber's '834 Design's Notch (R. 334-1, '834 Patent at Fig. 2) | The Kenmore Elite's Notch (R. 423-1, Exemplar Photos) |

To be sure, it is possible that, viewing the design against the accused products in isolation, that is, without considering prior art, a reasonable jury could likely find that the overall ornamental appearance is substantially similar because the ordinary observer might not well give these differences enough attention. But, under *Egyptian Goddess*, the designs cannot be viewed in isolation. And once the prior art informs the comparison, the differences between the '834 design and the

Kenmore Elite grills stand out inescapably. Sears is therefore entitled to summary judgment.

Like this case, *Egyptian Goddess* demonstrates the profound impact that prior art has on the analysis. There, the patented design and the accused design were, perhaps, even more similar to each other than they are here:



Patented Design      Accused Design      Prior Art      Prior Art

But nonetheless the district court granted summary judgment on non-infringement and the *en banc* Federal Circuit affirmed. *Egyptian Goddess*, 543 F.3d at 665, 680-83. Although the accused nail buffer was similar to the patented nail buffer, those similarities, when viewed in light of the prior art, melted away, leaving the differences standing out. Same here.

Weber's counterpunches miss the mark. First, Weber argues that the only way to grant summary judgment to Sears is by way of impermissible "element-by-element" comparison that "the Federal Circuit has rejected." R. 372, Weber's '834 Resp. Br. at 2. Not so. The overall appearances of the '834 design and the accused grills are dissimilar enough that no reasonable jury could find them substantially similar in light of the prior art. It helps to keep in mind that the '834 design is not a large design; it is really just the two end pieces of a grill shroud. (Much is disclaimed by being drawn with broken lines.) There just are not many features of

the design and all of them are different, in some way, from the accused products. This is not a case, therefore, of over emphasizing small or minor differences in a large design. Here, the claimed design itself is comprised of few features, so the differences—the indented side panels especially—stand out.

Next, Weber tries to rely on Holecek's expert testimony to create a jury question on infringement. Weber's '834 Resp. Br. at 4-6. But as discussed above, the Court has excluded Holecek's opinions, so he cannot help Weber. Nor, in any event, do his opinions adequately explain away the magnitude of the differences between the designs when viewed in light of the prior art. And finally, Weber argues that the riveted-band prior art grills are not prior art at all: "[T]here is a factual dispute as to whether they even constitute prior art at all." Weber's '834 Resp. Br. at 6. If Weber were right, then it would have stronger case. This is because infringement is likely "[i]f the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art." *Egyptian Goddess,* 543 F.3d at 676. So if Weber departed from the prior art with the riveted bands and then Sears followed, infringement would be more likely because the two designs would stand out from the prior art in the same way. But Weber is wrong about there being a factual dispute as to whether riveted bands appear in the prior art.

There is no genuine dispute as to whether a grill shroud with rivets like Weber's is among the prior art. Prior art includes designs "patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent." 35

U.S.C. § 102(b) (2006).[6] Sears has identified a grill with rivets that was sold in this country before that date. Hazel Hu declares that she has "personal knowledge of the development and design" of two grills that were sold in the United States "at least as early as the beginning of 2005." R. 334-6, Hu Dec. ¶¶ 1-2. Both grills have riveted bands on the grill shroud:





Hu Dec. ¶ 2, Ex. A.                    Hu Dec. ¶ 2, Ex. B.

And Hu has "invoices reflecting actual sales in commerce in the United States of the" two grills "on March 18, 2005." Hu Dec. ¶ 4 & Ex. C. The invoice does appear to reflect sales on March 18, 2005, to a company in Michigan. Hu Dec. ¶ 4 & Ex. C. Accordingly, shroud rivets were in the prior art.

Weber does have contrary evidence, but it does not create a jury question. First, it offers the declaration of its Chief Marketing Officer, Michael Kempster. Kempster avers that "[t]o [his] knowledge, there are only two grills in the world that use the Weber Trade Dress; Weber's Genesis and Summit products, on the one hand, and the later introduced Sears Kenmore Elite on the other." R. 373-3, Kempster Dec. ¶ 22. The trade dress he is referring to includes riveted bands, so

---

[6]This provision was amended but patent claims with an "effective filing date before March 16, 2013," like all the patents at issue here, are evaluated under the prior version of § 102(b). *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 n.3 (Fed. Cir. 2015). The application date here was March 27, 2006, so the prior art date cut-off is March 27, 2005. R. 334-1, '834 Patent at 1.

Kempster is saying that the only grills with rivets are Weber grills based on the '834 patent and the accused grills. Kempster Dec. ¶ 8. It is true that Kempster can reasonably be expected to know the grill industry well, because he has worked in it for more than 40 years and, as part of his work, he "constantly" analyzes "market research reports." Kempster Dec. ¶ 5.

In addition to Kempster, Weber points to Sears's "Product Manager" for "Kenmore Gas Grills," Chris Kobrick. R. 370-3, Exh. 14 at SEARS 5285. When asked at his deposition whether "there are only two gas grills in the entire world that you're aware of that use rivets on the left and right side trim pieces, the Weber grills and the Kenmore Elite 500 series, is that correct?" R. 373-4, Kobrick Dep. 184:19-23. Kobrick responded affirmatively: "Yes." *Id.* 185:5. So Weber has two knowledgeable grill-industry insiders saying that aside from Weber's embodiment and the accused grills, they are aware of no other grills with riveted bands on the shrouds.

But this evidence does not create a jury issue because it would not be reasonable for a jury to infer from it that the Hu declaration is false; that is, to infer that the Hu grills were never actually sold. To make that inference, a jury would have to decide that if the Hu grills were sold as Hu says, then Kobrick or Kempster would have *necessarily* known it—that the Hu grill sales could not have happened without Kobrick or Kempster's knowledge. That inference would be unreasonable. All Kobrick and Kempster said was that they were not aware of any other riveted grills. They did not say that they had searched exhaustively for them. They did not

say that, given their experience and position, it would surprise them if other riveted grills were out there. And they were not—so far as the Court has seen—asked about the Hu grills specifically. On top of that, Weber has not suggested that Hu is lying. Accordingly, no reasonable jury could—on just the strength of Kobrick and Kempster's testimony—reject the Hu evidence.

Worth noting is that Sears offered two other riveted grills as prior art but did not adequately support those submissions. First, Sears points to the BBQ-PRO 720 grill. R. 334-5, La Rose Dec. ¶ 2. The grill, as shown in the manual, has riveted bands on the grill shroud:



La Rose Dec. ¶ 2, at Ex. 1 (Excerpted). But this does not help Sears for two reasons. First, Sears does not claim that this manual was published or that the grill was sold before the March 27, 2005 cut-off date. The La Rose declaration just says it was sold before March 27, *2006*. La Rose Dec. ¶ 2. That is not necessarily early enough. And it even if it was, Sears has no evidence that it is true. Sears's declarant, La Rose,

claims no personal knowledge of any sales; he just refers to an unexplained and incomprehensible spreadsheet:

| | DIV_OGP_NO | PRD_ITM_NO | MTH_NO | WK_NO | Pos_Units |
|---|---|---|---|---|---|
| 1 | 71 | 16229 | 200602 | 200607 | 1 |
| 2 | 71 | 16229 | 200602 | 200608 | 5 |
| 3 | 71 | 16229 | 200602 | 200609 | 23 |
| 4 | 71 | 16229 | 200602 | 200610 | 63 |
| 5 | 71 | 16229 | 200603 | 200611 | 81 |
| 6 | 71 | 16229 | 200603 | 200612 | 164 |
| 7 | 71 | 16229 | 200603 | 200613 | 792 |
| 8 | 71 | 16229 | 200603 | 200614 | 914 |

La Rose Dec. ¶ 2, at Ex. 2 (Excerpted). There is no apparent indication that these are sales figures (as opposed to anything else). And, even if "MTH_NO" and "WK_NO" help us identify the numbered month of a year or the numbered week of a year (that is, maybe a "MTH_NO" of "200602" means February 2006) then all the "sales" would still be too late. This grill does not help Sears.

Sears also put a drawing of a riveted Permasteel shroud in its brief:



Permasteel

Sears's '834 Br. at 13. The problem is that Sears does not say that this drawing was published at all, much less when. The only other mention of it in the record is Gandy's Rebuttal Report (remember that Jim Gandy is Sears's design-patent expert). R. 334-9, Gandy Reb. Rep. ¶ 17. And Gandy does not provide the necessary foundational details either. So Sears has not shown that this drawing is prior art. But, because Sears does have the Hu evidence, the prior art did include a grill shroud with a band with exposed rivets.

### ii. Infringement of the '045 Design Patent

Moving onto the final patent at issue, a reasonable jury could find that the three Sears Kenmore grill series—the 500/550, 600, and 700 series—infringe on the '045 patent because a reasonable jury could find a substantial similarity based on their overall ornamental visual impressions. Here are the grills side-by-side:



Weber's '045 Design                     Sears's Kenmore Elite 500/550

As this side-by-side comparison shows, the patented design and all[7] the accused grills share the same overall shape and proportions, and the shapes and relative placement of key, eye-catching features adds, rather than detracts, from an impression of similarity. These features include: the handle for the grill lid; the symmetrical end tables; and the shapes and relative proportions of the end tables, grill cart, and shroud.

Moreover, the prior art identified by Sears (at least on summary judgment, where reasonable inferences must be drawn for Weber) actually heightens the impression of similarity. "If the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing." *Egyptian Goddess*, 543 F.3d at 676-77. Here, the prior art designs are all fairly similar to the '045 design and the accused grills:

---

[7]The Court has analyzed each grill series independently as the parties' stipulated.



R. 328-5, Chung '057 patent at Fig. 1.

R. 328-3, The Coleman '359 patent

R. 328-6, The Tseng '308 patent

R. 328-18, UniFlame Design

Weber's '045 Design

The Accused Kenmore Design

R. 328-7, The Kenmore 141.16680 Design

But where the Weber design departs from the prior art, the Kenmore Elite grills follow. Both share the round-edged, symmetrical end-tables with tool cut-outs. Viewed together among the prior art designs, a reasonable juror could find the Kenmore design and the Weber design are substantially similar.

Sears's counterarguments are not convincing, largely because they require the observer to give more attention to detail than is appropriate. The ordinary observer only "giv[es] such attention as a purchaser usually gives." *Egyptian Goddess*, 543 F.3d at 670. The details Sears relies on are, or at least a reasonable juror could find that they are, beyond that level of attention. Sears first argues that the accused grills are "plainly dissimilar" (even without considering prior art) from

the patent based on several differences: The Kenmore grills have side vents, the patented design does not; the Kenmore grills have vents at the bottom of the back panel, the patented design does not; the Kenmore grills have a skirt along the bottom of the grill cart, the patented design does not; the Kenmore grills have four (as opposed to three) cut outs for tools on the end tables that are slightly different in shape than those in the patented design; and the Kenmore grills have knobs on the front panel below the grill shroud (more knobs the higher the series number), and the patented design does not. Sears's '045 Br. at 3-5.

Without downplaying these differences, and with due regard to the subjectivity of the analysis, the Court cannot say that these differences prevent a reasonable jury from finding substantial similarity. These differences are in physically small, and not (relatively speaking) attention-grabbing features: knobs, tool hooks, vents, and skirts. And they are on the back, sides, and bottom of the grill—not front and center. A reasonable jury could find that the ordinary observer's eye, giving the appropriate level of attention, might well miss those points and instead focus on the bigger ticket items like shape and proportion. Accordingly, Sears's motion is denied as to infringement of the '045 patent.

### b. Design Patent Invalidity

"A patent shall be presumed valid." 35 U.S.C. § 282. And to overcome the presumption of validity, the party asserting invalidity must show it by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). Here, Sears argues that both the '045 patent and the '834 patent are invalid

because they are indefinite and not enabling (which, as discussed later, is really a single argument for purposes of this case) and because Weber introduced "new matter" in violation of 35 U.S.C. § 112(a) and § 132. The Court will address definiteness and enablement first, and then the new-matter arguments.

### i. Definiteness/Enablement

Both the definiteness and enablement requirements come from 28 U.S.C. § 112, which applies to design patents by dint of 28 U.S.C. § 171 ("The provisions of this title relating to patents for inventions shall apply to patents for designs … ."). Section 112(b) sets forth the definiteness requirement, providing that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." And § 112(a) provides the enablement requirement: "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same … ."

As both parties' briefing implicitly acknowledges, "[b]ecause the majority of the disclosure in a design patent forms a part of the claim, the enablement and indefiniteness requirements are often interchangeable. That is, where the drawings contain a sufficiently serious inconsistency, the claim will be indefinite and also not enabled." *See generally* Matthew A. Smith, *Design Patents*, Ed.0.9 (Prelim. Draft), 73 (Dec. 17, 2012). In other words, design patents have a single claim and that

single claim refers to drawings—which are supposed to enable a person skilled in the art to copy the design. So, if the drawings are so muddled that a skilled artisan cannot reasonably decipher what design is claimed, then the patent is indefinite, and similarly, if the skilled artisan cannot copy the design, then the patent is not enabling. That the parties make no separate arguments about enablement tends to support the proposition that the two inquiries are really one in this case. So the Court will analyze this basic question under the rubric of definiteness (as the parties and their cases do) with the understanding that a finding of indefiniteness would equal a finding of lack of enablement.

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). "[F]or a design patent to be invalidated for indefiniteness, 'errors and inconsistencies in the patent drawings must be material and of such magnitude that the overall appearance of the design is unclear.'" *Times Three Clothier, LLC v. Spanx, Inc.*, 2014 WL 1688130, at *7 (S.D.N.Y. Apr. 29, 2014) (quoting *HR U.S. LLC v. Mizco Int'l, Inc.*, 2009 WL 890550, at *6 (E.D.N.Y. Mar. 31, 2009), and MPEP §§ 1503.02, 1504.04). Sears's motion must be denied as to both the '834 and '045 design patents because a reasonable juror could find that the inconsistencies identified by Sears are not "of such a magnitude" as to render the patents invalid.

**'834 Design Patent**

Sears argues that the '834 grill-shroud patent falls short of the reasonable-certainty standard. Sears's '834 Br. at 10-14. But Sears has not provided clear and convincing evidence that there even are inconsistencies, much less material ones, that would entitle Sears to summary judgment. The drawings, even with the Gandy report's narration, do not unambiguously show inconsistencies. And, even if they did, a reasonable juror could deem them immaterial. At most, the patent does a poor job depicting some aspects of one feature, namely, the shroud hinges. A reasonable juror could conclude that the hinges' size and position are material but that the details are not. Accordingly, Sears's motion must be denied on this point.

Rehearsing Sears's arguments reinforces this conclusion. Sears argues that the patent does not provide reasonable certainty because its drawings depict three inconsistencies in the hinges at the back of the shroud. The first inconsistency is that "Figures 1, 2, and 4 show the hinge as a flat surface devoid of any contour, whereas Figures 5 and 7 depict the outer side edge of the hinge members as sloping diagonally inwardly and merging with a vertical surface." Sears's '834 Br. at 11-12. Here are all the figures:





*FIG. 5*



*FIG. 7*

And here are relevant close-ups:





Figure 2                                          Figure 7

The Court does not see the inconsistency—much less clearly and convincingly. The contour visible in 5 and 7 is not definitively absent from the other figures; it might just be that the perspective and the relatively small size of the hinge make it hard to see the impact of the shading. It may be that there is a contour and an ordinary designer would see it in 5 and 7 and see nothing to contradict it in the other figures.

Second, Sears complains that "in Figure 5, the bottom of the hinge members appear to have a solid flat surface. However, as shown in Figure 6, the hinge

members have a horizontal top portion that merges with a downwardly extending vertical edge." Sears's '834 Br. at 12. Here are the two figures:



Again, the Court cannot definitively agree or disagree with Sears's reading of the figures. And Gandy's report is no help. Gandy's report argues that the nature of the drawings support his analysis. Gandy Rep. ¶ 61. He says Figure 1 is a "perspective view" and that the rest are "either elevation or plan views." *Id.* He does not say what these terms mean or why this helps his case. Sears brief adds no further explanation.

Third, Sears says that in "Figures 2 and 4, the hinge members have a gentle sloping diagonal top edge; whereas in figure 6, the top edge thereof appears to be horizontal straight." R. 333, Sears's '834 Br. at 12. Once again, the Court cannot follow Sears's reading of the images or agree that the relatively sparse shading clearly and convincingly reveals the alleged inconsistencies.

**'045 Design Patent**

Here, Sears argues that the '045 patent fails to satisfy the reasonable-certainty standard because of three inconsistences in the drawings.[8] First, Sears argues that figure 1, on the one hand, and figures 4 and 5, on the other, are inconsistent. R. 327, Sears's '045 Br. at 10-11. The inconsistency is that figures 4 and 5 depict a narrow band along the bottom of the grill cart while figure 1, in the corresponding location, does not. Sears's '045 Br. at 10-11. Here are the full figures:



And here, up close, is the relevant area:

---

[8]Although Sears says that "Gandy identifies other areas of the '045 patent that similarly render it invalid," R. 327, Sears's '045 Br. at 12, the Court declines to consider arguments that only incorporate by reference another document and are not developed in the briefs.

56



Figure 1 (Excerpt)                    Figure 4 (Excerpt)

The Court already recognized this as "clearly inconsistent." Claim Construction Op. at 28 ("there is an inconsistency in those figures"). Weber asks the Court to reconsider this finding. And it presents Alden's testimony that, contrary to the Court's conclusion, the inconsistency is a matter of perspective.

Second, Sears argues that one skilled in the art would be "incapable" of "under[standing]" what "the internal structure in Figure 3 shown in solid lines in open areas to the right and left of the firebox, as well as a horizontal member and a rectangular structure … are intended to represent." Sears's '045 Br. at 10-11. Here is the relevant portion of Figure 3:



FIG. 3

And third, Sears points to another inconsistency, this time between Figures 4 and 5 (they also highlight Figures 1 and 2, but only Figures 4 and 5 are needed to see the alleged inconsistency). Sears's '045 Br. at 11-12; Gandy Rep. ¶¶ 76-78:



This problem is the shape of the grill box as where it meets the grill lid when the lid is the down position. Sears's '045 Br. at 11-12; Gandy Rep. ¶¶ 76-78. Here, with red circles added by the Court, is a close-up view, with Figure 4 again on the left and Figure 5 again on the right:



In figure 5 (the figure on the right), the box appears to jut outward to meet the lid, while, in figure 4, it goes straight up. Sears's '045 Br. at 11-12; Gandy Rep. ¶¶ 76-78.

A reasonable juror could find that these inconsistencies—which the Court will assume, without deciding,[9] exist—are not of such magnitude that the overall appearance of the design is unclear for three reasons. First, this is battle of the experts. Sears has Gandy saying that the inconsistencies would baffle those skilled in the art: "[D]ue to the inconsistencies and discrepancies between the views of the drawing of various features of the claimed design … one skilled in the art would not be able to understand the bounds of the claim … ." Gandy Rep. ¶ 82. Weber has Alden saying the opposite: "[The] alleged inconsistencies in the drawings of the '045 patent are inconsequential and do not, either singularly or in toto, warrant a finding of invalidity … any alleged inconsistencies in the depiction of the features identified by Mr. Gandy above are not sufficiently serious to prevent an ordinary observer, much less a trained designer, from fully understanding the intended overall design of the '045 patent." R. 377-7, Alden Rep. at 26. The Court cannot, on summary judgment, resolve the conflict in this testimony. And without resolving that conflict, the Court cannot award summary judgment to Sears based on the alleged indefiniteness of the '045 patent.

Also working in Weber's favor is that Sears's principal case is distinguishable. Sears relies heavily on *Times Three Clothier, LLC v. Spanx, Inc.*, 2014 WL 1688130, at *7 (S.D.N.Y. Apr. 29, 2014). There, a design patent was invalidated for indefiniteness based on inconsistent drawings. *Id*. The design was for a shirt-like garment with two "ornamental lines." *Id*. In some drawings the top

---

[9] The Court does adhere to the earlier claim-construction finding that there is an inconsistency between figure 1 versus figures 4 and 5 as to the narrow band on the bottom of the grill.

line, right under the bust, was flat, in other drawings it was angled. *Id*. This was important: "The first ornamental line—one of only two—is a fundamental part of the claimed design." *Id*. It is not as obvious that the narrow band, chamber lip, and back interior portions of the whole grill are as fundamental to the overall design. Many other cases invalidating design patents are similarly based on inconsistencies in prominent features, rather than minor ones. *E.g.*, *Eclectic Products, Inc. v. Painters Products, Inc.*, 2015 WL 930045, at *3 (D. Or. Mar. 2, 2015) ("The words of the patent lay claim to 'an applicator cap, as shown,' but the drawings depict an entire tube dispenser with a threaded neck and a sponge tip but, notably, no cap that fits over the tube."). Sears has not cited a case granting or affirming summary judgment based on inconsistencies in relatively minor features (or at least a jury reasonably could find that the features are minor).

Third, in light of the prior reasons, the presumption of validity and the corresponding requirement that Sears show invalidity by clear and convincing evidence tip the scales in Weber's favor. Sears needed to show not only that the inconsistencies were there, but also that they were material enough to invalidate the patent. On the latter score, their evidence does not so overwhelm the Alden declaration as to warrant judgment in their favor.

### ii. New Matter

Sears's final set of invalidity arguments is premised on the ban against the insertion of "new matter" during the patent application process. When a patent application is rejected, the applicant may file an amendment to cure the problem

behind the rejection. *See* 35 U.S.C. § 132. But "[n]o amendment shall introduce new matter into the disclosure of the invention." *Id*. This "prohibition against adding new matter [is] enforce[d] under 35 U.S.C. § 112(a) because [if new matter is added, then] the claims are not supported by the disclosure in the original application [as required by § 112(a)]." *Commonwealth Scientific & Indus. Research Organisation v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1378-79 (Fed. Cir. 2008). To determine whether something added is the kind of new matter prohibited by §§ 112 and 132, courts ask if "the [original] disclosure … reasonably conveys to the artisan that the inventor had possession at [the time of the original disclosure] of the later claimed subject matter [in the new material]." *In re Daniels*, 144 F.3d 1452, 1456 (Fed. Cir. 1998) (citing *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1575 (Fed. Cir. 1985)) (internal quotation marks omitted). Here, Sears argues that both the '834 patents and the '045 patent are invalid because the final drawings in each add "new matter" that was not present—in the *In re Daniels* sense—in their respective original disclosures. Sears's '045 Br. at 13-14; Sears's '834 Br. at 13.

### '045 Analysis

Sears argues that the '045 patent is invalid under § 112(a) because "its drawings introduce new matter not supported by the original disclosure." Sears's '045 Br. at 13-14. The alleged new matter has to do with the end tables on either side of the grill box. *Id*. There are two alleged differences. First, according to Sears, the original disclosure "has shelves that are recessed slightly down and inward[] … showing a distinct edge defining a center portion." *Id*. at 13. But the drawings "do

not show this edge." *Id.* Second, shelves "protrude[e]" from the center panel in the original disclosure but, in the drawings, appear flush. *Id.* at 14.[10] Under the test for new-matter arguments like this one, the patent is valid if "the [original] disclosure … reasonably conveys to the artisan that the inventor had possession at [the time of the original disclosure] of the later claimed subject matter [in the new drawings]." *In re Daniels*, 144 F.3d at 1456. Here, Weber has the better of the argument for three reasons.

First, as the Court has previously noted, the original disclosure photos that Sears relies on are of "extremely poor image quality." Claim Construction Order at 27. This makes it hard to say as a matter of law whether the differences Sears notes even exist in the first place. Second, keeping in mind that the patent is for the ornamental design for an entire grill, even assuming the differences exist, the Court cannot say that no reasonable juror could find that the differences "vary so significantly from the original design figures as to represent new matter." *Australia Vision Servs. Pty. Ltd. v. Dioptics Med. Products, Inc.*, 29 F. Supp. 2d 1152, 1160 (C.D. Cal. 1998). And finally, the Court has in mind the presumption of validity and Sears's corresponding burden to show invalidity by clear and convincing evidence.

## '834 Analysis

Finally, Sears argues that the '834 patent also is invalid because its drawings introduce new matter. Sears's '834 Br. at 13. Specially, Sears says "there is nothing

---

[10]Again, Sears says that "Gandy identifies other aspects of the '045 patent that are not apparent from the obscure photos of the original patent application." Sears's '045 Br. at 14. Because Sears again did not develop an argument on those points in its brief, the Court will not consider them.

in the original disclosure to support the shape and appearance of the rear hinge members has shown in Figure 6 of the '834 patent." *Id.* at 13-14. Even more specifically, Gandy explains that the problem is not inconsistency but opacity: "In Figure 6 of the original disclosure it cannot be determined what the shape and appearance of the rear hinge members are due to the solid black illustration." R. 334-13, Gandy Rep. ¶ 65.

This argument does not warrant summary judgment for two reasons. First, there is again a battle of the experts. Alden contradicts Gandy on this point, R. 417-1, Alden Rep. at 23-25, and the Court cannot choose to believe one over the other on summary judgment. Second, and relatedly, a reasonable jury could find that the original disclosure has enough views to sufficiently describe the shape of the hinge—the jury would have to consider the figures from the perspective of a skilled artisan, and thus would have to consider Alden's opinion that a skilled artisan could, with reasonable certainty, copy the design.

## V. Conclusion

Sears's motions are granted in part and denied in part as follows:

- Sears's motion for summary judgment as to the '874 patent, R. 345, is denied as to infringement, granted as to invalidity on patent claims 9-13, and denied as to invalidity on all other claims in the patent;

- Sears's motion for summary judgment as to the '045 patent, R. 326, is denied in its entirety; and,

- Sears's motion for summary judgment as to the '834 patent, R. 332, is granted as to infringement and denied as to invalidity, meaning that Sears is entitled to judgment as a matter of law on Count 4 of its Counterclaim, R. 139, and on Count 2 of Weber's complaint, R. 138.

With that, the case is pared down to the following surviving claims and counterclaims. For Weber:

- Count 1 – Infringement of the '874 Patent

- Count 3 – Infringement of the '045 Patent

- Count 4 – Trade-dress Infringement

And for Sears:

- Counterlcaim 1 – Declaration of Noninfringement as to the '874 Patent

- Counterclaim 2 – Declaration of Invalidity as to the '874 Patent

- Counterclaim 3 – Declaration of Unenforceability as to the '874 Patent

- Counterclaim 6 – Declaration of Noninfringement as to the '045 Patent

- Counterclaim 7 – Declaration of Invalidity as to the '045 Patent

- Counterclaim 13 – Breach of Contract

As for Sears's Counterclaim 5, which seeks a declaration of invalidity as to the '834 Patent, it is likely that this claim is now moot because Sears won summary judgment against the infringement claim. If either party disagrees, that party should raise the issue at the next status hearing.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 22, 2015